IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LARRY KLAYMAN AND** | | |
| **DEMETRICK PENNIE,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:16-CV-2010-L** |
| | § | |
| **PRESIDENT BARACK HUSSEIN** | § | |
| **OBAMA, *et al.*,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff Larry Klayman's Opposition to Admission of Abdul Arif Muhammad *Pro Hac Vice* (Doc. 9), filed August 17, 2016; Plaintiffs' Motion for Emergency Hearing Concerning Death and Other Threats Made Against Them and Related Issues and Requested Relief (Doc. 26), filed September 22, 2016; Plaintiffs' Motion to Recuse/Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc. 43), filed October 6, 2016; and Supplement to Affidavit of Demetrick Pennie in Support of Plaintiffs' Motion to Recuse/Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc. 44), which was filed October 7, 2016, as a "motion."

For the reasons herein explained, the court **denies** Plaintiffs' Motion for Emergency Hearing Concerning Death and Other Threats Made Against Them and Related Issues and Requested Relief (Doc. 26); **denies** Plaintiffs' Motion to Recuse/Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc. 43); and **overrules** Plaintiff Larry Klayman's Opposition to Admission of Abdul Arif Muhammad *Pro Hac Vice* (Doc. 9). Although the Supplement to Affidavit of Demetrick Pennie in Support of Plaintiffs' Motion to Recuse/Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc.

**Memorandum Opinion and Order - Page 1**

44) was filed as a "motion," it is not a motion, and the clerk of the court is directed to **term** it so that it no longer appears on the docket as a pending motion.

## I.    Introduction

On July 9, 2016, Plaintiffs Sergeant Demetrick Pennie ("Pennie"), a police officer employed by the City of Dallas Police Department, and his attorney Larry Klayman ("Klayman")[1] (collectively, "Plaintiffs") brought this action on behalf of themselves and "police officers and other law enforcement persons of all races and ethnicities" against Defendants President Barack Huseein Obama ("President Obama"); Eric H. Holder, Jr. ("Holder"); Louis Farrakhan ("Farrakhan"); Reverend Al Sharpton ("Sharpton"); Rashad Turner; Patrice Cullors; Alicia Garza; Deray McKesson ("McKesson"); Opal Tometi; the Nation of Islam; National Action Network; Black Lives Matter; Johnetta Elzie; New Black Panthers Party; Malik Zulu Shabazz; George Soros; and Hillary Clinton (collectively, "Defendants"). Pls.' Compl. 2.  On September 16, 2016, Plaintiffs filed an Amended Complaint in which they assert actions against Defendants for alleged: (1) "Deprivation of Civil Rights: Aiding and Abetting Murder" in violation of 42 U.S.C. § 1983; (2) "Conspiracy to Deprive Plaintiffs of Civil Rights: Right to Life and Liberty" in violation of 42 U.S.C. § 1985; (3) "Fifth Amendment Violation: Deprivation of Right to Life" in violation of "Biven v. VI Unknown Named Agents of Federal Bureau of Narcotics"; (4) assault; (5) intentional infliction of emotional distress; and (6) "Terrorist Promotion of Gang Activity under Florida Law" with respect to Klayman.  Pls.' Am. Compl. 57-65. For relief, Plaintiffs request:

---

[1] Klayman is a former federal prosecutor and the "high profile" founder of Freedom Watch and Judicial Watch. Pls.' Am. Compl. 9.  According to Plaintiffs' pleadings, the mission of these entities is to "enforce the rule of law and fight against racism, public corruption, and to further civil rights and equality for all persons under the U.S. Constitution." *Id.* at 8.  Plaintiffs assert that "Klayman has been highly visible and active in defending police, other law enforcement officials, Jews, Christians and Israel and opposing Defendants' efforts to stir up racial, ethnic and religious conflict to suit their agendas in every area of American life in court and in public."  *Id.*

that judgment be entered against Defendants, each and every one of them, jointly and severally, for compensatory and actual damages as a result of their demonstrable physical and emotional injury to Plaintiffs, punitive damages because of Defendants' callous and reckless indifference and malicious acts, and attorney[']s fees, costs, an award in excess of $500,000,000.00 or $1,500,000,000.00 in trebled damages where appropriate, punitive damages, and such other relief the Court may deem just and proper.

*Id.* at 65.  The essence of Plaintiffs' claims is that Defendants have made public statements that have incited criminal activity by others across the country, including riots, murders, and threats of death and bodily injury.  According to Plaintiffs' Amended Complaint, Pennie and Klayman were not the target of any of the alleged violence against law enforcement before filing this lawsuit, but they have received threats as a result of filing this lawsuit.

A majority of Defendants in this case has not yet been served. Defendants President Obama, Holder, Farrakhan, Sharpton, and McKesson have all filed motions to dismiss Plaintiffs' claims and this action for lack of jurisdiction (personal and subject matter jurisdiction) and failure to state claims upon which relief can be granted.

On September 22, 2016, Plaintiffs requested that the court conduct an emergency hearing on September 27, 2016, to address the threats made against them, the first of which occurred on July 14, 2016.  Plaintiffs believe that Defendants are behind the threats or that their public speech has motivated the persons who made the threats.  Plaintiffs, therefore, request that the court conduct an evidentiary hearing and allow them to conduct discovery to confirm whether their suspicions in this regard are correct. In their motion for an emergency hearing and subsequent motion for recusal or disqualification filed on October 6, 2016, Plaintiffs contend that the case should be reassigned to

another judge in light of the undersigned's appointment to the federal bench by former President Bill Clinton ("former President Clinton").

Plaintiffs further assert in their motion for recusal that the court's timing in ruling on various motions filed to date by the parties is an indication of the court's bias against Plaintiffs or favoritism of Defendants.  In sum, Plaintiffs contend that the court has not ruled quickly enough on a motion for continuance they filed to a motion to dismiss filed by Farrakhan; that the court ruled too quickly in granting a *pro hac vice* application filed by Farrakhan's attorney without giving Plaintiffs an opportunity to object; that the court has delayed in addressing their objection to the *pro hac vice* application, as well as their request for an emergency hearing.  Plaintiffs' motions for an emergency hearing and recusal or disqualification are opposed.  Because  Plaintiffs' motions for an emergency hearing and recusal or disqualification both set forth reasons why Plaintiffs believe that the case should be reassigned to another judge, the court addresses them first before discussing Plaintiffs' objection to the *pro hac vice* application.

## II. Plaintiffs' Motion for Emergency Hearing (Doc. 26) and Motion to Recuse and Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc. 43)

Plaintiffs filed their motion for an emergency hearing on Thursday, September 22, 2016, at 8:44 p.m., requesting that the court conduct a hearing the following week on Tuesday, September 27, 2016, before Defendants' deadline to respond to the motion.  Plaintiffs assert that an emergency evidentiary hearing is necessary "to determine the appropriate course of action" regarding alleged "death and other threats of physical violence made against them" and their families.  Pls.' Mot. 1, 6.  Plaintiffs assert that an emergency hearing is also necessary to address related issues concerning "whether discovery must be ordered and an evidentiary hearing held to determine if any or all of the Defendants are behind these threats, and if so if appropriate proceedings must be commenced to

remedy this, as well as whether this case should be assigned to another judge in this district given the possible appearance of partiality under these grave circumstances." *Id.* at 6. Plaintiffs contend in their motion for emergency hearing, as well as their motion for recusal or disqualification, that the case should be reassigned to another judge because of the undersigned's appointment to the federal bench by former President Clinton. In their motion to recuse the undersigned, Plaintiffs also contend that the court "has shown a pattern of inherent, deep[-]seated favoritism for Defendants" or is reluctant to rule on the pending motions and issues in this case because of its alleged affiliation with Bill and Hillary Clinton or fear of Defendants Nation of Islam, Farrakhan, and the New Black Panthers Party.

In support of their Motion for Emergency Hearing, Plaintiffs contend as follows:

Given the recent deaths of Dallas police officers and riots around the nation, currently in Charlotte, North, Carolina, and the incitement to violence and actual killings and assaults and batteries as alleged in the Amended Complaint, all of which has been documented with hard facts, it would appear that Defendants are directly or indirectly responsible for the deadly threats against Plaintiffs, one of whom is a Sergeant of the DPD and the other an officer of this Court. Threats against them thus constitute crimes pursuant to 18 U.S.C. §115(a) . . . There are equivalent Texas statutes concerning threats to officers of the court and law enforcement. These threats must be taken seriously before Plaintiff Pennie and his counsel are killed or seriously physically harmed.

Recently, Defendant Hillary Clinton, in a transparent attempt to garner the votes of African-Americans in the upcoming Presidential election, blamed, and thus furthered violence against white people in general for recent police shootings, stating, "**[m]aybe I can, by speaking directly to white people, say look, this is not who we are. We have got to do everything possible to improve policing, to go right at implicit bias.**" She then took to twitter to make further inflammatory statements against law enforcement officers following the shootings of African-Americans in Tulsa, Oklahoma and Charlotte, North, Carolina, pre-judging for her political purposes before all the facts are known. Further, Defendant Hillary Clinton demagogued, "[a]nother unarmed Black man was shot in a police incident. This should be intolerable. We have so much work to do." Furthermore, Defendant Hillary Clinton said, "Keith Lamont Scott. Terence Crutcher. Too many others. This has got to end." Defendants Hillary Clinton and Obama have made no genuine or real attempt to try to dissuade the perpetrators of the violent looting and rioting that has

**Memorandum Opinion and Order - Page 5**

erupted, and instead chosen to stoke the flames and incite violence with their words and inaction, respectively.

So too have the other Defendants, who have made direct threats to kill and cause serious bodily harm to Plaintiffs and those who do not agree with their radical Black Muslim violent beliefs and actions. As detailed in the Amended Complaint Defendant Farrakhan[,] and the Nation of Islam are directly responsible for the recent police deaths and severe bodily injuries that occurred in Dallas. In response to the recent Charlotte riots, Defendant Nation of Islam, though its spokesperson B.J. Murphy, have explicitly urged the riots to continue, stating, **"we're not telling our brothers and sisters to stop . . . when we ain't getting no justice."** Defendant Sharpton, like Defendant Farrakhan[,] has called for the killing of law enforcement officers, also set forth and documented in the Amended Complaint. At one of Defendant Sharpton's rallies, protesters chanted, **"What do we want? Dead cops! When do we want it! Now!"** Defendant Sharpton himself has said, **"I believe in offing the pigs. Well they got pigs out here. You ain't offed one of them. What I believe in, I do. I'll off the man. Well off him. Plenty of crackers walking around here tonight."** And, as these threats demonstrate, Defendant the New Black Panthers Party and Black Lives Matter and their accomplices have also leveled these deadly threats. For instance, as set forth in the Amended Complaint, Black Lives Matter protesters chanted, **"Pigs in a blanket, fry em' like bacon."** Furthermore, threats levied personally against Plaintiffs are set forth in detail below. More threats are coming in by the day as well.

### Threats against Klayman[:]

<u>Andrew Bennett</u>—**"[...] you cracker [...] you broke with the black Panthers and the black lives matter and all black people in this country. God probably alone. You should be worried(?) about the say that you [sic] whole goddamn family."**

### Threats against Pennie:

<u>Walter Hargain</u>—**"—Future Headline—Sgt. Demetrick Pennie was found in a hotel room, shortly after filing a lawsuit against Hillary Clinton, with 15 selfinflicted gunshot wounds to his back." Keith Arrington - "Eat a d\*\*k pig"**

**"**<u>Will Slapyou</u>**"—"This NIGGA HERE!!!!!! WTF???? REALLY. . . . No REALLY!!!!! If anyone would like to talk to Sgt Demetrick Pennie he is in the property room at [ADDRESS] [PHONE NUMBER] He works days." "Sgt. 'House Nigger", D. Pennie, why are you suing people who are trying to stop Klansman police from murdering black men, women, and children. I don't hear you speaking out about this. The House Nigger's sole reason for living is to appease the 'massa.' Not only are you a House Nigger, but you are also a**

**traitor! You do know what happens to traitors, don't you? Stop this stupid lawsuit now or you will be dealt with!"**

Brian Thornton—**"Oh yeah, I can also say 'whoever kills this cop is a national hero' not an offense. Look at who supports you, guy who thinks the 'others' and 'theys' (your supporters words, not racist at all) are trying to start a race war. I like the part where you are doing post-grad work. I've met plenty of post-doctorates that were completely bonkers. Look at my posts as a teaching moment from someone who has taught college dealing with Con Law, Texas Judiciary, and political science. You are very welcome, no charge (for either of us ;) – see what I did there?).**

Counsel for each and every Defendant who has appeared in this matter have unprofessionally chosen to oppose Plaintiffs' emergency motion. The fact that they oppose  clearly underscores the fact that Defendants have furthered, directly or indirectly, the death and other threats of and serious bodily harm to Plaintiffs and those who oppose them. Otherwise, there would be no reason to oppose such an emergency hearing, where lives are at stake as a result of Defendants' conduct.

Plaintiffs have great respect for this Court, but have concerns that this Court was nominated to the federal bench by former President Bill Clinton, who Defendant Hillary Clinton has touted will be a part of her administration should she win the presidency. Thus, there can at a minimum be an appearance of partiality in this Court administering to this case. As reported by the New York Times:

In an election year when Bill Clinton's policies and personal indiscretions have faced intense scrutiny, Hillary Clinton is beginning to shape the role her husband would play in her administration, zeroing in on economic growth and job creation as crucial missions for the former president.

**Mrs. Clinton told voters in Kentucky on Sunday that Mr. Clinton would be "in charge of revitalizing the economy, because, you know, he knows how to do it," especially "in places like coal country and inner cities." On a campaign swing this month before the West Virginia primary, she said her husband has "got to come out of retirement and be in charge" of creating jobs.**

She has not provided details about how a former president would fit into a policy-making role in his wife's administration, a position never before seen in American politics. (emphasis added)[.]

For this reason, and with this great respect, Plaintiffs simply ask that the Court consider having this case reassigned to another judge who was not nominated by President Clinton, the husband of Defendant Hillary Clinton, and a future integral

part of her administration should she win the presidency. The stakes herein are too great for this appearance of partiality to exist given the stakes involved to Plaintiffs and the rest of the nation.

*Id.* at 1-5 (footnotes omitted).  The quotations above are from what appear to be social media posts, which Plaintiffs attached to their motion for an emergency hearing. It is unclear when the posts were made.  In addition, Plaintiffs' evidence also includes a visual voice mail dated July 14, 2016, which references the "you cracker" comment.  Also attached to Plaintiffs' motion for an emergency hearing are (1) a copy of an online article regarding Plaintiffs' filing of this lawsuit and their allegations in the lawsuit that they have received death threats and notified the Federal Bureau of Investigation of such threats; and (2) a copy of an unsigned letter sent to Pennie, postmarked September 19, 2016. Plaintiffs appear to assert that the person who uses the anonymous online username of "Will Slapyou" sent the September 19 letter to Pennie.  Because there is overlap in the relief requested by Plaintiffs in their motion for an emergency hearing and their subsequently filed motion for recusal or disqualification under 28 U.S.C. § 144, the court addresses them together in this section before discussing Plaintiffs' objections to the *pro hac vice* application filed by Farrakhan's attorney.

A.    **Request for Emergency Hearing**

As noted, Plaintiffs first requested an emergency hearing late in the evening on September 22, 2016, to address "whether discovery must be ordered and an evidentiary hearing held to determine if any or all of the Defendants are behind these threats, and if so if appropriate proceedings must be commenced to remedy this, as well as whether this case should be assigned to another judge in this district given the possible appearance of partiality under these grave circumstances."  *Id.* at 6.  Plaintiffs' request for a hearing was made six days after they filed their Amended Complaint. Like the original Complaint, the Amended Complaint was followed by a number of motions to

dismiss and strike and objections by Defendants who have asserted jurisdictional challenges based on lack of subject matter and personal jurisdiction.

A court must address a motion to dismiss for lack jurisdiction before considering other challenges or reaching the merits of any case because, without jurisdiction, the court has no power to entertain the case. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004) ("[F]ederal courts are duty-bound to examine the basis of subject matter jurisdiction *sua sponte*, even on appeal."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (same).

Plaintiffs' request to conduct discovery and have an evidentiary hearing to determine whether any Defendants are responsible for the threats they received after filing suit implicates the merits of their claims. Before the court can address such a request, it must determine whether it has subject matter jurisdiction over the action. *See id.* It must also address the motions to dismiss for lack of personal jurisdiction. The court is reviewing the jurisdictional arguments raised in the various motions to dismiss filed by Defendants and will issue a decision in due time after the motions are ripe.

Further, discovery on the merits should not take place until the court has ruled on the jurisdictional issues. The only exception would be if discovery is necessary to determine whether the court has subject matter or personal jurisdiction. Once jurisdiction is established, discovery will be conducted in this case in accordance with the Federal Rules of Civil Procedure and any scheduling order entered by the court. *See* Fed. R. Civ. P. 16 and 26. District courts have broad discretion in managing their dockets, and this case will be no different in that regard. *In re Stone*, 986 F.2d 898, 902 (5th Cir.1993) (concluding that federal courts have inherent authority "to protect

the efficient and orderly administration of justice and . . . to command respect for [its] orders, judgments, procedures, and authority."); *Prudhomme v. Teneco Oil Co.*, 955 F.2d 390, 392 (5th Cir.1992) ("The district court has broad discretion in the management of its docket and the trial of lawsuits pending before it."). While the court makes an effort to accommodate the parties when possible in scheduling case deadlines, hearings, and trials, it cannot always arrange its busy civil and criminal dockets around the parties' or their attorneys' schedules, particularly when, as here, litigants wait until the eleventh hour to seek relief from the court without providing any explanation for their delay.

The court does not expect the parties to agree in every respect regarding matters that arise in litigation, but the court and this district require parties and their counsel to conduct themselves with some level of civility.  In light of the contentious and acrimonious nature of this litigation and the morass that has ensued,[2] the court instructs the parties and counsel to be mindful of *Dondi Properties Corporation v. Commerce Savings & Loan Association*, 121 F.R.D. 284 (N.D. Tex. 1988), and its far-reaching implications. Attorneys can be zealous advocates on behalf of their clients without being unprofessional.

Accordingly, for all of these reasons, the court determines that Plaintiffs are not entitled to an emergency evidentiary hearing and expedited discovery and **denies** Plaintiffs' Motion for Emergency Hearing Concerning Death and Other Threats Made Against Them and Related Issues and Requested Relief (Doc. 26).

---

[2] Within the short time that this case has been pending, there are already forty-seven entries on the docket, seventeen of which are pending motions or objections. While the court was in the process of drafting this order, Plaintiffs electronically filed as a motion a supplement to the affidavit of Pennie filed in support of their Motion to Recuse/Disqualify the undersigned.

**Memorandum Opinion and Order - Page 10**

## B.        Request for Recusal or Disqualification and Reassignment of Case

On October 6, 2016, Plaintiffs moved, pursuant 28 U.S.C. § 144, for recusal or disqualification of the undersigned and reassignment of this case to another district court judge.  In support of their motion, Plaintiffs submitted an original affidavit, which was subsequently supplemented on October 7, 2016.  After carefully considering the motion, affidavits, and applicable law, the court determines that the motion should be denied.[3]

### 1.        Applicable Legal Standard

Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. "The standard for determining whether a judge should disqualify himself under § 455 is whether a reasonable person knowing all the facts would conclude that the judge's impartiality

---

[3] As noted, Plaintiffs first requested that the case be reassigned to another judge in their Motion for Emergency Hearing.  Plaintiffs did not specify in that motion whether they were seeking reassignment under section 28 U.S.C. § 144 or 28 U.S.C. § 455, and the only basis urged for the requested reassignment was the alleged appearance of partiality as a result of the undersigned's appointment by former President Clinton, and President Clinton's affiliation with Defendant Hillary Clinton and his perceived role in Hillary Clinton's administration if she is elected as president of the United States.  Plaintiffs' Motion for Emergency Hearing was not supported by an affidavit as required by section 28 U.S.C. § 144, and the foregoing assertion is based on Plaintiffs' unsupported speculation, supposition, and opinion regarding the undersigned's ability to be impartial, which, as herein explained, is insufficient for recusal or disqualification under either section 28 U.S.C. § 144 or 28 U.S.C. § 455.  Accordingly, Plaintiffs' initial request for the court to reassign this case is **denied.**

might reasonably be questioned." *Hepperle v. Johnston*, 590 F.2d 609, 614 (5th Cir. 1979). "[D]isqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Health Servs. Acquisition v. Liljeberg*, 796 F.2d 796, 800 (5th Cir. 1986) (citation omitted).

Although section 144 refers to assignment to another judge, the presiding judge may transfer the matter to another judge for decision or decide it himself. *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 458 n.7 (5th Cir. 1996) (citations omitted). Further, there is no "negative inference that can be drawn from the fact that the judge to whom a motion to recuse is directed rules on the motion." *In re Corrugated Container Antitrust Litig.*, 614 F.2d 958, 963 n. 9 (5th Cir. 1980). Pursuant to section 144, a judge must reassign a case to another judge only "when a party makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." *United States v. Scroggins*, 485 F.3d 824, 829 n.19 (5th Cir.  2007) (internal quotations omitted). While the language of section 144 appears to require immediate reassignment, it is the presiding judge's responsibility to assess the timeliness and legal sufficiency of the affidavit:

> On its face [section 144] appears to require automatic disqualification upon filing of a proper affidavit. It has not been read this way. Instead, courts have held that the judge has not only the right but the duty to examine the affidavit and certificate to determine whether they are timely and legally sufficient. The affidavit and certificate are strictly construed against the party seeking disqualification. Only if the documents meet this strict scrutiny does recusal become mandatory.

3 Charles A. Wright, et al., Fed. Prac. & Proc. § 3551 (3d ed.) (footnotes omitted).

The court "must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matter alleged." *Henderson v. Department of Public Safety and Corrections*, 901 F.2d 1288,

1296 (5th Cir. 1990) (citation and internal quotation marks omitted). There are three requirements for a legally sufficient affidavit: "(1) the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable [person] that a bias exists; and (3) the facts must show the bias is personal, as opposed to judicial, in nature." *Id.* Considering the applicable legal standard, the court concludes that Plaintiffs' motion and affidavit are insufficient for a number of reasons to support recusal or disqualification.

## 2.    Section 144 Analysis

Pennie states in his affidavit that he believes that the undersigned cannot be impartial because the undersigned was appointed by former President Clinton, who is the husband of Defendant Hillary Clinton in this case.  This and similar arguments premised on a federal judge's appointment to the bench by a president and alleged political affiliation have been rejected by courts.  *See, e.g., Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 93 (D.D.C. 2011) ("The case law is clear that recusal is not warranted where a judge is alleged to be biased based solely on political connections to the President who appointed [him]."); *Klayman v. Judicial Watch, Inc*., 744 F. Supp. 2d 264, 277 (D.D.C. 2010) ("[T]hat the undersigned was appointed to the federal bench by former President Clinton, of whom Klayman has allegedly been critical in the past, does not warrant or justify disqualification.") (citing *Klayman v. Judicial Watch, Inc.*, 628 F. Supp.2d 98, 110-11 (D.D.C. 2009) ("[I]t is clear that the mere fact that the undersigned was appointed by the former Clinton administration—where former President Clinton is neither a party to or otherwise involved with this lawsuit—does not warrant or require recusal in the instant case."); *Karim–Panahi v. United States Congress*, 105 F. App'x 270, 274-75 (D.C. Cir. 2004) (affirming lower court's denial of motion for recusal based on allegations that the judge was "biased because of her 'political-religious

connections' and her alleged loyalty to those who selected, confirmed and appointed her"). Even when the President responsible for nominating the judge is actually a party to the litigation, courts have held that recusal is not warranted. *See In re Executive Office of President*, 215 F.3d 25, 25 (D.C. Cir. 2000); *Scott v. Perry*, Case No. A-15-CA-11-SS, 2015 WL 868995, at *1 (W.D. Tex. Feb. 27, 2015) ("Having reviewed the Complaint and the file as a whole, the Court can discern absolutely no meritorious basis upon which former President George W. Bush could be named as a defendant in this lawsuit. Moreover, even were Scott to name former President Bush as a defendant, a federal judge need not recuse himself from every case involving the President who appointed him.").

Based on the reasoning in these cases, the court concludes that mere appointment by a particular president is insufficient to convince a reasonable person that personal bias or prejudice exists. Even if former President Clinton were a party to this case, Pennie's belief regarding the attenuated connection between the court, the former president, and his wife's political speeches is based entirely on unsupported belief, conjecture, and speculation. Plaintiffs also suggest in their Motion that the court cannot be impartial because its "fellow African American judges and Texas Representatives have taken to attacking Plaintiff over [filing] this suit—going as far as to call Plaintiff Pennie essentially a clueless slave—for asserting his rights in this action." Pls.' Mot. 6-7 (Doc. 43). Plaintiffs, however, have presented absolutely no facts to support this belief and conclusory assertion, and there is nothing in Pennie's affidavit in this regard. As a matter of law, statements in an affidavit "based on 'information and belief' are legally insufficient [to support recusal of a judge]." *Henderson*, 901 F.2d at 1296. Such affidavits are not based on the affiant's personal knowledge. *Id*.

**Memorandum Opinion and Order - Page 14**

Pennie also states in his affidavits that he believes that the court's action or inaction in the case thus far indicates a bias in favor of Defendants and against Plaintiffs that warrants recusal. For example, in his one-page supplemental affidavit, Pennie refers to and attaches an October 7, 2016 article regarding the shooting of a police officer in Los Angeles. Pennie states, "This is further evidence that law enforcement officers are indeed being killed or seriously wounded every day, and I am in an elevated risk as a result of filing this litigation. This Court's inaction in the fact of this danger gives rise to a strong evidentiary inference of favoritism and bias for Defendants, and recusal is therefore necessary." Pennie Supp. Aff. 1. The essence of Plaintiffs' contention is that the court has not acted quickly enough in ruling on their motions seeking an extension of time to respond to a motion to dismiss and an emergency hearing, whereas, the court quickly granted an application filed by Defendant Farrakhan's attorney to appear *pro hac vice* before Plaintiffs had an opportunity to objection to the application. Plaintiffs assert that, as of the filing of their motion to recuse, it has been almost 41 days since they filed their routine motion for extension of time. Plaintiffs further assert that the court has yet to rule on their objection to the *pro hac vice* application. Once again, this statement is an insufficient basis for recusal, as it is based solely on Pennie's belief and is not supported by his personal knowledge. *Henderson*, 901 F.2d at 1296.

Moreover, unlike the types of motions filed by Plaintiffs, the Northern District of Texas's Local Civil Rules do not require parties to file a certificate of conference in support of such applications. *See* Local Civ. R. 83.7. Thus, there would have been no way for the court to know in advance that Plaintiffs intended to object to the application submitted by Farrakhans' attorney. Further, *pro hac vice* applications are generally granted, as a matter of course without objection in this district, unless there is a legitimate reason for the court to deny an application, such as prior

disciplinary action taken against an attorney that precludes him or her from practicing in this district. Frankly, in more than eighteen years on the bench, the court cannot recall any objection made by opposing counsel to a *pro hac vice* application.  Plaintiffs' personal opinion of the Nation of Islam and their contention that the court should have denied the application and required "Defendant Farrakhan [to] retain an attorney [who] is not affiliated with the Nation of Islam," Pls.' Obj. 3, are not valid bases for denying a *pro hac vice* application.

On the other hand, certificates of conference are required under the court's Northern District of Texas's Local Civil Rules for the types of motions filed by Plaintiffs, and Plaintiffs' motions for extension of time and an emergency hearing both indicate that they are opposed. Consequently, the court could not rule on them before giving  Defendants an opportunity to respond and Plaintiffs an opportunity to file a reply. Local Civ. R. 7.1.  Because the briefing process for an opposed motion generally takes more than one month and the court's orders on such motions are usually more detailed, the court *rarely* rules on disputed motions within thirty days or less, even when they are routine motions for extension of time.

The court currently has a total of over 330 civil cases and 90 criminal cases that it is overseeing at this time and cannot realistically devote all of its scarce judicial resources to this case when it has much older cases and motions that also need its attention.  For these reasons, it is risky for a party to wait until the eve of a deadline before seeking an extension of time.  Here, Plaintiffs' response to Farrakhan's motion to dismiss was due Monday, August 29, 2016, but they waited until 7 p.m. on Friday, August 26, 2016, before filing their opposed motion to extend their response

**Memorandum Opinion and Order - Page 16**

deadline, so it would not have been possible for the court to rule on the motion before Plaintiffs' response deadline.

Moreover, fourteen business days later, Plaintiffs filed an Amended Complaint, which in effect mooted the motions to dismiss filed by Defendants, as well as Plaintiffs' motion for an extension of time to respond to those motions.[4]  Plaintiffs' decision to amend their pleadings also delayed the resolution of their motion for emergency hearing because, as previously explained, the original and subsequently filed motions to dismiss include jurisdictional issues that must be decided first after full briefing by the parties. To date, the briefing on the motions to dismiss the Amended Complaint is not yet ripe.

As with their motion for extension of time, Plaintiffs similarly waited until the eleventh hour to file their motion for emergency hearing late on a Thursday evening, September 22, 2016, at 8:44 p.m. Plaintiffs requested that the court conduct a hearing on their motion the following week on Tuesday, September 27, 2016, "to determine the appropriate course of action" regarding alleged "death and other threats of physical violence made against them" and their families. Pls.' Mot. 1, 6. Thus, Plaintiffs requested an emergency hearing before Defendants had an opportunity to respond to their opposed motion.  According to Plaintiffs' own evidence, however, the first of these alleged threats was received ten weeks earlier on July 14, 2016.  Plaintiffs, nevertheless, waited to file their motion and provided no explanation for the sudden urgency but still expected the court to schedule and conduct a hearing with only two business days' notice.  Regardless, Pennie's affidavits and

---

[4] Normally, the filing of an amended complaint will moot motions to dismiss the original complaint.  The court understands that certain Defendants have moved to strike the Amended Complaint as untimely.  The court will address the motions that pertain to Plaintiffs' Amended Complaint in a separate order, including the motions to strike the Amended Complaint.

**Memorandum Opinion and Order - Page 17**

Plaintiffs' assertions about the court acting too fast in some instances and not fast enough in other instances are insufficient to justify recusal because Plaintiffs' belief that the court's action or inaction is rooted in bias relates to judicial dispositions rather than bias that is personal in nature, and Plaintiffs have presented no evidence to support their conclusory assertion and unsupported belief that the court's management of this case evinces personal bias. *Henderson*, 901 F.2d at 1296.

Plaintiffs' motion for recusal or disqualification also fails because it is untimely to the extent it is based on the court's appointment to the federal bench by former President Clinton. "[O]ne seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994). It is a matter of public knowledge that the court was appointed in 1998 to the federal bench by former President Clinton, and Pennie's affidavits contain no facts from which the court can conclude that he was not aware of this fact when the case was filed. Plaintiffs, nevertheless, waited more than two months before raising this concern for the first time in the motion for emergency hearing. As already noted, Plaintiffs also waited more than two months before first seeking reassignment of the case after the first death threat, although they contend that the court has intentionally ignored this and other alleged threats because of alleged bias stemming from the court's appointment by former President Clinton or other unspecified affiliations. Plaintiffs' motion and requests for recusal or disqualification based on alleged bias are, therefore, untimely.

As a final matter, the courts also notes that, while Plaintiffs' motion is accompanied by a certificate of counsel by Mr. Klayman, as Plaintiffs' counsel of record, that states, "I hereby certify that this Motion, made pursuant to 28 U.S.C. § 144, is being made in good faith," the certificate does not state that Pennie's affidavits are made in good faith as required by section 144. 28 U.S.C. § 144

("A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.").  Further, Pennie's second affidavit violates section 144, which limits a party to filing only one affidavit in support of recusal.  *See id.*; *see also United States v. Merkt*, 794 F.2d 950, 961 (5th Cir. 1986) ("[Movant's] affidavit violates the one affidavit rule . . . and need not be considered").  Even if the court considered the supplemental affidavit, it is legally insufficient to require the court's recusal for the same reasons his original affidavit is inadequate, as it is based on his unsupported opinions, conclusions, and speculation.  *See id.*

In sum, Sergeant Pennie's affidavits are riddled with his subjective beliefs, conjecture, supposition, and unsupported conclusory allegations, and, thus, are not based on personal knowledge.  *Henderson*, 901 F.2d at 1296.   As such, the affidavits are woefully inadequate, as a matter of law, and cannot serve as a basis for recusal or disqualification of the undersigned.  *See id.* For this reason and all of the other reasons mentioned, the court **denies** Plaintiffs' Motion to Recuse/Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc. 43).

## III.  Plaintiff Larry Klayman's Objection to *Pro Hac Vice* Application

For the reasons explained, the court **overrules** Plaintiff Larry Klayman's Opposition to Admission of Abdul Arif Muhammad *Pro Hac Vice* Application (Doc. 9).  Further, the court determines that Plaintiffs have suffered no legal prejudice as a result of it granting the application before Plaintiffs had an opportunity to respond or object to the application.

## IV.  Conclusion

For the reasons stated, the court **denies** Plaintiffs' Motion for Emergency Hearing Concerning Death and Other Threats Made Against Them and Related Issues and Requested Relief

**Memorandum Opinion and Order - Page 19**

(Doc. 26); **denies** Plaintiffs' Motion to Recuse/Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc. 43); and **overrules** Plaintiff Larry Klayman's Opposition to Admission of Abdul Arif Muhammad *Pro Hac Vice* (Doc. 9).  Although the Supplement to Affidavit of Demetrick Pennie in Support of Plaintiffs' Motion to Recuse/Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc. 44) was filed as a "motion," it is not a motion, and the clerk is directed to **term** it so that it no longer appears on the docket as a pending motion.

**It is so ordered** this 12th day of October, 2016.

Sam A. Lindsay
United States District Judge