**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LARRY KLAYMAN** | * | |
| | * | **CIVIL ACTION NO. 3:16-cv-02010** |
| **v.** | * | |
| | * | **JUDGE SAM A. LINDSAY** |
| **PRESIDENT BARACK OBAMA, ET AL** | * | |
| | * | |

**************************************

**MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**
**BY DEFENDANT DERAY MCKESSON**

Lauren York, Texas Bar No. 24098647
AKIN GUMP STRAUSS HAUER
& FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4624
Telephone: (214) 969-4395
Facsimile: (214) 969-4343
lyork@akingump.com

William P. Gibbens, La. Bar No. 27225
Admitted *Pro Hac Vice*
Jacob K. Weixler, La. Bar No. 36076
Admitted *Pro Hac Vice*
Teva F. Sempel, La. Bar No. 35409
Admitted *Pro Hac Vice*
SCHONEKAS, EVANS, McGOEY
& McEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Telephone: (504) 680-6050
Facsimile: (504) 680-6051
billy@semmlaw.com
jake@semmlaw.com
teva@semmlaw.com

***Counsel for DeRay Mckesson***

# TABLE OF CONTENTS


TABLE OF CONTENTS ........................................ ii

TABLE OF AUTHORITIES ........................................ iii

BACKGROUND ........................................ 4

I. Allegations in the Instant Litigation ........................................ 4

II. Frivolous Lawsuits Previously Filed by Mr. Klayman ........................................ 6

a. *Klayman v. Obama et al.*, No. 16-80087 (S.D. Fla.) ........................................ 6

b. *Klayman v. Obama et al.*, No. 15-81023 (S.D. Fla.) ........................................ 7

c. *Klayman v. Obama et al.*, No. 14-1704 (D.D.C.) ........................................ 8

d. *Klayman v. Clinton et al.*, No. 15-80388 (S.D. Fla.) ........................................ 8

LAW AND ARGUMENT ........................................ 9

I. Mr. Klayman Has Violated Rule 11. ........................................ 9

a. Rule 11, Generally ........................................ 9

b. Plaintiffs' Filed Claims Against Mr. Mckesson Knowing Them To Be Meritless. ....... 12

1. Plaintiffs' Filed This Suit Despite Knowing That They Lacked Standing. ........... 12

2. Plaintiffs Filed This Suit Despite Knowing That This Court Lacks Personal Jurisdiction Over Mr. Mckesson. ........................................ 15

3. Plaintiffs Filed This Suit Despite Knowing That Their Substantive Claims Completely Lack Merit. ........................................ 16

c. Plaintiffs Filed Suit Against Mr. Mckesson For An Improper Purpose. ........................ 17

II. Mr. Klayman Should Be Sanctioned. ........................................ 20

a. Sanctions, Generally ........................................ 20

b. Sanctions Should Be Imposed. ........................................ 22

CONCLUSION ........................................ 25

CERTIFICATE OF SERVICE ........................................ 25

CERTIFICATE OF CONFERENCE ........................................ 26

# TABLE OF AUTHORITIES

## Cases

*Allen v. Wright*,
468 U.S. 737 (1984) ........ 8

Anderson v. Law Firm of Shorty, Dooley & Hall,
697 F. Supp. 2d 664 (E.D. La. 2010) ........ 20, 22

*Baldwin Hardware Corp. v. FrankSu Enter. Corp.*,
78 F.3d 550 (Fed. Cir. 1996), *as modified on reh'g* (May 22, 1996) ........ 24

*Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) ........ 8, 16, 17

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010) ........ 15

*Bullard v. Chrysler Corp.*,
925 F. Supp. 1180 (E.D. Tex. 1996) ........ 18, 22

*Business Guides, Inc. v. Chromatic Commun. Enter., Inc.*,
498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) ........ 11

*Calder v. Jones*,
465 U.S. 783 (1984) ........ 15

*Childs v. State Farm Mut. Auto Ins. Co.*,
29 F.3d 1018 (5th Cir. 1994) ........ 10, 11

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........ 8

FDIC v. Calhoun,
34 F.3d 1291 (5th Cir. 1994) ........ 11, 17

*Jenkins v. Methodist Hospitals of Dallas, Inc.*,
478 F.3d 255 (5th Cir. 2007) ........ 10, 11, 21

*Jennings v. Joshua Indep. Sch. Dist.*,
948 F.2d 194 (5th Cir. 1991) ........ 10

*Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*,
159 F. Supp. 2d 763 (D.D.C. 2001) ........ 24

*Kissinger v. Reporters Comm. for Freedom of the Press*,
445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) ........ 9

*Klayman v. City Pages*,
No. 13-143, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016) ........ 24

*Klayman v. Clinton et al.*,
No. 15-80388 (S.D. Fla.) ........ 8, 9

*Klayman v. Clinton*,
No. 15-14080, 2016 WL 4271869 (11th Cir. Aug. 15, 2016) ........ 9

*Klayman v. Clinton*,
No. 9:15-cv-80388-DMM, slip op. 5-9 (S.D. Fla. Aug. 11, 2015) ........ 13

*Klayman v. Deluca*,
No. 5:14-CV-03190-EJD, 2015 WL 427907 (N.D. Cal. Jan. 30, 2015) ........ 15

*Klayman v. Loeb*,
No. 5:13-cv-00267-WTH-PRL, slip op. at 1 (M.D. Fla. Jan. 27, 2014) ........ 16

*Klayman v. Obama (Ebola)*,
No. 14-1704 (D.D.C.) ........ 3, 8, 17

*Klayman v. Obama (Firearms Executive Action)*,
No. 16-CV-80087, 2016 WL 4431530 (S.D. Fla. June 16, 2016) ........ 3, 6, 7, 13, 14, 19

*Klayman v. Obama (Iran Treaty)*,
No. 15-81023, 2015 WL 5269958 (S.D. Fla. Sept. 10, 2015) ........ 3, 7, 8, 13, 19

*Klayman v. Obama*,
125 F. Supp. 3d 67 (D.D.C. 2015) ........ 17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 8, 13, 14

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*,
138 F.3d 33 (2d Cir. 1998) ........ 24

*Macdraw, Inc. v. CIT Grp. Equip. Fin., Inc.*,
994 F. Supp. 447 (S.D.N.Y. 1997), *aff'd*, 138 F.3d 33 (2d Cir. 1998) ........ 23

*Marceaux v. Lafayette City-Parish Consol. Gov't*,
14 F. Supp. 3d 760 (W.D. La. 2014), *aff'd*, 614 F. App'x 705 (5th Cir. 2015) ........ 18

*Massachusetts v. Mellon*,
262 U.S. 447 (1923) ........ 8

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*,
No. 94-1184, 1997 WL 243223 (D.D.C. May 7, 1997), *aff'd in part and remanded on different grounds*, 146 F.3d 983 (D.C. Cir. 1998) .......... 23

*Nault's Auto. Sales, Inc. v. Am. Honda Motor Co., Acura Auto. Div.*,
148 F.R.D. 25 (D.N.H. 1993) .......... 21

Pigford v. Veneman,
215 F.R.D. 2 (D.D.C. 2003) .......... 21

*Raines v. Byrd*,
521 U.S. 811 (1997) .......... 8

*Robinson v. National Cash Register, Co.*,
808 F.2d 1119 (5th Cir.1987) .......... 11

*Smith v. Our Lady of the Lake Hosp., Inc.*,
960 F.2d 439 (5th Cir. 1992) .......... 11

*St. Amant v. Bernard*,
859 F.2d 379 (5th Cir.1988) .......... 11

*Thomas v. Capital Sec. Serv., Inc.*,
836 F.2d 866 (5th Cir. 1988) .......... 10, 11, 20, 21, 22

*Tyler v. Judges of Court of Registration*,
179 U.S. 405 (1900) .......... 8

United States v. Excellair, Inc.
637 F.Supp. 1377 (D.Colo.1986) .......... 21

*Warth v. Seldin*,
422 U.S. 490 (1975) .......... 8

*Whitehead v. Food Max of Mississippi, Inc.*,
332 F.3d 796 (5th Cir. 2003) .......... 12, 17

*Wire Rope Importers' Ass'n v. United States*,
18 C.I.T. 478 (1994) .......... 23

Worrell v. Houston Can! Acad.,
287 F. App'x 320 (5th Cir. 2008) .......... 21

**Other Authorities**

18 U.S.C. § 1961 .......... 8

42 U.S.C. § 1983 .......... 3, 7, 8, 16, 17, 18

42 U.S.C. § 1985 .......... 3, 8, 16, 17, 18

Fed. R. Civ. P. 11 .......... 10, 11, 12, 14, 20, 21, 22, 23

Fed. R. Civ. P. 11(b) .......... 10, 20

Fed. R. Civ. P. 11(b)(1) .......... 20

Fed. R. Civ. P. 11(b)(2) .......... 12

Fed. R. Civ. P. 11(c) .......... 20

Fed. R. Civ. P. 11(c)(2) .......... 22

Fed. R. Civ. P. 11(c)(4) .......... 20

Fed. R. Civ. P. 12(f) .......... 21

Fed. R. Civ. P. 5 .......... 20

USCIT R. 11 .......... 23

**NOW INTO COURT**, through undersigned counsel, comes Defendant DeRay Mckesson, who respectfully submits the following Memorandum in Support of his Motion for Sanctions against Plaintiffs and Plaintiffs' counsel.

Plaintiffs' claims against Mr. Mckesson are entirely frivolous and justify the imposition of sanctions by this Court. Plaintiffs' counsel knows or should know that Plaintiffs have no legal claim against Mr. Mckesson, as Mr. Klayman is both a lawyer with over thirty years of experience and a litigant who has unsuccessfully attempted to advance similar claims several times in the recent past. Despite Mr. Klayman's familiarity with the operable legal standards and this profession's standards of professional conduct, Mr. Klayman filed this frivolous lawsuit with no cognizable claim, likely for the purposes to harass Mr. Mckesson and publicly express his disapproval of the Black Lives Matter movement.

**Plaintiffs have no injury from which to seek relief in this Court – Mr. Klayman simply dislikes and disagrees with the message of Black Lives Matter, and wishes to use this Court as his soap box.** In a rambling post he published to a conservative website to announce this lawsuit's filing, Mr. Klayman says that he has been waiting "a long time," for the right opportunity "to bring legal actions against white, Jewish and Christian haters like… Black Lives Matter." Larry Klayman, *Obama, BLM inspired Dallas massacre*, WORLDNETDAILY (July 8, 2016, 7:34 PM), http://www.wnd.com/2016/07/obama-blm-inspired-dallas-massacre/ (attached hereto and referred to herein as Exhibit "A") (App'x at 2). According to Klayman's own words, he is "try[ing] to use the legal system" against individuals he believes, without evidence, are "the instigators" of what he sees as a "new race war." *Id.* "Someone has to take the first step," Mr. Klayman says, "and I have concluded it has to be me." *Id.* Mr. Klayman's blog post, as well as his later press releases and television appearances to promote this suit,

demonstrate Mr. Klayman's clear motivation for filing this matter. Despite lacking any cognizable injury and having no specific allegations regarding Mr. Mckesson, Mr. Klayman and Mr. Pennie blame Black Lives Matter for a wide array of incidents that do not involve either Plaintiff. They disagree with the message of the Black Lives Matter movement, and they wish to use this Court to harass those whom they believe to be involved.

Though Plaintiffs have no credible claim against Mr. Mckesson, Mr. Klayman, a seasoned lawyer, has nonetheless chosen to file this suit against him. Mr. Mckesson lives in Baltimore, Maryland where he works as an administrator for the Baltimore City Schools. Mr. Mckesson is also a well-known voice in the Black Lives Matter movement, and he advocates for peaceful protests to raise public awareness of police violence. The only specific allegation regarding Mr. Mckesson in this suit claims that Mr. Mckesson attended meetings at the White House with others to discuss issues surrounding police violence. Based on these meetings, Mr. Klayman baldly concludes that Mr. Mckesson is responsible for plotting mayhem and murder. For example, Mr. Klayman alleges that Mr. Mckesson, as well was "each and every one" of the other Defendants, "incited committed [sic] unlawful acts including violent riots, assaults and murders law of enforcement." Rec. Doc. 1, ¶ 15; Rec. Doc. 16, ¶ 27.

**Mr. Klayman knows that Plaintiffs have no legally cognizable claim in this case because Mr. Klayman has tried and failed to assert similar claims in federal court in the recent past**. Mr. Klayman, an attorney formerly with the U.S. Department of Justice and a serial litigant, has filed many suits like this one for alleged constitutional deprivations and other incorporeal injuries against President Obama and other officials. In fact, Mr. Klayman's recent litigation history shows that he knows or should know that the precise claims that he asserted here are meritless. For instance, Plaintiffs lack standing in this matter because they have

suffered no injury-in-fact, a deficiency that resulted in the dismissal of at least two other recent lawsuits filed by Mr. Klayman.

Despite the fact that Mr. Klayman knows or should know that the claims in the instant suit suffer from the same deficiencies as his previous failed crusades, he has again chosen the federal courts as the forum to express his anger at those with which he disagrees. Mr. Klayman's instant suit bears the following similarities, among others, to his previously unsuccessful, frivolous suits:

1. Mr. Klayman alleges in vague terms that he has been personally harmed by an incident, act, or policy change of national importance.[1]

2. Mr. Klayman cannot articulate a particular injury that he has suffered except that he has developed fear or apprehension that he will be harmed in the future.[2]

3. Mr. Klayman alleges that President Obama's act, policy or response to the incident harms Christians, Jews, or Caucasians as a class.[3]

4. Mr. Klayman attempts to fashion statutory claims for relief under § 1983, § 1985 or common law claims for intentional infliction of emotional distress or assault out of a conclusory and conspiracy theory-laden set of factual allegations.[4]

Troublingly, Mr. Klayman has now shifted his tactics also to target private citizens like Mr. Mckesson in addition to public officials like President Obama, with his baseless tort claims and unsubstantiated conspiracy theories. Unlike many of Mr. Klayman's prior public official targets, Mr. Mckesson does not have the resources of the U.S. Justice Department with which to defend himself for these meritless claims. Instead, Mr. Klayman's baseless suit forced Mr.

---

[1] *See, e.g.*, *Klayman v. Obama (Firearms Executive Action)*, No. 16-CV-80087, 2016 WL 4431530 (S.D. Fla. June 16, 2016); *Klayman v. Obama (Iran Treaty)*, No. 15-81023, 2015 WL 5269958 (S.D. Fla. Sept. 10, 2015); *Klayman v. Obama (Ebola)*, No. 14-1704 (D.D.C.), Def.'s Mot. to Dismiss, p. 4 (Rec. Doc. 9) (attached hereto and referred to herein as Exhibit "B") (App'x at 5).

[2] *See, e.g.*, *Firearms Executive Action*, 2016 WL 4431530, at *3; *Iran Treaty*, 2015 WL 5269958, at *1; *Ebola*, No. 14-1704 (D.D.C.), Exh. B, App'x at 6.

[3] *See, e.g.*, *Iran Treaty*, 2015 WL 5269958, at *1; *Ebola*, No. 14-1704 (D.D.C.), Exh. B, App'x at 6.

[4] *See, e.g.*, *Iran Treaty*, 2015 WL 5269958, at *1; *Ebola*, No. 14-1704 (D.D.C.), Exh. B, App'x at 6.

Mckesson to retain private counsel to appear in a court half way across the country from his home and litigate against a man he has never met.

Given Plaintiffs' dearth of specific allegations against Mr. Mckesson, their lack of any cognizable injury, their clear lack of standing, and Mr. Klayman's pattern of filing similar frivolous claims in courts around the country, this Court should strongly sanction Plaintiffs and Plaintiffs' counsel, Mr. Klayman. Accordingly, Mr. Mckesson asks that this Court dismiss this suit, order Plaintiffs and/or Mr. Klayman to pay Mr. Mckesson for all costs, attorney's fees and expenses associated with his defense, and any additional sanctions sufficient to deter Mr. Klayman from further abuse of the federal courts.

## BACKGROUND

### I. Allegations in the Instant Litigation

Mr. Klayman, as both counsel and lead plaintiff, has chosen Defendant DeRay Mckesson as a target of his animosity towards the Black Lives Matter movement. Defendant DeRay Mckesson is the Interim Chief Human Capital Officer for the Baltimore City Public Schools and is one of the best known voices in the Black Lives Matter movement. Though Mr. Mckesson is a named Defendant in this action, Mr. Mckesson's name only briefly appears in the Amended Complaint. Those brief mentions are as follows:

> On information and belief, the citizenship of the Defendants is [sic]… Mr. DeRay McKesson [sic], Baltimore, Maryland.

Rec. Doc. 16, ¶ 9.

> Defendant BLM was created by Defendants Alicia Garza, Patrisse Cullors, and Opal Tometi. Defendants Rashad Turner, Johnetta Elzie and DeRay McKesson are all leaders of Defendant BLM.

*Id.* at ¶ 125 (parentheticals omitted).

> Defendant McKesson, a leader of Defendant BLM, even lives in the home of Robin Wood, who is a board members [sic] of Defendant Soros' Open Society Institute.

*Id*. at ¶ 164.

> Moreover, on September 17, 2015, the BLM Defendants and Campaign Zero met in the White House with President Obama's primary adviser, aide, and implementer Valerie Jarrett, who is Iranian Shia anti-Semitic Muslim, and other White House officials. According to news reports, participants included Defendants Mckesson and Elzie.

*Id.* at ¶ 183.

> The topic of The White House meeting with Black Lives Matter and similar groups was mutual plans for changing official government policies about police officers and law enforcement.

*Id*. at ¶ 184.

> Immediately after the Dallas Police Shooting, in July 2016, Defendant Obama met again with the Defendant BLM at the White House. Present at the meeting was Defendant Mckesson. At the conclusion of the meeting, Defendant Obama stated, "[w]e're not at a point yet where communities of color feel confident that their police departments are serving them with dignity and respect and equality." This statement was made to implicitly blame law enforcement officers for the Dallas Police Shooting, instead of holding the true culprits - his co-Defendants – responsible.

*Id.* at ¶ 185.

In those brief mentions, Plaintiffs only allege the following about Mr. Mckesson: (1) he is a leader of Black Lives Matter, (2) he attended two meetings at the White House to discuss issues related to race and policing, and (3) he lives in a home owned by non-party Robin Wood. Significantly, Plaintiffs make no allegation that there was any discussion in any meetings about any plan to commit acts of violence, or any other illegal acts. Although Plaintiffs make no specific allegations against Mr. Mckesson, Plaintiffs broadly contend that the Black Lives Matter movement and the other Defendants caused the tragic shooting of 12 police officers in Dallas on July 8, 2016, and other hostilities toward law enforcement.

Plaintiffs offer no factual support that Mr. Mckesson was in any way involved in any of these incidents, nor do they allege with any specificity the injuries they suffered as a result. Mr. Klayman generically claims that he has been deprived of his rights because he "imminently fears" that he will be attacked as "a high profile Caucasian messianic Jew" who is "part of law enforcement" since he is a former Justice Department prosecutor, ran unsuccessfully for Senate in 2004, and founded two conservative legal organizations. Rec. Doc. 16, ¶ 16. Similarly, Officer Pennie generically alleges that he has "been threatened with death and/or serious bodily harm by Defendants." Rec. Doc. 16, ¶ 15.

## II. Frivolous Lawsuits Previously Filed by Mr. Klayman

Mr. Klayman has a long history of filing frivolous lawsuits concerning political and national policy matters. A brief overview of several of Mr. Klayman's recent, similar lawsuits follows below, showing that Mr. Klayman regularly employs the vexatious tactics and legally-unfounded allegations he has employed in this case.

### a. *Klayman v. Obama et al.*, No. 16-80087 (S.D. Fla.)

Earlier this year, Mr. Klayman sued President Obama, Attorney General Loretta Lynch, and Thomas Brandon, head of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) claiming that President Obama's executive action on firearms sales increased his risk of prosecution as the owner of three firearms. *Firearms Executive Action*, 2016 WL 4431530, at *3. Particularly, Mr. Klayman proffered that he intended to buy, sell, and trade guns, acts that he claimed would be prohibited under the administration's new rules. *Id.* Mr. Klayman also alleged that "[g]iven [his] prominence… in challenging the status quo in government and in particular the Obama administration," the government was likely to prosecute him. *Id.*

**The court dismissed Mr. Klayman's suit because Mr. Klayman lacked standing**, and particularly because Mr. Klayman had not suffered an "injury-in-fact" as required. *Id.* at *5. In doing so, the court found that the ATF rules that Mr. Klayman complained of did not even apply to him, much less pose a credible threat of prosecution to Mr. Klayman. *Id.* at *3-5. The court quoted the language of the ATF's rules and noted that Mr. Klayman's "alleged fear is based on an incomplete reading of the ATF guidance." *Id.* at *5. Mr. Klayman also took issue with a provision of the executive action aimed at prohibiting firearms sales to the mentally ill, but the court also found that Mr. Klayman lacked standing to challenge that provision, noting that Mr. Klayman had not alleged that he had a mental illness nor any other facts that indicated he was likely to suffer an injury-in-fact. *Id.* "Without an injury-in-fact, Plaintiff lacks Article III standing to proceed on any of his claims." *Id.*

**b. *Klayman v. Obama et al.*, No. 15-81023 (S.D. Fla.)**

Last year, Mr. Klayman sued President Obama, Congressman Patrick Murphy, and Senators Marco Rubio and Bill Nelson under § 1983 alleging that "as a Christian Jew," he would be "personally endangered" by the President's newly-negotiated treaty with Iran. *Iran Treaty*, 2015 WL 5269958, at *1. Mr. Klayman alleged that as "a Christian Jew [and periodic visitor to Israel]," his safety was "directly threaten[ed]" because the treaty would lead to a "rise in anti-Semitism in the Western world, fueled by Western societies increasingly intimidated by the growing power of terrorist groups and state sponsors of terror like Iran as Iran becomes vastly more powerful and richer and develops nuclear weapons." *Id.*

**The court again found that Mr. Klayman lacked standing**, holding again that Mr. Klayman did not allege a sufficiently "concrete" injury. Specifically, the court explained that standing does not exist where a plaintiff's alleged injury is merely "a generalized grievance

shared in substantially equal measure by all or a large class of citizens," citing at least *seven* controlling U.S. Supreme Court cases as binding authority. *Id.* at *2-3 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), *Warth v. Seldin*, 422 U.S. 490 (1975), *Allen v. Wright*, 468 U.S. 737 (1984), *Massachusetts v. Mellon*, 262 U.S. 447 (1923), *Tyler v. Judges of Court of Registration*, 179 U.S. 405 (1900), and *Raines v. Byrd*, 521 U.S. 811 (1997)).

**c. *Klayman v. Obama et al.*, No. 14-1704 (D.D.C.)**

In 2014, Mr. Klayman filed suit against President Obama and other officials asserting § 1983, § 1985, intentional infliction of emotional distress and assault claims, as he does in this case. Klayman alleged that the President and others were "facilitating the opportunity and in fact furthering terrorism by infecting Plaintiff and other American citizens with the Ebola virus…." *Ebola*, No. 14-1704 (D.D.C.) (App'x at 8). Mr. Klayman's purported claims were based on his concern that he may contract Ebola because he visited the Newark airport. *Id.*, App'x at 10. According to Mr. Klayman, President Obama's actions on Ebola discriminated "against Plaintiff and other Jewish and Christian Caucasian Americans" in favor of "Africans and Muslims." *Id.*, App'x at 7. **After the Justice Department submitted a blistering motion to dismiss calling the claims baseless and "spun on delusion and fantasy," Mr. Klayman voluntarily dismissed his suit.** *Id.*, App'x at 16.

**d. *Klayman v. Clinton et al.*, No. 15-80388 (S.D. Fla.)**

In 2015, Mr. Klayman filed suit against Hillary Clinton, Bill Clinton, and the Clinton Foundation, asserting six causes of action, including two claims under *Bivens*, three claims under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 et seq.) ("RICO"), and a claim under the common law for "Misappropriation of Chattel Property." *Klayman v.*

*Clinton*, No. 15-80388 (S.D. Fla.), Complaint, p. 45-54. Klayman alleged that he was harmed by Secretary Clinton's use of a private email server, and that the Clintons, along with the Clinton Foundation, sold access to and influence over the U.S. government "in return for gratuitous and illegal payment – bribes – disguised as donations" to the Foundation. *Id.* at p. 3-4. Mr. Klayman asserted standing because he submitted FOIA requests concerning documents he purported were impermissibly stored on Secretary Clinton's private server. *Id.*

**The court dismissed Mr. Klayman's action for failing "to allege facts sufficient to support Article III standing."** *See Klayman v. Clinton*, No. 15-14080, 2016 WL 4271869, at *1 (11th Cir. Aug. 15, 2016) (emphasis added) (affirming dismissal). The court pointed out that under *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), Mr. Klayman lacked a "general property interest in government records and FOIA does not provide for private actions to recover records wrongfully removed from Government custody." *See Klayman*, 2016 WL 4271869, at *1 (internal quotation omitted). In rejecting Mr. Klayman's argument that he should be permitted to submit a second amended complaint, the Eleventh Circuit noted that "[l]ike its predecessor, the proposed second amended complaint contains no factual allegations that would show a concrete injury-in-fact, as required for Article III standing." *Id.*

## LAW AND ARGUMENT

### I. Mr. Klayman Has Violated Rule 11.

#### a. Rule 11, Generally.

Rule 11 provides, in relevant part:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's

> knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > **(1) it is not being presented for any improper purpose, such as to harass**, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > **(2) the claims, defenses, and other legal contentions are warranted by existing law** or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > **(3) the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and …

Fed. R. Civ. P. 11(b) (emphasis added).

In the Fifth Circuit, the rule "impose(s) three affirmative duties with which an attorney or litigant certifies he has complied by signing a pleading, motion, or other document." *Childs v. State Farm Mut. Auto Ins. Co.*, 29 F.3d 1018, 1023-24, (5th Cir. 1994). Those duties are:

> 1. that the attorney has conducted a reasonable inquiry into the facts which support the document;
>
> 2. that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and
>
> 3. that the modification is not interposed for purposes of delay, harassment, or increasing the costs of litigation.

*Id.* at 1024, *citing Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988). Generally, Rule 11 requires a lawyer to "stop-and-think before making legal or factual contentions." *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 265 (5th Cir. 2007).

Rule 11 "imposes on trial courts an objective standard of reasonableness under the circumstances." *Jennings v. Joshua Indep. Sch. Dist.*, 948 F.2d 194, 197 (5th Cir. 1991) (*citing*

*Business Guides, Inc. v. Chromatic Commun. Enter., Inc.,* 498 U.S. 533, 111 S.Ct. 922, 931-32, 112 L.Ed.2d 1140 (1991)); *Thomas*, 836 F.2d at 873. An attorney's good faith is not enough to protect him from Rule 11 sanctions. *Childs*, 29 F.3d at 1024 (*citing Robinson v. National Cash Register, Co.*, 808 F.2d 1119, 1127 (5th Cir.1987)); *see also Jenkins*, 478 F.3d at 264. "The reasonableness of the conduct involved is to be viewed at the time counsel or the party signed the document alleged to be the basis for the Rule 11 violation." *Childs*, 29 F.3d at 1024.

The Fifth Circuit considers the following factors in determining whether an attorney has made a reasonable inquiry into the facts sufficient to satisfy Rule 11:

> 1. the time available to the signer for investigation;
> 2. the extent of the attorney's reliance upon his client for the factual support for the document;
> 3. the feasibility of pre-filing investigation;
> 4. whether the signing attorney accepted the case from another member of the bar or forwarding attorney;
> 5. the complexity of the factual and legal issues; and
> 6. the extent to which development of the factual circumstances underlying the claim requires discovery.

*Childs*, 29 F.3d at 1026 (*citing Thomas*, 836 F.2d at 875); *St. Amant v. Bernard*, 859 F.2d 379, 383 (5th Cir.1988).

As to legal allegations, an attorney "need not provide an absolute guarantee of the correctness of the legal theory advanced in the papers he files." *FDIC v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir. 1994). Rather:

> …'the attorney must certify that he has conducted reasonable inquiry into the relevant law.' Then, regardless of whether the attorney's view of the law is erroneous, sanctions can be imposed only if his position can 'fairly be said to be unreasonable from the point of view of both existing law and its possible extension, modification, or reversal.'

*Id. quoting Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444-45 (5th Cir. 1992).

In determining whether a Rule 11 violation has occurred as a result of presenting a paper for an "improper purpose," the court may do so "where the improper purpose is objectively ascertainable." *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 805 (5th Cir. 2003) (finding improper purpose where attorney sought writ to harass opposing party and to promote himself).

Applying the standards articulated in the above-cited authorities, Plaintiffs and their counsel violated Rule 11 by filing the Complaint (Rec. Doc. 1) and Amended Complaint (Rec. Doc. 16) in this matter. Plaintiffs' claims have no basis in law or fact, and the claims were filed simply to harass Mr. Mckesson because Plaintiffs disagree with Mr. Mckesson's political activities, and seek to garner attention for their own views.

**b. Plaintiffs' Filed Claims Against Mr. Mckesson Knowing Them To Be Meritless.**

As Mr. Mckesson indicates in his Motion to Dismiss and its accompanying Memorandum in Support, (1) Plaintiffs lack standing to pursue these claims, (2) they have no basis for attempting to assert personal jurisdiction over Mr. Mckesson, and (3) their substantive claims are entirely meritless. Rec. Doc. 24, pp. 20-28. Mr. Klayman knew or should have known that these claims completely lack merit because Mr. Klayman has unsuccessfully attempted to assert similar claims in the recent past. Despite this fact, Mr. Klayman filed the instant claims. Given that Mr. Klayman filed claims he knew or should have known were meritless, Plaintiffs should be sanctioned under Rule 11(b)(2).

**1. <u>Plaintiffs' Filed This Suit Despite Knowing That They Lacked Standing.</u>**

As argued fully in Defendants' motions, Mr. Klayman and Mr. Pennie lack standing because they have no alleged injury-in-fact. The complaints merely allege, in vague terms, that

Plaintiffs fear that they will suffer some sort of injury because of Defendants' alleged actions. For example, Mr. Klayman's claims that "as a high profile Caucasian of Jewish origin" and "a part of law enforcement," he imminently fears great bodily harm and death. Rec. Doc. 16, ¶ 16. Similarly, Officer Pennie generically alleges that he has "been threatened with death and/or serious bodily harm by Defendants." Rec. Doc. 16, ¶ 15.

Mr. Klayman knew or should have known at the time he filed his complaint that he had no standing because he has previously attempted to assert similar claims in at least two recent cases only to have those claims tossed out on standing grounds. *See Firearms Executive Action*, 2016 WL 4431530, at *3, and *Iran Treaty*, 2015 WL 5269958; *see also Klayman v. Clinton*, No. 9:15-cv-80388-DMM, slip op. 5-9 (S.D. Fla. Aug. 11, 2015) (attached hereto and referred to herein as Exhibit "C") (App'x at 21).

Judge Marra of the Southern District of Florida recently reminded Mr. Klayman of his obligation to properly assert standing in federal court actions. *Iran Treaty*, 2015 WL 5269958, at *2. There, Mr. Klayman sued President Obama and others in an attempt to stop the U.S.'s nuclear treaty with Iran. *Id.* Judge Marra explained to Mr. Klayman in both his opinion dismissing the case and an Order to Show Cause that federal courts are of "limited jurisdiction," and further that "standing is a jurisdictional requirement" with the "party invoking federal jurisdiction [bearing] the burden of establishing it." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Particularly, Judge Marra also indicated that federal courts are bound by "co-extensive prudential standing principles" that counsel against federal courts asserting jurisdiction over a claim that is a "generalized grievance shared in substantially equal measure" by a large class of citizens. 2015 WL 5269958, at *2.

Later, in dismissing Mr. Klayman's 2016 suit against President Obama related to the

President's Executive Action to reduce gun violence, Judge Middlebrooks of the Southern District of Florida explained to Mr. Klayman that a plaintiff has the burden to "establish[ ] that he has standing to sue," by showing "(1) injury-in-fact; (2) a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3) that the injury will be redressed by a favorable decision." *See Firearms Executive Action*, 2016 WL 4431530, at *2 (internal quotes omitted). Particularly, Judge Middlebrooks indicated that "an injury-in-fact must be concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (citing *Lujan*, 504 U.S. at 560) (internal quotes omitted). Judge Middlebrooks also noted that federal courts adhere to "prudential principles that bear on the question of standing" which do not allow courts to hear claims that are "abstract questions of wide public significance which amount to generalized grievances." *See Firearms Executive Action*, 2016 WL 4431530, at *2 (internal quotes omitted).

Despite being recently reminded on two occasions that he cannot assert generalized grievances on behalf of large classes of citizens without personally suffering an injury-in-fact, Mr. Klayman filed this suit. This is an extraordinary situation because not only does Mr. Klayman's filing disregard a widely-recognized legal principle (standing), it does so despite the fact that this principle has recently been explained to him in great detail in at least two similar cases. To be clear, Mr. Klayman knew or should have known that his legal grounds for standing lacked merit because, like every other lawyer who appears in this Court, he has a general duty under Rule 11 to make a reasonable inquiry into the relevant law before filing a pleading. However, in this case, Mr. Klayman knew or also should have known that his alleged standing argument lacked merit because other federal courts have recently clarified this principle for him in their dismissals of his lawsuits.

### 2. **<u>Plaintiffs Filed This Suit Despite Knowing That This Court Lacks Personal Jurisdiction Over Mr. Mckesson.</u>**

Mr. Mckesson's Motion to Dismiss and Accompanying Memorandum outline the reasons why this Court lacks personal jurisdiction over him in this matter. Chief among those reasons is that Mr. Mckesson is a resident of Maryland, and Mr. Klayman fails to allege that Mr. Mckesson has any contacts with Texas. Mr. Klayman knew full well when he filed this suit that this Court cannot assert personal jurisdiction over a non-resident with no alleged contacts with the state because federal judges in other districts have recently reminded him of this concept in dismissing other claims he has asserted against out-of-state defendants.

In 2015, Judge Davila of the Northern District of California dismissed Mr. Klayman's RICO claims against his ex-wife (an Ohio citizen), and her lawyers (also Ohio citizens), finding among other deficiencies in the pleadings that the court lacked specific personal jurisdiction over some of the defendants. *See Klayman v. Deluca*, No. 5:14-CV-03190-EJD, 2015 WL 427907, at *4-6 (N.D. Cal. Jan. 30, 2015). Particularly, the court explained that to assert personal jurisdiction over a non-resident defendant, "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* at *4 (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). The court, finding that Klayman had not alleged facts sufficient to satisfy the first prong, dismissed his claims. *Id.* at*5-6 (citing *Calder v. Jones*, 465 U.S. 783 (1984).

Previously in 2014, Judge Hodges of the Middle District of Florida dismissed Mr. Klayman's suit against a court-appointed magistrate, which claimed that the Cuyahoga County, Ohio Magistrate deprived Mr. Klayman of his constitutional rights and caused him severe emotional distress. *See Klayman v. Loeb*, No. 5:13-cv-00267-WTH-PRL, slip op. at 1 (M.D. Fla. Jan. 27, 2014). Mr. Klayman also claimed that the Magistrate was biased against him because the Magistrate was a Jewish Democrat and Mr. Klayman is "a Messianic Jew and a conservative activist." *Id.* at 5. Judge Hodges dismissed Mr. Klayman's suit for lack of personal jurisdiction given that Mr. Klayman failed to make a prima facie showing that the Ohio Magistrate directed any conduct towards Florida. *Id.* at 17. Further, Mr. Klayman failed to establish that the Magistrate had sufficient minimum contacts in Florida, and had not presented "any evidence showing that Mr. Loeb ever engaged in any conduct within the State of Florida." *Id.* at n. 8.

**3. <u>Plaintiffs Filed This Suit Despite Knowing That Their Substantive Claims Completely Lack Merit.</u>**

Mr. Mckesson's Motion to Dismiss and Accompanying Memorandum provide detailed and specific reasons why the Complaint in this matter fails to state a substantive claim against Mr. Mckesson. Mr. Mckesson incorporates the arguments from his Memorandum in Support of his Motion to Dismiss related to the merits of Plaintiffs' § 1983, § 1985, *Bivens*, Florida law, Assault, and Intentional Infliction of Emotions Distress claims as if fully set forth again herein.

The Complaint's claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) are so patently frivolous that Plaintiffs have already "withdraw[n]" these claims "without prejudice" according to Plaintiffs' Opposition to Mr. Mckesson's Motion to Dismiss. Rec. Doc. 57, p. 4, n.1. However, Plaintiffs persist in attempting to assert frivolous claims for assault, intentional infliction of emotional distress, and under Florida's gang law.

Mr. Klayman knew or should have known that these substantive claims are frivolous when he filed his Complaint. Mr. Klayman is no stranger to claims of this variety as he has attempted to assert claims under § 1983,[5] § 1985,[6] *Bivens*,[7] and for assault[8] and intentional infliction of emotional distress[9] in the past. As an attorney, Mr. Klayman has an obligation to conduct a reasonable inquiry into the relevant law and to avoid unreasonable claims, unsupported by existing law or its possible extension, modification, or reversal. *Calhoun*, 34 F.3d at 1296. Here, Plaintiffs' substantive claims have no basis in current law and cannot be supported by any earnest argument for the law's extension, modification, or reversal.

**c. Plaintiffs Filed Suit Against Mr. Mckesson For An Improper Purpose.**

This case presents an extraordinary situation: Mr. Klayman, a seasoned attorney and frequent litigant in federal courts, disregarded the Court's most basic requirements for a lawsuit – that the plaintiff have standing, a legally-cognizable claim, and that the action be filed in a court that has jurisdiction over the Defendant. Mr. Klayman did so despite several federal judges recently reiterating these requirements to Mr. Klayman in dismissing other lawsuits he filed. Even though Mr. Klayman knew or should have known of the deficiencies in the instant lawsuit, and knew or should have known that any one of those deficiencies would be fatal to his claims, Mr. Klayman nonetheless chose to file this suit.

Courts may impose sanctions for filing with an improper purpose "where the improper purpose is objectively ascertainable." *Whitehead*, 332 F.3d at 805 (finding improper purpose where attorney sought writ to harass opposing party and to promote himself). Said differently, the "[i]mpropriety of a filing is judged from the signer's intent, objectively tested, rather than

---

[5] *See, e.g., Klayman v. Obama et al.*, No. 14-1704 (D.D.C.)
[6] *See, e.g., id.*
[7] *See, e.g., Klayman v. Obama*, 125 F. Supp. 3d 67 (D.D.C. 2015).
[8] *See, e.g., id.*
[9] *See, e.g., id*.

consequences of the signer's act subjectively viewed by his opponent." *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1190 (E.D. Tex. 1996).

A recent case from a district court in the Fifth Circuit, *Marceaux v. Lafayette City-Parish Consol. Gov't*, 14 F. Supp. 3d 760, 772 (W.D. La. 2014), *aff'd,* 614 F. App'x 705 (5th Cir. 2015), is particularly analogous to this situation and illustrates where the Court may impose sanctions for improperly motivated filings. In *Marceaux*, the plaintiffs, a group of public employees who opposed the policies of defendant public officials, filed a lengthy civil rights complaint comprised of a "variety of allegations against [public officials], other defendants, and non-parties who were identified by name but against whom there was no viable cause of action even alleged." 14 F. Supp. 3d at 763. The complaint additionally included many allegations "pertain[ing] to events which did not involve any of the named plaintiffs." In its review of the pleadings, the court in *Marceaux* also found:

> …multiple claims and legal contentions which are unwarranted by existing law and which fail to state viable claims for relief under any objective measure. <u>In what comes down to a civil rights case brought under 42 U.S.C. § 1983 for which there is ample legal authority from this circuit, the complaint, even after amendment, failed in most respects to comply with that authority.</u> The Report and Recommendation of this Court illustrates this in great detail and the reasoning is incorporated here. By way of example, the plaintiffs' attorneys alleged violations of the Fifth Amendment to support their claims under § 1983. However, there are no federal actors anywhere in the complaint. The plaintiffs' attorneys claim entitlement to relief based on a conspiracy under 42 U.S.C. § 1985, yet there are no factual allegations to ascertain a cause of action under any section of that statute.

*Marceaux*, 14 F. Supp. 3d at 771 (emphasis added). The Court also noted that "<u>these same claims suffered from the same deficiencies in recent cases filed by these same attorneys in other districts in this state.</u>" *Id.* (emphasis added). In light of these and other objective facts, the court

in *Marceaux* found that the pleading was filed for an improper purpose, ordering that counsel be fined and defendants awarded attorney's fees.

In this matter, there are many objective indicators that Plaintiffs initiated this suit for the improper purposes of garnering publicity for their views and harassing those with whom they disagree, instead of to remedy any legally cognizable injury. First, Mr. Klayman has filed many similar ill-fated lawsuits designed to express his disagreement and displeasure with public figures, only to have those suits dismissed for lack of standing, lack of personal jurisdiction, or other deficiencies.[10] Mr. Klayman objectively should have known that his claims would again fail here but filed these claims anyway. This shows that his aim in filing this suit was not to win, but rather to secure publicity for his views and harass individuals like Mr. Mckesson.

Second, Mr. Klayman provided his motivation for this lawsuit in his column announcing the suit's filing. *See* Exh. A, App'x at 2. Mr. Klayman did not indicate that he was injured in any way, instead explaining that he was using the legal system to attack the Black Lives Matter movement and other views with which he disagrees. *Id.*

Third, Plaintiffs have alleged no injury, allege barely any facts concerning most of the defendants, and use sweeping, conclusory language accusing defendants of acts of violence, including assaults and murders. <u>Mr. Klayman alleges that Mr. Mckesson, as well as "each and every one" of the other Defendants, "incited committed [sic] unlawful acts including violent riots, assaults and murders law of enforcement</u>." Rec. Doc. 1, ¶ 15; Rec. Doc. 16, ¶ 27 (emphasis added). This shows that Plaintiffs' aim is not to win a legal action, but instead to use this Court to castigate the defendants in a public forum using provocative and incendiary terms. Mr. Klayman's press releases and television appearances touting this suit's most scandalous claims against the Black Lives Matter movement are further evidence of Mr. Klayman's true aim

[10] *E.g.*, *Iran Treaty*; and *Firearms Executive Action supra*.

in filing this suit: to garner publicity for his criticism of Black Lives Matter and to harass those with whom he disagrees.[11] Accordingly, Plaintiffs filed this suit for an improper purpose and should be sanctioned under Rule 11(b)(1).

## II. Mr. Klayman Should Be Sanctioned.

### a. Sanctions, Generally.

A party may obtain sanctions for a Rule 11 violation as follows:

> **(c) Sanctions.**
> **(1) *In General.*** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, **the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation**. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
>
> **(2) *Motion for Sanctions.*** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c). "Once a court finds that counsel or a party has violated Rule 11, the imposition of sanctions is mandatory." *Anderson v. Law Firm of Shorty, Dooley & Hall*, 697 F. Supp. 2d 664, 667 (E.D. La. 2010) *citing Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 876 (5th Cir. 1988). Nonetheless, the district court "has considerable discretion in fashioning the appropriate sanction." *Id.*

"A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The

[11] *See* Press Releases (attached hereto and referred to herein as Exhibit "D" (App'x at 35).

sanctions available include "nonmonetary directives," penalties payable to the court, and an order for payment of the moving party's attorney's fees and costs resulting from the violation. *Id.* Nonmonetary sanctions can include, among other things, the striking of the offensive filings. *Nault's Auto. Sales, Inc. v. Am. Honda Motor Co., Acura Auto. Div.*, 148 F.R.D. 25, 37 (D.N.H. 1993) (*citing United States v. Excellair, Inc.* 637 F.Supp. 1377, 1398 (D.Colo.1986)); *see also Pigford v. Veneman*, 215 F.R.D. 2, 3 (D.D.C. 2003) (striking documents containing abusive remarks regarding opposing counsel under authority of Rules 11 and 12(f)).

In determining an appropriate sanction, the court should be guided by the "basic principle … that the least severe sanction adequate to serve the purpose of Rule 11 should be imposed." *Worrell v. Houston Can! Acad.*, 287 F. App'x 320, 326 (5th Cir. 2008) *quoting Thomas*, 836 F.2d at 877-78. Less severe violations can generally be adequately punished through admonishment or public reprimand. *Id.*; *see also Jenkins*, 478 F.3d at 265 ("an admonition by the court may be an appropriate sanction, in instances where the attorney's sanctionable conduct was not intentional or malicious, where it constituted a first offense, and where the attorney had already recognized and apologized for his actions").

However, serious or egregious conduct should be treated seriously. *See Worrell*, 287 F. App'x at 326 (imposing monetary sanctions where attorney failed to conduct reasonable pre-filing investigation and filed pleading containing numerous factual misstatements); *Nault's*, 148 F.R.D. at 37-38 (striking pleadings, requiring attorneys to write formal letter of apology to opposing counsel, and to pay attorney's fees and costs as sanctions for making unsubstantiated allegations of misconduct against opposing counsel). In considering what form of sanction to impose, the Court may consider: "(1) whether the conduct was willful or negligent; (2) whether the activity was isolated or part of a pattern of activity; (3) whether the conduct affected only a

single event within the case or the entire litigation; (4) any previous similar conduct by the attorney; (5) whether the conduct was intended to cause injury; (6) the effect of the conduct on the litigation in terms of time and expense; (7) whether the responsible party was trained in the law; and (8) what sanction, given the financial resources of the responsible person, is needed to deter similar activity by other litigants." *Bullard*, 925 F. Supp. at 1190 (citing the Advisory Committee's Note to Rule 11).

**b. <u>Sanctions Should Be Imposed.</u>**

In compliance with Rule 11(c)(2), Mr. Mckesson's counsel served Plaintiffs' counsel with a copy of Mr. Mckesson's Motion for Sanctions and Memorandum in Support by email and U.S. Mail on November 3, 2016. *See* Affidavit of Service, attached hereto as Exhibit "E" (App'x at 42). More than twenty-one days have elapsed since service and Plaintiffs and their counsel have failed to fully withdraw or correct the baseless claims contained in their Complaint.

As shown above, Plaintiffs and their counsel have violated Rule 11. Therefore, the Court must impose sanctions against them. *Anderson*, 697 F. Supp. 2d at 667; *Thomas*, 836 F.2d at 876. The undersigned suggests that stringent sanctions are warranted in this matter as virtually every factor in identified in *Bullard* weighs against Plaintiffs in this matter: (1) Plaintiffs' conduct was willful in light of the circumstances; (2) this suit is part of a pattern of activity on Mr. Klayman's part of using the federal courts to criticize and harass those with whom he disagrees; (3) the frivolous nature of the claims affect the entire litigation; (4) there are many examples of similar conduct by the attorney, Mr. Klayman; (5) the conduct was likely intended to at least cause injury to defendants' reputation and possibly to drag defendants' through the burden of litigation in a distant district; (6) defendants have had to expend many hours and resources to defend against Mr. Klayman's serial, voluminous filings; (7) and Mr. Klayman, the

most responsible party for these filings, is trained in the law with many years of experience. Undersigned counsel is not familiar with the finances of Plaintiffs or Plaintiffs' counsel so it is unable to opine as to what type and amount of sanctions are required to deter similar activity.

Undersigned counsel also suggests that the Court review prior warnings from the bench or sanctions against Mr. Klayman in order to determine the severity of sanctions to be imposed in this case. Mr. Klayman has been sanctioned or warned on numerous occasions in the past. Below is a list of several cases in which judges have found Mr. Klayman's conduct worthy of sanctions or criticism from the bench:

- ***Wire Rope Importers' Ass'n v. United States*, 18 C.I.T. 478 (1994)**. In 1994, Mr. Klayman was sanctioned by the Court of International Trade under an equivalent of Rule 11, as the Court found that "[b]y raising frivolous arguments… [Klayman] has violated his affirmative duty under USCIT R. 11." *Id.* at 485. The Court further found that Klayman's "frivolous filings have wasted time and resources of defendant as well as of the court," justifying an order that Klayman should pay a monetary sanction to defendant to compensate it for Klayman's actions. *Id.* (emphasis added).

- ***Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, No. 94-1184, 1997 WL 243223 (D.D.C. May 7, 1997), *aff'd in part and remanded on different grounds*, 146 F.3d 983 (D.C. Cir. 1998)**. The Judge noted that "inappropriate conduct of MSI's counsel," Mr. Klayman. *Id.* at n.17. The Court explained that "the record will speak for itself, but it behooves the court to observe that from pretrial through post trial proceedings, Mr. Klayman's performance was episodically blighted by rude and unprofessional behavior which was directed towards the presiding judge and opposing counsel." *Id.* (emphasis added).

- ***Macdraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 994 F. Supp. 447, 457 (S.D.N.Y. 1997), *aff'd*, 138 F.3d 33 (2d Cir. 1998)**. Citing Mr. Klayman's assertion of "preposterous" claims, "abusive and obnoxious" behavior, "unreasonable conduct, and acts of bad faith," the Court concluded that counsel's "conduct has degraded the legal profession and disserved justice." *Id.* at 457-60 (emphasis added). The Court sanctioned Mr. Klayman by (1) revoking his *pro hac vice* admission, (2) prospectively denying any future application from Mr. Klayman for admission *pro hac vice*, (3) requiring Mr. Klayman to provide a copy of the Court's opinion to any judge in the Southern District of New York to whom Mr. Klayman may apply for future admission *pro hac vice*, and (4) ordering the clerk to transmit a copy of the Court's opinion to the courts in which Mr. Klayman was already admitted. *Id*. at 460. In affirming the decision below, the Second Circuit noted that it found "no error in the sanctioning of Klayman…, much less

an abuse of discretion." *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 37 (2d Cir. 1998).

- ***Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550, 555 (Fed. Cir. 1996), *as modified on reh'g* (May 22, 1996)**. After trial, Judge Keller of the Central District of California "*sua sponte* ordered Mr. Klayman permanently and prospectively barred from appearing before Judge Keller *pro hac vice* in any future litigation." *Id.* at 555. Judge Keller cited several actions by Mr. Klayman during the trial as grounds of sanctions, including his firm's efforts to "unreasonably and vexatiously multiply[ ] the proceedings." *Id.* (emphasis added). The Court awarded Mr. Klayman's opponent its attorney fees and expenses incurred. *Id.* The Federal Circuit affirmed Judge Keller's rulings. *Id.* at 564.

- ***Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*, 159 F. Supp. 2d 763 (D.D.C. 2001)**. The Court noted that Mr. Klayman's maneuvering on behalf of his organization, Judicial Watch, appeared to be designed to cause the defendant to expend unnecessary time filing a summary judgment motion, only to abandon its claim. *Id.* at 764. "This maneuver appears to the Court to have been done quite deliberately, and probably with some malicious glee, in the manner of the Road Runner besting Wylie Coyote once again." *Id.* (emphasis added). Further, the Court explained, "[i]n the context of plaintiff's handling of this whole matter, however—from its failure to respond to the INS invitation to narrow its request, to its failure to prosecute the case at all until prodded by the Court, to its forked-tongue response to the Court's order that it notify the government whether or not it would pay the duplication fees—the maneuver is not funny, and is indeed sanctionable." *Id.* (emphasis added).

- ***Klayman v. City Pages*, No. 13-143, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016)**. The Court closed its opinion granting summary judgment to Mr. Klayman's opponent with a warning to Mr. Klayman: "While the Court would not ordinarily conclude with an admonition, this is, of course, no ordinary case. Plaintiff's approach to this litigation has been quite suspect, to say the least. As has been made clear in this case, as well as through reviewing the relevant proceedings at issue, when Plaintiff receives unfavorable rulings, he often plunges into a tirade against whomever he feels has wronged him-here, it has taken the form of motions to reconsider, objections, and even a petition for writ of mandamus with the Eleventh Circuit Court of Appeals… Should Plaintiff file a motion to reconsider, the Court forewarns Plaintiff that any such motion must at least arguably meet the stringent standard for reconsideration of an Order, at the risk of facing sanctions from the Court. To this end, Plaintiff should keep in mind his obligations under Federal Rule of Civil Procedure 11." *Id.* at *17 (emphasis added).

In light of Mr. Klayman's litigation history and continued conduct, Plaintiffs' counsel should be required to compensate defendant for his attorney's fees and expenses incurred in defending against Plaintiffs' frivolous suit.

**CONCLUSION**

For the foregoing reasons, the Motion for Sanctions filed by Mr. Mckesson should be granted and sanctions imposed against Plaintiffs and Plaintiff's counsel.

Respectfully submitted,

*/s/ Lauren York*
Lauren York, Texas Bar No. 24098647
AKIN GUMP STRAUSS HAUER
& FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4624
Telephone: (214) 969-4395
Facsimile: (214) 969-4343
lyork@akingump.com

*/s/ Jacob K. Weixler*
William P. Gibbens, La. Bar No. 27225
Admitted *Pro Hac Vice*
Jacob K. Weixler, La. Bar No. 36076
Admitted *Pro Hac Vice*
Teva F. Sempel, La. Bar No. 35409
Admitted *Pro Hac Vice*
SCHONEKAS, EVANS, McGOEY
& McEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Telephone: (504) 680-6050
Facsimile: (504) 680-6051
billy@semmlaw.com
jake@semmlaw.com
teva@semmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2016, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Jacob K. Weixler*
Jacob K. Weixler

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on November 3, 2016, I sent a letter to Plaintiffs' counsel explaining the grounds for this Motion for Sanctions and attaching a draft of the Motion and Memorandum in Support. Additionally, on November 21, 2016, I emailed Plaintiffs' counsel to inquire whether it was opposed to this Motion. Plaintiffs' counsel responded on November 22, 2016 that Plaintiffs are opposed to this Motion.

*/s/ Jacob K. Weixler*
Jacob K. Weixler