**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LARRY KLAYMAN** | * | |
| | * | **CIVIL ACTION NO. 3:16-cv-02010** |
| **VERSUS** | * | |
| | * | **JUDGE SAM A. LINDSAY** |
| **PRESIDENT BARACK OBAMA, ET AL** | * | |
| | * | |

**************************************

**APPENDIX IN SUPPORT OF MOTION FOR SANCTIONS**


Page

EXHIBIT A – Larry Klayman, *Obama, BLM inspired Dallas massacre*, WORLDNETDAILY (July 8, 2016, 7:34 PM), http://www.wnd.com/2016/07/obama-blm-inspired-dallas-massacre/.......2

EXHIBIT B – Klayman v. Obama, et al., No. 14-01704 (D.D.C. Jan. 28, 2015) (Defendant's Motion to Dismiss Under Rule 12(b)(1)) ………………….5

EXHIBIT C – Klayman v. Clinton, et al., No 15-80388 (S.D. Fla. Aug. 11, 2015) (Order Granting Motions to Dismiss)………………………………... 21

EXHIBIT D – Press Releases by Freedom Watch……………………………………… 35

EXHIBIT E – Affidavit of Service…………………………………………………... 42

**- WND - http://www.wnd.com -**

# Obama, BLM inspired Dallas massacre

Posted By *Larry Klayman* On 07/08/2016 @ 7:34 pm In Commentary,Opinion | No Comments

---

Republish
Reprint

In the wake of the massacre of five Dallas, Texas, policemen, with seven shot and wounded, President Barack Hussein Obama, as he has with his Muslim brothers, refused to refer to this heinous crime as a "hate crime" – despite the fact the shooter had admitted that he wanted to kill whites and in particular white cops, motivated by the hateful anti-white rhetoric spewed forth by Black Lives Matter and thus by extension the support this insidious group has gotten from Obama himself.

Not only does Obama have blood on his hands as having encouraged if not furthered this hate crime against whites and white cops, but so too does his "soul brothers," the virulent anti-white, anti-Semitic and anti-Christian so-called Rev. Louis Farrakhan, leader of the Nation of Islam, and his co-enablers like another so-called reverend, Al Sharpton, a charlatan and white hater. Indeed, Obama has, as usual, chosen to associate himself with these lowlifes in his quest to ram his latent hatred of whites, Jews and Christians down everyone's throats. When the leader of the United States and supposedly the Western world, who was born to a Muslim father, schooled in Muslim schools, and has close ties to black-Muslim leaders like Farrakhan seeks to incite violence by virtue of his running interference for Muslims and blacks who are not even representative of African-Americans generally, it's no wonder Obama-inspired massacres like Dallas happen. In two words, "Obama Happens!"

For a long time, as a law enforcement officer myself – I am a former federal prosecutor for the U.S. Department of Justice when it still had an ounce of integrity, and the founder of both Judicial Watch and Freedom Watch, as well as a former candidate for the U.S. Senate in Florida – I have been contemplating when and how to bring legal actions against white, Jewish and Christian haters like Obama, Farrakhan, Sharpton and Black Lives Matter. For the past seven years, Obama and company have been whipping up reverse racism against non-blacks and non-Muslims as payback for years of discrimination. These vigilantes are not cut from the same virtuous cloth as a well-intentioned and genuine reverend, Martin Luther King, who used peaceful non-violence to further freedom for African-Americans and others. For Obama and the others to equate themselves with King is a blasphemy. Obama may think and act as if he is a "king," but he is no Martin Luther King. In his going on eight years in power, he and his racist comrades have not only set back the significant gains Martin Luther King worked for and went a long way to obtain in uniting the races; to the contrary they have stoked and ignited what now is looking like an all out "race war."

It is no wonder some cops, fearing for their lives in this anti-white, anti-Semitic and anti-Christian environment, sometimes are prone to literally pull the trigger too quickly. With the hateful mood created by Obama and company, they understandably think that armed blacks who refuse to

recognize their law enforcement powers may be out to off them. Indeed, most policemen these days, as I know many, believe that if they get in-between black-on-black violence – which has exploded under Obama – to try to protect blacks, they will be blamed if something goes awry. For this reason, their approach these days is to essentially let blacks kill fellow blacks and then only step in to clean up the carnage. Indeed, this has been the sad history of the last years, with the president blaming white cops and other non-blacks, but never expressing any concern for whites, including Jews and Christians who are killed by black racists or Muslims. (This comes as no surprise, since Obama is both.) Importantly, as is true with black-on-black crime, crimes by blacks against whites dwarf crimes by white cops and whites against blacks. But the president never sees fit to cite this incontrovertible statistic. It is simply an inconvenient truth in his quest to ignite a race war, which outrageously he has now finally succeeded at doing.

To make matters worse, Obama's so-called opponents, the same Republican establishment seeking to take the legitimate presidential nomination away from Donald Trump, has rolled over to King Obama. Afraid that they will characteristically be branded as racists against blacks and Muslims, they essentially have said and done nothing to address, quell and remedy the hatred that resulted Thursday in the bloody Dallas massacre, among other similar but smaller massacres throughout Obama's presidency.

That is why We the People must now act on our own, as we did in 1776 against another despot king. But like the real king, Martin Luther King, I have advocated peaceful means to effect change. To this end, I am filing in the next day a lawsuit, with myself as the initial plaintiff, against Obama, Black Lives Matter, Farrakhan and Sharpton for endangering not just my life, as a white law enforcement person of Jewish origin, but also for all Americans, white, black, yellow or brown, no matter what their race or religion. Someone has to take the first step, and I have concluded it has to be me. It is hoped that other law enforcement persons, including the cops in the Dallas Police Department, will later join me as plaintiffs. The case will be filed in the U.S. District Court for the Northern District of Texas, which is where Dallas is located.

Our Founding Fathers risked their sacred honor, fortunes and lives to found a great and free nation, just as Rev. Martin Luther King did in the early 1960s to preserve this freedom for all people, not just his people. The least the rest of us can do is to put our foot down and try to use the legal system to seek justice against the instigators of this new race war, which threatens to pull apart America as it was conceived of and founded. If this does not work, then other legal measures will be considered and must be implemented, so help us God.

But for now, I urge patriots who have the courage not to be afraid to come forward and join the legal action I will file in the next day. You may contact me at leklayman@yahoo.com or though www.freedomwatchusa.org.

*Media wishing to interview Larry Klayman, please contact media@wnd.com.*

**Receive Larry Klayman's commentaries in your email**

BONUS: By signing up for Larry Klayman's alerts, you will also be signed up for news and special offers from WND via email.

Name*

First Last

Email*

Where we will email your daily updates

Postal code*

A valid zip code or postal code is required

Click the button below to sign up for Larry Klayman's commentaries by email, and keep up to date with special offers from WND. You may change your email preferences at any time.

Sign me up!

Click here for reuse options!

Copyright 2016 WND

---

Article printed from WND: **http://www.wnd.com**

URL to article: **http://www.wnd.com/2016/07/obama-blm-inspired-dallas-massacre/**

© Copyright 1997-2013. All Rights Reserved. WND.com.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**LARRY KLAYMAN,**

Plaintiff,

v.

**BARACK OBAMA, PRESIDENT OF THE UNITED STATES, ET AL.,**

Defendants.

Case No. 1:14–cv–01704 (KBJ)

**DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(1)**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants hereby move the Court to dismiss Plaintiff's complaint, for the reasons set forth in the accompanying Memorandum of Points and Authorities in support of this motion.

Dated: January 28, 2015

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

SHEILA M. LIEBER
Deputy Director,
Federal Programs Branch

*/s/ Deepthy Kishore*
DEEPTHY KISHORE
Trial Attorney (IL Bar No. 6306338)
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 616–4448 | Fax: (202) 616–8470
deepthy.c.kishore@usdoj.gov
20 Massachusetts Ave., N.W.
Washington, D.C. 20001

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARRY KLAYMAN,**<br><br>Plaintiff,<br><br>v.<br><br>**BARACK OBAMA, PRESIDENT OF THE UNITED STATES, ET AL.,**<br><br>Defendants. | Case No. 1:14–cv–01704 (KBJ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(1)**

Plaintiff Larry Klayman, an attorney proceeding *pro se*, filed this suit requesting, *inter alia*, compensatory and punitive damages, a declaration or order that "Defendant [President] Obama be referred to the immigration authorities of the Department of Homeland Security for appropriate deportation proceedings as he is not even a naturalized U.S. citizen and thus is in the United States illegally," and injunctions "banning any more travel to the United States from infected African, Muslim and other nations." (ECF No. 1, Prayer for Relief). His suit names as Defendants[1] the President of the United States and the highest officials of the National Institute of Allergy and Infectious Diseases, U.S. Centers for Disease Control and Prevention, Department

[1] Although Defendants are nominally sued in both their official and individual capacities, the actions (or inactions) that Plaintiff seeks to challenge pertain only to the Defendants' official capacities. Further, because Plaintiff has not served this action on the individual Defendants personally, *see* Fed. R. Civ. P. 4(e)(2), the claims should be dismissed insofar as they are brought against Defendants in their individual capacities. *See Deutsch v. U.S. Dept. of Justice*, 881 F. Supp. 49, 52 (D.D.C. 1995) ("Proper service of process upon defendants is necessary to obtain jurisdiction over defendants in their individual capacities.") (citing *Pollack v. Meese*, 737 F. Supp. 663, 666 (D.D.C. 1990)).

of Health and Human Services, and Department of Homeland Security. Asserting fatuous claims that run the legal gamut—including violations of the Anti-Terrorism Act, 18 U.S.C. § 2332 *et seq.*, common law torts of assault and intentional infliction of emotional distress, violations of constitutional rights, and civil rights violations under 42 U.S.C. §§ 1983 and 1985—Plaintiff alleges that Defendants are engaged in a "scheme to encourage and facilitate acts of international terrorism," (Compl. ¶ 1), and intentionally discriminate "against Plaintiff and other Jewish and Christian Caucasian Americans" in favor of "Africans and Muslims." (Compl. ¶¶ 14, 123).

Plaintiff's claims are nonjusticiable, barred by sovereign immunity, frivolous, and absurd. Accordingly, and for the reasons set forth below, Plaintiff's entire complaint should be dismissed for lack of subject matter jurisdiction.

**STANDARD**

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To defeat a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it is Plaintiff's burden to establish that the court has subject matter jurisdiction to hear the case. *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1442–43 (D.C. Cir. 1989); *Jones v. Exec. Ofc. of the Pres.*, 167 F. Supp. 2d 10, 13 (D.D.C. 2001). Moreover, because Plaintiff bears the burden of proof, his "factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted).

Where, as here, the plaintiff is an attorney proceeding *pro se*, the plaintiff "is not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff," as

"an attorney is presumed to have a knowledge of the legal system and need less protections from the court." *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007); *id.* at 235 (stating that "because plaintiff is an attorney, and a knowledgeable one at that, this Court will not give her all the benefits of the liberal standards that are afforded to *pro se* litigants").

## ARGUMENT

### I. PLAINTIFF LACKS STANDING TO PURSUE HIS CLAIMS.

Plaintiff's complaint sets forth no consistent theory for liability, but asserts scattershot claims predicated upon his alleged belief that he was "exposed to Ebola" at the airport in Newark, New Jersey, on October 8, 2014, as a result of Defendants' alleged acts of international terrorism and discrimination. (Compl. ¶¶ 14, 45). Among other things, Plaintiff demands "declaratory and injunctive and other equitable relief" against Defendants "to cease their illegal acts in facilitating the opportunity and in fact furthering terrorism by infecting Plaintiff and other American citizens with the Ebola virus and ultimately creating a horrific Ebola epidemic in the United States." (Compl. ¶ 109). Setting aside Plaintiff's wholly incredible theories, a glaring deficiency in the complaint is the lack of any allegation that would provide Plaintiff with standing to pursue his seven causes of action.

Article III of the Constitution restricts the federal courts to the adjudication of "Cases" or "Controversies." Const. art. III, § 2. Standing is a core component of the case-or-controversy requirement, and it "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, __ U.S. __, 133 S. Ct. 1138, 1146 (2013). To establish constitutional standing, a plaintiff must satisfy three elements: (1) he must have suffered an injury in fact—a judicially cognizable interest which is '"concrete and particularized" and "actual or imminent, not conjectural or hypothetical'"; (2) the injury must be

'"fairly traceable to the challenged action of the defendant'"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *NB ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77, 81 (D.C. Cir. 2012) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

A plaintiff bears "the burden of establishing [the] existence" of standing because federal courts should presume they lack jurisdiction "unless the contrary appears affirmatively from the record." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998); *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citation and internal quotation marks omitted). The Supreme Court has "consistently stressed" that a plaintiff lacks standing unless he can "establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). A plaintiff "must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (citation and internal quotation marks omitted). Further, where a plaintiff is seeking declaratory or injunctive relief, he "must show he is suffering an ongoing injury or faces an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).

Plaintiff appears to allege five types of injuries in his prolix complaint: (1) danger to his "person, property, or business," including the danger of death or illness, (Compl. ¶¶ 94, 97, 102) (First, Second, and Third Causes of Action); (2) violation of his constitutional "liberty interest" caused by alleged acts of "exposing and intentionally facilitating and inviting the spread of the deadly Ebola virus by terrorists and others entering the United States,"(Compl. ¶ 106) (Fourth Cause of Action); (3) apprehension of an imminent harmful or offensive contact that could result

in "a horrible and painful death," (Compl. ¶ 112) (Fifth Cause of Action); (4) "fear and apprehension and distress" of "Ebola terrorism," (Compl. ¶ 119) (Sixth Cause of Action); and (5) violation of his constitutional rights "to be treated by the U.S. Government in a color-blind fashion free from favoritism and discrimination on the basis of Plaintiff's race, ethnicity, nationality and religion," (Compl. ¶ 127) (Seventh Cause of Action).

The bases for Plaintiff's alleged injuries are, at best, nebulous, but it is clear that all are predicated on his alleged belief that he was "exposed to Ebola" at the Newark airport on October 8, 2014. Notably, however, he never alleges that he in fact contracted the Ebola virus; nor does he allege that he in fact came into contact with anyone who contracted the virus. Instead, he sets forth layers upon layers of conjecture and speculation about "potential Ebola traffic" in Newark, (Compl. ¶ 47), potential travel routes of passengers, (Compl. ¶¶ 50, 52), potential ways in which the virus might be transmitted to airport surfaces, (Compl. ¶¶ 55–58), and how, hypothetically, a person at an airport could "deposit the virus within the fluids of their body." (Compl. ¶ 58). Relying solely on this attenuated chain of hypotheticals and speculative inferences, Plaintiff asserts that he was "exposed to" the Ebola virus because it was "present in the terminals of Newark airport" when he apparently used the public restroom there. (Compl. ¶¶ 51, 58); (Compl. ¶ 45) ("On information and belief, Plaintiff Larry Klayman has been exposed to the Ebola virus and subjected to an unreasonable risk by Defendants' actions.").

Alleging a mere possibility of exposure to Ebola, with no showing of a substantial probability of harm from the disease, is insufficient to establish an actual or imminent harm. *See Clapper*, 133 S. Ct. at 1146 (2013) (holding that respondents lacked standing because a "speculative chain of possibilities does not establish that injury based on potential future surveillance is certainly impending"); *Carik v. U.S. Dep't of Health & Human Servs.*, 4 F. Supp.

3d 41, 53 (D.D.C. 2013) ("[T]here must be '"*both* (i) a *substantially* increased risk of harm and (ii) a substantial probability of harm with that risk taken into account."' (quoting *Public Citizen, Inc v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007)); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009) ("Petitioners can only aver that any significant adverse effects of climate change 'may' occur at some point in the future. This does not amount to the actual, imminent, or 'certainly impending' injury required to establish standing."); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Educ.*, __ F. Supp. 2d __, 2014 WL 449031, at *6 (D.D.C. Feb. 5, 2014) ("[P]laintiffs do not satisfy either prong of the increased risk of harm test: they have not shown a substantially increased risk that they will suffer identity fraud, and they have not shown that the absolute likelihood of suffering identity fraud is substantial."); *see also Hughes v. Widup*, No. 2:07-cv-290, 2008 WL 56003, at *3 (N.D. Ind. Jan. 3, 2008) (holding that inmate lacked standing because, though he alleged that he was exposed to staph through unsanitary conditions, he "never alleges that he actually contracted staph because of the unsanitary conditions"); *Montue v. Schwartz*, No. CIV S-06-1276, 2006 WL 3114302, at *2 (E.D. Cal. Nov. 1, 2006) ("Plaintiff has no standing because he has not contracted West Nile Virus. Moreover, that plaintiff might someday contract West Nile Virus does not demonstrate that the harm is imminent. Rather, plaintiff's chances of contracting West Nile Virus are speculative."); *Tibbs v. Sebelius*, No. 2:09-cv-773, 2010 WL 1817258, at *4 (S.D. Ohio April 30, 2010) (concluding that plaintiff lacked standing where his alleged injury was merely a "future harm from the increased risk of contracting a potentially deadly infection disease"). Because Plaintiff has not alleged that he has contracted the virus or that there is a substantially increased risk that he will suffer from the disease in the future, he lacks standing to pursue any of his claims.

Further, Plaintiff's subjective emotional responses, including his fear of "a horrible and painful death," (Compl. ¶ 112), and his "fear and apprehension and distress" due to the possibility of "Ebola terrorism," (Compl. ¶ 119), do not constitute injury in fact. *See, e.g.*, *Clapper*, 133 S. Ct. at 1152–53 (holding that a "subjective fear of surveillance does not give rise to standing"); *City of L.A. v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions"); *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) (holding that plaintiffs lacked standing because "the 'chilling effect' which is produced by their fear of being subjected to illegal surveillance "is foreclosed as a basis for standing").

What is more, by Plaintiff's own admissions, his alleged injuries are not particularized to him, but are being experienced by the American public at large. *See, e.g.*, (Compl. ¶ 34) (alleging that "Defendants have actual knowledge of a substantial risk and actuality that Ebola will be transmitted through the air to infect others"); (Compl. ¶ 14) (stating that Defendants' actions are "intended to further interests that are contrary to the interests of U.S. citizens but in fact favor African and other foreign interests, at the expense and to the severe detriment of Plaintiff and the rest of the American people, who have been and are, by virtue of his actions, being exposed to and will die en masse"); (Compl. ¶ 14) ("Defendant Obama and the other Defendants, each and every one of them, jointly and severally, are acting to further, directly or indirectly, terrorist interests and terrorism generally against Plaintiff and the American people as a whole, as well as to discriminate against Plaintiff and other Jewish and Christian Caucasian Americans."). Plaintiff's failure to demonstrate that he has suffered particularized harm precludes standing. *See Lujan*, 504 U.S. at 560 n.1 (stating that a party must demonstrate that it has suffered an injury that affects it in a "personal and individual way"); *Carik*, 4 F. Supp. 3d at

51 (D.D.C. 2013) ("While the plaintiffs have submitted reports . . . indicating that lower doses . . . have been associated with 'a steady increase in the number of reported adverse events' in Fabry patients, the Complaint does not indicate that any of the plaintiffs *in this case* have actually suffered from such adverse events.").

Plaintiff alleges neither injury that is actual or imminent nor injury that is particularized as to him. While his lack of injury in fact is fatal to standing, it is worth noting that Plaintiff's alleged injuries would in no event be redressable because Plaintiff requests injunctive or declaratory relief that would operate on the President himself. *See, e.g.*, (Compl. Prayer for Relief) (requesting equitable relief, including that "Defendant [President] Obama be referred to the immigration authorities of the Department of Homeland Security for appropriate deportation proceedings as he is not even a naturalized U.S. citizen and thus is in the United States illegally"). The Court, therefore, has no power to grant the relief that Plaintiff requests. *See, e.g.*, *Kendall v. United States*, 37 U.S. 524, 610 (1838) ("The executive power is vested in a President; and as far as his powers are derived from the constitution, he is beyond the reach of any other department, except in the mode prescribed by the constitution through the impeaching power."); *Newdow v. Bush*, 391 F. Supp. 2d 95, 105 (D.D.C. 2005) ("The issuance of an injunction or a declaratory judgment against the President draws the Court into serious separation-of-powers issues. In particular, there is long-standing legal authority that the courts cannot issue injunctions against the co-equal Executive and Legislative branches of our government.").

## II. SOVEREIGN IMMUNITY BARS PLAINTIFF'S CLAIMS FOR DAMAGES

Not only does Plaintiff lack standing to pursue his claims, but each and every one of his seven causes of action must be dismissed for an additional, independent reason: his claims for

damages against Defendants in their official capacities[2] are barred by sovereign immunity. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (explaining that without a specific waiver, the federal government and its agencies are protected from suit by the doctrine of sovereign immunity); *Roum v. Bush*, 461 F. Supp. 2d 40, 45 (D.D.C. 2006) ("In plain English, sovereign immunity means that citizens . . . cannot sue the federal government, agencies of the federal government, or employees of the federal government for acts they perform in their official capacities, unless the federal government has expressly agreed to be sued."). A suit against federal officials in their official capacities is treated as though the plaintiff brought his claims against the United States directly. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Sovereign immunity is "jurisdictional in nature," *Meyer*, 510 U.S. at 475, and extends to employees and agents of the United States when they are sued in their official capacities. *See Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984).

Plaintiff's tort claims alleged in his Fifth and Sixth Causes of Action, (Compl. ¶¶ 110–15, 116–21), should be dismissed for lack of jurisdiction because, although these claims seek damages against Defendants acting in their official capacities, Plaintiff fails to identify a statutory grant of jurisdiction to overcome sovereign immunity. *See Goddard v. D.C. Redevelopment Land Agency*, 287 F.2d 343, 346 (D.C. Cir. 1961) (affirming dismissal of tort claims because "[s]uits based on torts allegedly committed by [a federal agency] or by its employees acting in an official capacity are maintainable, if at all, under the provisions of the Tort Claims Act, [28 U.S.C. §§ 1346(b), 2671–80] *et seq.*], and must name the United States as defendant"). Similarly, "[s]ince the federal government has not expressly waived its sovereign

---

[2] *See supra* note 1.

immunity for suits brought under *Bivens*," sovereign immunity bars Plaintiff's Fourth Cause of Action, which alleges Fifth Amendment *Bivens* violations against the individually named Defendants in their official capacities. *See Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011) (citation and internal quotation marks omitted); *Deutsch v. U.S. Dept. of Justice*, 881 F. Supp. 49, 52 (D.D.C. 1995) ("[B]ecause Plaintiff has failed to effect service of process on the Defendants, the Court is unable to exercise jurisdiction over them and the *Bivens* action against them must accordingly be dismissed."). Plaintiff's Seventh Cause of Action, which asserts claims under 42 U.S.C. §§ 1983 and 1985, meets the same fate. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098 (D.C. Cir. 2005).

For largely the same reasons, sovereign immunity also bars Plaintiff's First, Second, and Third Causes of Action insofar as they allege damages against Defendants for harm to Plaintiff's "person, property, or business," *see* (Compl. ¶¶ 94, 99, 102). Plaintiff's attempt to invoke jurisdiction under the Anti-Terrorism Act, 18 U.S.C. § 2332 *et seq.*, cannot save these claims. *See* (Compl. ¶ 4) (asserting subject matter jurisdiction under 18 U.S.C. §§ 2333, 2334). The Anti-Terrorism Act "waive[s] foreign sovereign immunity for certain state-sponsored terrorist acts." *Roeder v. Islamic Republic of Iran*, 195 F. Supp. 2d 140, 149 (D.D.C. 2002). As the statute itself makes plain, however, this waiver of sovereign immunity does not apply to suits brought against "an officer or employee of the United States or any agency thereof acting within his or her official capacity or under color of legal authority." 18 U.S.C. § 2337(1). Because Plaintiff's suit names federal officials as Defendants, sovereign immunity bars Plaintiff's claims alleging violations of the Anti-Terrorism Act.

### III. PLAINTIFF'S ENTIRE COMPLAINT IS FRIVOLOUS AND MAY BE DISMISSED FOR THAT REASON ALONE.

Setting aside the fact that Plaintiff's claims must be dismissed because they are nonjusticiable and barred by sovereign immunity, the Court may in its discretion dismiss Plaintiff's entire complaint as frivolous. While Plaintiff may allege that the President and other senior officials of the United States government conspired to promote an Ebola outbreak in the United States to facilitate terrorist interests, federal courts have no obligation to entertain such baseless claims spun on delusion and fantasy. *See Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (stating that "federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit'" (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904))). A federal court's power to dismiss frivolous claims extends not only to "legally frivolous" claims but also to factually baseless claims: those based on allegations that rise to the level of "irrational or wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Jordan v. Quander*, 882 F. Supp. 2d 88, 97 (D.D.C. 2012) (citing *Denton*, 504 U.S. at 33). Indeed, Plaintiff's entire complaint should be dismissed because it is rife with baseless, facially absurd, and irrational theories of conspiracy, international terrorism, and intentional racial discrimination. *See Bickford v. Gov't of the U.S.*, 808 F. Supp. 2d 175, 182 (D.D.C. 2011) (concluding that plaintiff's "laundry list of wrongful acts and conclusory allegations to support her theory of a conspiracy," were "insufficient to allow the case to go forward") (citation omitted); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 233 (D.D.C. 2007) (dismissing claims brought by an attorney proceeding *pro se* after noting that "the clarity with which [the plaintiff] describes her bizarre conspiracy theory does not make it any less bizarre").

Plaintiff offers not a single fact to corroborate his preposterous allegations that Defendants "jointly and severally" are engaging in acts of terrorism "against Plaintiff and the American people as a whole," and that "Defendants [sic] actions in exposing Plaintiff to the Ebola virus as well as other Americans is the direct result of discrimination against Plaintiff on the basis of his Caucasian race and Jewish–Christian religion and in favor of people of the African–Black race and the Islamic religion." (Compl. ¶ 14). His entire complaint is predicated on the theory that Defendants have adopted a "reckless plan to open the door not just to Defendant Obama's infected fellow Africans, but also American Muslim ISIS suicide terrorists who would intentionally infect themselves with the deadly disease and thus spread it widely in the United States." (Compl. ¶ 66). Plaintiff marshals a series of wild and inconsistent allegations theorizing on Defendants' motives, including that "Defendant Obama feels, at a minimum, a kinship toward the Muslim world, as he was born to a Muslim father, studied in his youth at Muslim schools, and was likely born in the African nation of Kenya." (Compl. ¶ 26); *see also* (Compl. ¶ 76) (alleging that, "by refusing to control travel from dangerous areas under risky conditions," Defendants seek "to pursue Defendant Obama's goal of adding millions of new Democrat voters to the country and to the voter rolls so that the Democrat Party will win elections"); (Compl. ¶ 77) (alleging that Defendants seek "to pursue the goals of the CDC and medical companies profiting from a vaccine and from treatments for Ebola"). Plaintiff's claims are unquestionably fantastic because he finds individualized meaning in general and benign actions by Defendants that are in no way related to him. *See, e.g.*, (Compl. ¶ 14) (alleging that Plaintiff "and the rest of the American people . . . will die en masse" due to Defendants' actions); (Compl. ¶ 14) (alleging that Defendants have conspired to discriminate against Plaintiff and other Jewish–Americans); (Compl. ¶ 120) (alleging that Defendants have acted "willfully,

maliciously and deliberately, or with reckless indifference, to cause Plaintiff severe mental and emotional pain").

Such "bizarre conspiracy theories" are the sort of "essentially fictitious" claims warranting dismissal for lack of subject matter jurisdiction. *See Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994); *Jordan v. Quander*, 882 F.Supp.2d 88, 97 (D.D.C. 2012) ("Claims describing fantastic or delusional scenarios fall into the frivolous category."); *see also Deyerberg v. Holder*, 455 F. App'x 1 (D.C. Cir. Dec. 28, 2011) (affirming dismissal for lack of jurisdiction because the appellant's claims "were patently frivolous, suggested bizarre conspiracy theories, and were fantastic, delusional, and essentially fictitious"). District courts in this circuit routinely dismiss claims against government officials premised upon similarly irrational and unsubstantiated theories. *See, e.g.*, *Newby v. Obama*, 681 F. Supp. 2d 53, 56 (D.D.C. 2010) ("Having reviewed plaintiff's complaint, it appears that its claims relating to alleged government surveillance and harassment are of the sort of 'bizarre conspiracy theory' that warrant dismissal under Rule 12(b)(1)."); *see also Lessmann v. Tenet*, 362 F. Supp. 2d 33, 36 (D.D.C. 2005) (dismissing "inherently incredible" gender discrimination claim brought *pro se* against former Director of the Central Intelligence Agency in his official capacity); *Curran v. Holder*, 626 F. Supp. 2d 30, 34 (D.D.C. 2009) ("dismiss[ing] for lack of subject matter jurisdiction all of plaintiff's claims which are premised on a theory that defendants are conducting surveillance of her as part of a 'national security investigation' and harassing her and her family"); *see also O'Brien v. U.S. Dep't of Justice*, 927 F. Supp. 382, 385 (D. Ariz. 1995) ("On their face, Plaintiff's allegations are so bizarre and delusional that they are wholly insubstantial and cannot invoke this Court's jurisdiction.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant **Defendants' Motion to Dismiss Under Rule 12(b)(1)**.

Dated: January 28, 2015

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

SHEILA M. LIEBER
Deputy Director,
Federal Programs Branch

*/s/ Deepthy Kishore*
DEEPTHY KISHORE
Trial Attorney (IL Bar No. 6306338)
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 616–4448 | Fax: (202) 616–8470
deepthy.c.kishore@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address:
20 Massachusetts Ave., N.W.
Washington, D.C. 20001

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2015, I electronically filed the foregoing **Defendants' Motion to Dismiss Under Rule 12(b)(1)** with the Clerk of the Court using the CM/ECF system, which will send notice of this filing to all parties.

*/s/ Deepthy Kishore*
DEEPTHY KISHORE

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 15-cv-80388-MIDDLEBROOKS**

LARRY KLAYMAN,

Plaintiff,

v.

HILLARY CLINTON, *et al.*,

Defendants.

_____________________________/

**ORDER GRANTING MOTIONS TO DISMISS**

THIS CAUSE comes before the Court upon a Motion to Dismiss [DE 43] filed by Hillary Rodham Clinton and William Jefferson Clinton (collectively, the "Individual Defendants"), and a Motion to Dismiss [DE 44] filed by the Clinton Foundation ("Clinton Foundation"). Both Motions are fully briefed. For reasons that follow, the Motions are granted.

## I. BACKGROUND

Plaintiff Larry Klayman ("Plaintiff") filed action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act action against the Individual Defendants and the Clinton Foundation on March 24, 2015. [DE 1]. Plaintiff is "an attorney active in the public interest and is Chairman and General Counsel of Freedom Watch, Inc." [Am. Compl., DE 32-1 at ¶ 15]. Plaintiff has filed numerous "requests for public records created or held by the U.S. Department of State," under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. [*Id.* at ¶ 5]. The Amended Complaint[1] focuses on two of those FOIA requests in particular. Specifically, Plaintiff alleges

[1] On May 29, 2015, the Court granted Plaintiff's Motion to Amend the Complaint and instructed Plaintiff to file the Amended Complaint by June 2, 2015. [DE 39]. As of the date of this Order, Plaintiff has not filed the Amended Complaint. Since the briefings on the present Motions refer to the proposed Amended Complaint as the operative complaint in this action, the Court construes the proposed Amended Complaint as the operative complaint. References to the "Amended

Defendants have unlawfully withheld from Plaintiff documents concerning: (1) "the granting of waivers by the U.S. Secretary of State for persons, companies, countries, and other interests to do business with Iran," and (2) Defendants' leakage of "Israeli war plans and cyber-warfare methods and sources to David Sanger of The New York Times." [*Id.* at ¶ 6].

Plaintiff contends he did not receive these documents primarily because "Defendant Hillary Clinton – upon information and belief together with Cheryl Mills and Defendant Bill Clinton and other Clinton 'loyalists' – set up a private computer file server ('server') operating a private, stand-alone electronic mail ('email') system." [*Id.* at ¶ 7]. Plaintiff alleges that Defendants used the personal email account to "operate a covert enterprise of trading political favors and government acts in exchange for donations, which are in effect bribes," and to conceal "public records to which the Plaintiff was entitled [] under the FOIA Act." [DE 32-1 at ¶¶ 12-13].

Based on the foregoing, the Amended Complaint alleges the following six counts against Defendants: (1) common law misappropriation of chattel property; (2) acquisition and maintenance of an interest in and control of an enterprise engaged in a pattern of racketeering activity under 18 U.S.C. §§ 1961(5), 1962(b); (3) conduct and participation in a RICO enterprise through a pattern of racketeering activity under 18 U.S.C. §§ 1961(5), 1962(c); (4) conspiracy to engage in a pattern of racketeering activity under 18 U.S.C. §§ 1961(5), 1962(d); (5) Fifth Amendment violation under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and (6) First Amendment violation under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim. *See* [DE 43, 44].

---

Complaint" in this Order are to the proposed Amended Complaint attached to Plaintiff's First Motion to Amend [DE 32, Ex. 1].

## II. LEGAL STANDARD

### A. 12(b)(1)

A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). "When defending against a facial attack, the plaintiff has 'safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised,' and 'the court must consider the allegations in the plaintiff's complaint as true.'" *Id.* (quoting *McElmurray*, 501 F.3d at 1251); *see also Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990). A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1) because standing is a jurisdictional matter. *See State of Ala. v. U.S. E.P.A.*, 871 F.2d 1548, 1554 (11th Cir. 1989).

### B. 12(b)(6)

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no

construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F. 3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F. 3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F. 3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purpose of determining whether a claim is legally sufficient).

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2). Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555-56. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3. Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

## III. DISCUSSION

**A. Article III Standing**

Federal courts are of limited jurisdiction and are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Article III of the Constitution confines the "judicial Power" of the United States to "Cases" and "Controversies." U.S. Const. art. III, § 2. Federal courts "have always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). "The 'irreducible constitutional minimum of standing' contains three requirements": (1) "an 'injury in fact' – a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical;'" (2) causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant;" and (3) "redressability – a likelihood that the requested relief will redress the alleged injury." *Id.* at 102-03 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing. Thus, the Supreme Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). In addition, "federal courts have abjured appeals to their authority which would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687 (1973)). Therefore, "even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III, the court has refrained from

adjudicating 'abstract questions of wide public significance,' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Id.* at 474-75. Finally, the law presumes that "a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citation omitted).

**1. Injury in Fact**

Article III requires the party invoking the Court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979), and that the injury can be "fairly . . . traced to the challenged action of the defendant." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41 (1976).

Relying solely upon the allegations in the Amended Complaint, it would be difficult to ascertain what injury Defendants' putatively illegal conduct caused Plaintiff. However, when pressed by Defendants' Motions to Dismiss, Plaintiff points to two specific injuries in fact: (1) "Defendants are liable to Plaintiff for theft in taking and refusing to turn over property belonging to Plaintiff;" and (2) that Plaintiff "has been harmed in his business or property." [Response, DE 57 at 29].

**i. Property Interest**

First, Plaintiff argues that FOIA creates a "property interest" in government records, and that Defendants' use of a personal email account to conceal government records as a part of their alleged racketeering activity deprived him of that interest. *See* [Response at 29-32].

FOIA "vests jurisdiction in federal district courts to enjoin an '*agency* from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980)

(quoting 5 U.S.C. § 552(a)(4)(b)) (emphasis added). FOIA does not create a general property interest in government records, and does not provide for "private actions to recover records wrongfully removed from Government custody." *See id.* at 137. Here, Plaintiff alleges that Defendants (none of whom are a government agency) "concealed official government documents" Plaintiff requested,[2] such that they were not available to be searched by the State Department and produced to Plaintiff under FOIA. [Am. Compl. at ¶ 13].

In other words, Plaintiff does not bring this action under FOIA, but rather appears to allege that FOIA creates a constitutional "property interest" in government records generally. *See* [Response at 29-30] (citing procedural due process cases). However, Plaintiff fails to cite to any case recognizing such a FOIA-created constitutional property interest. *But see Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 n.4 (11th Cir. 2009) (statutory rights under FOIA do "not enjoy substantive due process protection"); *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1236-37 (10th Cir. 2007) (Integrity Committee's failure to provide citizen with documents requested pursuant to FOIA did not violate citizen's due process rights because citizen had no "life, liberty, or property interest in the materials at issue.").

To prove the existence of a due process property interest in a "benefit" created by statute, a plaintiff "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Because Plaintiff cannot bring an action under

[2] The Amended Complaint alleges that "Plaintiff initially signed *and requested*, pursuant to FOIA, the records set forth with regard to the two FOIA requests at issue here." [Am. Compl. at ¶ 15] (emphasis added). However, as Defendants note, both FOIA requests at issue were submitted by Freedom Watch. *See Freedom Watch, Inc. v. Nat'l Security Agency*, Case No. 14-5174 (D.C. Cir. 2015); *Freedom Watch, Inc. v. Dep't of State*, Case No. 15-5048 (D.C. Cir. 2015). Therefore, to the extent Plaintiff alleges harm resulting from not receiving records requested under FOIA, that harm was suffered by Freedom Watch, the named requester associated with both FOIA requests, and not by Plaintiff. *See McDonnell v. United States*, 4 F.3d 1227, 1239 (3d Cir. 1993) (holding plaintiff lacked standing to sue under FOIA where his name did not appear on FOIA request for records because he had "not administratively asserted a right to receive [the documents] in the first place.").

FOIA,[3] he cannot prove a legitimate claim of entitlement to a benefit created by FOIA. *See Kissinger*, 445 U.S. at 139 ("We hold today that even if a document requested under the FOIA is wrongfully in the possession of a party not an 'agency,' the agency which received the request does not 'improperly withhold' those materials by its refusal to institute a retrieval action."). Given that Plaintiff has no property interest in the government records allegedly under Defendants' control, he cannot allege an injury resulting from the alleged deprivation of those records.

**ii. Business Injury**

Plaintiff also contends that Defendants' use of a personal email account to conceal government records as a part of the alleged criminal racketeering activity harms his ability to earn a living. [Response at 32].

While "economic injury" is generally recognized as a "cognizable injury," the economic injury must be sufficiently "concrete and imminent" to establish standing. *See, e.g.*, *Alabama-Tombigbee Rivers Coal. v. Norton*, 338 F.3d 1244, 1253 (11th Cir. 2003). The Amended Complaint does not allege any facts to support Plaintiff's assertion that he has experienced any professional harm attributable to Defendants' conduct, or any actual financial loss. When pressed by Defendants' Motions to Dismiss to better articulate the injury he has suffered, Plaintiff responded:

> If Plaintiff can no longer disseminate information to the public, Plaintiff will no longer receive the support of the public and earn a living doing his chosen profession as a public advocate who uncovers and prosecutes government corruption and abuse. It is through the support of the public, through their financial support, that Plaintiff is able to earn a living.

[Response at 33-34].

[3] Plaintiff concedes that he cannot seek relief under FOIA. *See* [Response at 35] ("The documents . . . are in the custody and possession of the Defendants and have never been in the possession of the State Department . . . . This lawsuit against the private Defendants [as opposed to Freedom Watch's pending FOIA actions against the State Department] is the only means for the Plaintiff to obtain redress.").

Thus, even according to Plaintiff's own words, his economic injury is speculative at best. It is unclear whether the records allegedly withheld from Plaintiff exist at all, and if they do exist, whether they are in Defendants' possession. Similarly, it is unknown whether the contents of any alleged records would be of any interest to the public. Even assuming such records exist and are of interest to the public, it is unclear whether such public interest would translate into public support of Plaintiff. Finally, if all of this somehow garnered public support for Plaintiff, it is unclear how such public support would translate into financial support. "[P]urely speculative, nonconcrete injuries" are insufficient to establish an injury in fact for purposes of Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 556, 112 S. Ct. 2130, 2134, 119 L. Ed. 2d 351 (1992). Further, "a possible financial loss is not by itself a sufficient interest to sustain a judicial challenge." *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)); *see also Love Church v. City of Evanston*, 896 F.2d 1082, 1086 (7th Cir. 1990) ("Claims of such vague economic harm are precisely the type of 'abstract' or 'conjectural' allegations spurned by the Supreme Court in *Warth*," and "cannot constitute distinct and palpable injury for purposes of standing."). Accordingly, Plaintiff has not met his burden of demonstrating an injury to establish Article III standing to bring this case.

**B. Rule 12(b)(6)**

**1. RICO Standing**[4]

Defendants also argue that even if Plaintiff could maintain Article III standing, he lacks RICO standing. RICO standing is narrower than Article III standing. "RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of

---

[4] Despite the label "standing," courts typically review the question of RICO standing under Rule 12(b)(6), not Rule 12(b)(1). *See, e.g.*, *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1358 (11th Cir. 2011).

section 1962 of this chapter.'" *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)). To have standing under RICO, a plaintiff must meet two requirements. First, the plaintiff must have suffered "an injury to business or property." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quotation marks omitted). Second, the asserted injury must have come about "by reason of a violation of [a predicate racketeering act listed in] section 1962 of this chapter." 18 U.S.C. § 1964(c).

**i. Injury to Business or Property**

To state an injury to business or property under RICO, a plaintiff "must allege economic injury arising from the defendant's actions." *Ironworkers Local Union 68*, 634 F.3d at 1361 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Noneconomic injuries do not give rise to RICO standing. *Id.* The only economic injury Plaintiff alleges is that Defendants' conduct may have compromised Plaintiff's ability to earn a living. *See* [Response at 34]. However, for the same reasons discussed *supra*, such vague and speculative allegations of economic injury are insufficient to state an injury to business or property under RICO.

**ii. Causation**

Even if Plaintiff's conjectural allegations of his compromised ability to earn a living were sufficient to state an injury, Plaintiff fails to allege that his economic injury was caused by a predicate racketeering act under RICO. RICO standing requires a plaintiff's injury to be *directly* caused by a predicate racketeering act prohibited under § 1962. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 452 (2006). Specifically, a plaintiff is required to show:

> that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well. Proximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations; proximate cause thus requires some direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirect is insufficient.

*Hemi Grp., LLC*, 559 U.S. at 9 (internal quotations and citations omitted).

The Amended Complaint alleges seven "predicate criminal acts": (1) "anticipatory obstruction of justice," in violation of 18 U.S.C. § 1519; (2) "conspiracy to conceal and remove official records," in violation of 18 U.S.C. § 2071; (3) "conspiracy to defraud United States," in violation of 18 U.S.C. § 371; (4) "federal mail fraud," in violation of 18 U.S.C. §1341; (5) "federal wire fraud," in violation of 18 U.S.C. § 1343; (6) "false statements," in violation of 18 U.S.C. § 1001; and (7) "mishandling of classified information," in violation of 18 U.S.C. § 793. *See* [Am. Compl. at ¶¶ 247 – 278]. However, only Sections 1341 (mail fraud) and 1343 (wire fraud) are included in RICO's exhaustive list of predicate racketeering acts. *See* 18 U.S.C. § 1961; *see also St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 66 (3d Cir. 2009) ("The list is exhaustive.").

Mail fraud and wire fraud are essentially identical except for the method of execution. *United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011); *see* 18 U.S.C. §§ 1341, 1343. "Both offenses require that [Defendants]: (1) intentionally participate[d] in a scheme or artifice to defraud another of money or property, and (2) use[d] or cause[d] the use of the mails or wires for the purpose of executing the scheme or artifice." *Bradley*, 644 F.3d at 1283.

Plaintiff does not allege that Defendants defrauded Plaintiff of money or property through mail or wire fraud. Instead, Plaintiff alleges that Defendants engaged in mail and/or wire fraud by "utiliz[ing] false or fraudulent pretense, representations, and/or promises in order to defraud and/or obtain money from illicit payments disguised as donations." [Am. Compl. at ¶¶ 258, 264]. Critically, Plaintiff fails to allege how Defendants' mail or wire fraud, which allegedly involved obtaining money from others, directly injured Plaintiff. Therefore, the relationship between Defendants' mail or wire fraud and Plaintiff's alleged compromised ability to earn a living is "too remote to satisfy RICO's direct relationship requirement." *See Hemi Grp., LLC*, 559 U.S. at 9 (city's causal theory could not show direct relationship between city's lost tax revenue and vendor's failure to report cigarette sales to state where city's theory of liability rested on separate

actions carried out by separate parties). Accordingly, in addition to lacking Article III standing, Plaintiff lacks RICO standing to bring this action.

**2. Other Claims**

In addition to his RICO claims, Plaintiff brings the following claims: (1) misappropriation of chattel property; (2) violation of his Fifth Amendment rights; and (3) violation of his First Amendment rights. [Am. Compl.]. Plaintiff's misappropriation of chattel property and Fifth Amendment claims are based upon Plaintiff's alleged "vested property right to a copy of the records responsive to Plaintiff's FOIA request." [Am. Compl. at ¶ 280, 307]. However, as explained *supra*, because Plaintiff does not possess a property interest in the government records allegedly under Defendants' control, these claims fail.

Turning to Plaintiff's First Amendment claim, Plaintiff alleges that Defendants violated:

> Plaintiff's First Amendment right of freedom of speech and association by significantly disallowing the public and Plaintiff discord to discuss and disseminate to the public and citizenry in the public interest what the Defendants have done and will do with regard to Iran and their criminal enterprises by not providing the misappropriated records and documents which Plaintiff is entitled to under FOIA law.

[DE 32-1 at 310]. However, the Supreme Court has repeatedly rejected the argument that FOIA endows citizens with a constitutional right to access government records. *See, e.g.*, *McBurney v. Young*, 133 S. Ct. 1709, 1718 (2013) ("This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws."); *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality op.) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."); *see also Foto USA, Inc. v. Bd. of Regents of Univ. Sys. of Fla.*, 141 F.3d 1032, 1035 (11th Cir. 1998) ("There is no First Amendment right of access to public information."). Accordingly, Plaintiff has failed to state a claim under the First Amendment.

**C. Motion to Amend**

On July 2, 2015, Plaintiff filed a Motion for Leave to Amend the Amended Complaint. [DE 56]. Defendants filed a Joint Response in Opposition [DE 64] on July 13, 2015, to which Plaintiff filed a Reply [DE 86] on July 30, 2015.[5] On May 29, 2015, the Court granted Plaintiff's Motion to Amend the Complaint [DE 32]. *See* [DE 39]. The Order required that Plaintiff file his Amended Complaint **by June 2, 2015**. [DE 39]. As of this date, Plaintiff has not filed his First Amended Complaint.[6] Plaintiff now seeks to file a Second Amended Complaint.

Under Rule 15(a)(1), a party may amend its pleading once as a matter of course within 21days of serving it or 21 days after service of any responsive pleading or motion under Rule 12(b), (e), or (f). *See* Fed. R. Civ. P. 15. When a party can no longer amend its pleading as of right, it "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, a motion for leave to amend may appropriately be denied "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

Plaintiff contends that he does not seek leave to amend the Amended Complaint to "ma[ke] any real substantive changes to the Amended Complaint," but rather "to include more precise pleading language[.]" [DE 56 at 2]. Having reviewed the proposed Second Amended Complaint [DE 56-1], the Court finds it suffers from the same deficiencies as the Amended Complaint. Because amendment would be futile, it is hereby

---

[5] On July 24, 2015, the Court granted Plaintiff's motion for an extension of time to file his reply, giving Plaintiff until July 30, 2015 to file his reply.
[6] The Amended Complaint is attached to Plaintiff's Motion to Amend the Complaint [DE 32] as Exhibit 1, but has not been filed on the docket as an Amended Complaint. *See* [DE 32-1].

**ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss filed by Defendants Hillary Rodham Clinton and William Jefferson Clinton [DE 43] is **GRANTED**;
2. The Motion to Dismiss filed by Defendant the Clinton Foundation [DE 44] is **GRANTED**;
3. Plaintiff's Motion for Leave to Amend the Amended Complaint [DE 56] is **DENIED**;
4. Plaintiff's Amended Complaint is **DISMISSED**; and
5. The Clerk of Court shall **CLOSE THIS CASE** and **DENY** all pending motions **AS MOOT**.

**SO ORDERED** in Chambers at West Palm Beach, Florida, this 10 day of August, 2015.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

# Freedom Watch

## FREEDOM WATCH FOUNDER KLAYMAN FILES CLASS ACTION AGAINST OBAMA, FARRAKHAN, HOLDER, SHARPTON, BLACK LIVES MATTER OVER INCITEMENT, THREATS AND KILLINGS OF LAW ENFORCEMENT AND OTHERS

Lawsuit Filed In Dallas, Texas Today



(Dallas, Texas, July 9, 2016). Today, Larry Klayman, a former prosecutor for the U.S. Department of Justice, founder of Judicial Watch and now Freedom Watch, and a former U.S. Senate Candidate in Florida, filed as lead plaintiff a class action lawsuit to redress the incitement, violence and killings of law enforcement and others, as occurred last Thursday in Dallas, Texas.

The class action complaint filed today in the the U.S. District Court for the Northern District of Texas (Klayman et. al v. Obama et. al, Civil Action Number 3:16-cv-2010), can be viewed at www.freedomwatchusa.org.

Klayman had this to say upon the filing of this class action complaint:

"It's time that law enforcement, such as the plaintiffs in this case, including myself, come forward by peacefully attempting to use the legal system to redress the incitement, threats and killings provoked by the defendants in this class action case. I am hopeful that I will be joined by other law enforcement to join in the suit. For too long, law enforcement and others, including white and non-white Jews and Christians, have remained silent, scared to speak and act, for fear of being branded racists over the fear of being threatened and harmed by the defendants and their accomplices. This must stop and justice must be done to preserve the integrity of our great nation and to avoid an all out race war that will destroy the freedom that our Founding Fathers dedicated their sacred honor, their fortunes and risked their lives for."

For more information or an interview, contact leklayman@yahoo.com and see www.freedomwatchusa.org or call 561-558-5336.

View complaint:

http://www.freedomwatchusa.org/pdf/160709-ComplaintASFILEDEntryt17719994461.pdf

Attached: 160709-ComplaintASFILEDEntryt17719994461.pdf

# Freedom Watch

## KLAYMAN/FREEDOM WATCH LAWSUIT AGAINST OBAMA, SHARPTON, FARRAKHAN, HOLDER, AND BLACK LIVES MATTER TAKES ON EVEN GREATER IMPORTANCE AFTER LATEST POLICE KILLINGS IN BATON ROUGE




(Dallas, Texas, July 17, 2016). Last week, Larry Klayman, a former prosecutor for the U.S. Department of Justice, founder of Judicial Watch and now Freedom Watch, and a former U.S. Senate Candidate in Florida, filed as lead plaintiff a class action lawsuit to redress the incitement, violence and killings of law enforcement and others, as occurred last Thursday in Dallas, Texas.

The class action complaint filed last week in the U.S. District Court for the Northern District of Texas (Klayman et. al v. Obama et. al, Civil Action Number 3:16-cv-2010), can be viewed at www.freedomwatchusa.org.

Klayman had this to say upon the filing of this class action complaint:

"It's time that law enforcement, such as the plaintiffs in this case, including myself, come forward by peacefully attempting to use the legal system to redress the incitement, threats and killings provoked by the defendants in this class-action case. I am hopeful that I will be joined by other law enforcement to join in the suit. For too long, law enforcement and others, including white and non-white Jews and Christians, have remained silent, scared to speak and act, for fear of being branded racists over the fear of being threatened and harmed by the defendants and their accomplices. This must stop and justice must be done to preserve the integrity of our great nation and to avoid an all-out race war that will destroy the freedom that our Founding Fathers dedicated their sacred honor, their fortunes and risked their lives for."

For more information or an interview, contact leklayman@yahoo.com and see www.freedomwatchusa.org or call 561-558-5336.

View complaint:

http://www.freedomwatchusa.org/pdf/160709-ComplaintASFILEDEntryt17719994461.pdf

# Freedom Watch

# SERGEANT DEMETRICK PENNIE OF DALLAS POLICE DEPARTMENT BECOMES PLAINTIFF IN CLASS ACTION SUIT AGAINST BLACK LIVES MATTER, FARRAKHAN, NATION OF ISLAM, SHARPTON, ERIC HOLDER, OBAMA, CLINTON, SOROS AND OTHERS OVER INCITING AND FINANCING THREATS AND VIOLENCE AGAINST LAW ENFORCEMENT!

Klayman Amends Complaint to Include Brave Dallas Police Officer and Those Similarly Situated



(Dallas, Texas, September 16, 2016). Today, Larry Klayman, the founder of Judicial Watch and Freedom Watch and a former federal prosecutor of the U.S. Department of Justice, amended the complaint he previously filed against President Barack Obama, Louis Farrakhan, Al Sharpton, Eric Holder, and Black Lives Matter and others which alleges that they they incited threats, violence and killings of law enforcement, as manifested during the recent Dallas, Texas, massacre.

The lawsuit, filed in the U.S. District Court for the Northern District of Texas, which is located in Dallas, is now styled Pennie et. al v. Farrkahan et. al (Civil Action Number 16-cv-02010), was amended today to include allegations that Hillary Clinton and George Soros have also incited and financed this violence for their own political purposes and, along with the other defendants, stoked a race war which is pulling the fabric of the nation apart at the seams, with even some sports figures and elected politicians disparaging and denouncing the country as a whole by defiantly refusing to stand and recite the Pledge of Allegiance.

The amended complaint, which seeks large damages and an injunction to have these threats of severe bodily injury and death, and actual violence, be ordered to cease and desist, can be found at www.freedomwatchusa.org.

Klayman had this to say:

"Sergeant Pennie and I feel duty-bound to put ourselves forward to seek an end to the incitement of violence against law enforcement which has already resulted in the death of five police officers in Dallas and the wounding of seven more, just in Texas alone. Other assaults and deaths have occurred elsewhere. While the case was filed in Texas, it will create precedent around the nation that law enforcement, which ironically protects the very persons who are alleged to have incited this violence, should be respected. The defendants, if not legally reined in, are allegedly responsible, along with others, for igniting a race war that will ultimately totally destroy the freedoms that our Founding Fathers bequeathed to us."

For interviews contact (424) 274-2579 or daj142182@gmail.com

**View amended complaint:**

http://www.freedomwatchusa.org/pdf/160916-BLM%20Amended%20Complaint%20.pdf

Attached: 160916-BLM Amended Complaint .pdf

# Freedom Watch

# DALLAS SERGEANT DEMETRICK PENNIE AND LARRY KLAYMAN ASK COURT FOR EMERGENCY HEARING OVER DEATH THREATS ALLEGEDLY FURTHERED OR MADE BY DEFENDANTS IN LAWSUIT AGAINST FARRAKAN, NATION OF ISLAM, SHARPTON AND OTHERS TO STOP VIOLENCE AGAINST POLICE AND OTHER LAW ENFORCEMENT OFFICERS



**Pennie and Klayman Decry Black Police Association of Greater Dallas Plans To Hold Press Conference with Nation of Islam and Others Who Incite or Condone of Violence at 11 am Friday September 23, 2016, at 211 Centre Street, Dallas, Texas 75208.**

(Dallas, Texas, September 22 and 23, 2016). Today, Sergeant Demetrick Pennie and Larry Klayman, plaintiffs in a class action lawsuit filed in the U.S. District Court for the Northern District of Texas (Pennie et. al v. Farrakhan et. al, Civil Action No. 3-16-cv-02010-1), filed a motion asking the court to hold an emergency hearing to seek redress concerning recent death threats which allegedly were either furthered or instigated directly or indirectly by the Defendants. Pennie and Klayman request that this emergency hearing be held this Tuesday, September 27, 2016. A copy of the motion is embedded below and can also be viewed at www.freedomwatchusa.org.

Given that Defendants Farrakhan of the Nation of Islam and Sharpton have called for the killing of law enforcement, these Defendants are allegedly directly implicated in this call for more violence, as the motion sets forth. So too are the other Defendants, including but not limited to Black Lives Matter, the New Black Panthers Party, and George Soros (who allegedly finances this violence), all supported by Defendants President Barack Obama and presidential candidate Hillary Clinton for their political ends. See Amended Complaint at www.freedomwatchusa.org.

To add insult to injury, the Black Police Association of Greater Dallas incredibly will hold a press conference this Friday apparently opposing plaintiffs' lawsuit and has even invited Tyrone Muhammed, President of the Nation of Islam Mosque #48 in Dallas, as well as other groups that have incited and/or condoned violence against law enforcement.

Sergeant Pennie had this to say about the press conference to be held by his fellow officers:

"That the Black Police Association of Greater Dallas would associate with the Dallas leader of Farrakhan's Nation of Islam, and others who stand for or condone violence, is an absolute outrage. These fellow police officers should be ashamed of themselves and if they do not reconsider their association with Farrakhan's the Nation of Islam in my opinion they should also consider forfeiting their oath of office, as they no longer represent law enforcement and the good people of Dallas, whatever their color, religion, race, ethnicity or creed."

The press release of the Black Police Association of Greater Dallas is also embedded below.

For more information or an interview, contact daj142182@gmail.com or (424) 274 2579.

## View motion

http://www.freedomwatchusa.org/pdf/160922-2016.09.22 - BLM - Motion For Hearing.pdf

## Black Police Association of Greater Dallas press release

Contact: Black Police Association of Greater Dallas
214-421-7644
bpaoffce@bpadallas.org

**For Immediate Release**

LOCAL POLICE ASSOCIATION TAKES A STANCE ON KILLINGS OF UNARMED BLACK MEN AND POLICE BRUTALITY

Black Police Association of Greater Dallas to Hold Press Conference on the Epidemic of Unarmed Black Men being Killed

**Dallas, TX — September 21, 2016** – The members and leadership of the Black Police Association of Greater Dallas offer our prayers, condolences, and deepest sympathy to the family of Mr. Terrence Crutcher of Tulsa, Oklahoma. His death reminds us of the tremendous amount of work still necessary to bridge the gap (real and perceived) that exists between law enforcement and the black community. As an organization of professional police officers, predominantly black, it is our moral duty to do our part in preventing the needless death of anymore unarmed people of color; and yes, that moral duty does extend to all human life regardless of color, but there is an epidemic of unarmed black men being shot by police officers. It is so pervasive, if not checked it will soon rise to levels exceeded only by lynchings, and slavery. We reference Dr. Martin Luther King in his eloquence directed to America, "We can never be satisfied as long as the Negro is the victim of the unspeakable horrors of police brutality." It is time to jog our consciousness and stop this epidemic from spreading; we cannot continue to have innocent lives lost. We are at a pivotal moment in history, where we must take the opportunity to change policing forever. If we make the radical changes necessary, we as a nation survive. If we fail, it is conceivable, that similar to the biblical cities of Sodom and Gomorrah, we start our descent to destruction as a nation. As black police officers, we are expected to perform our duty at times when one would believe that we are forced to choose between two sides. One side tells us remaining silent on this issue is necessary to survive in this profession, the other tells us to speak up loudly if we are to survive in our ethnic community. As black officers we will choose the side of right and use all of our energy, time, expertise, and funds to render this epidemic officially over. Until it ends, nothing can shield one from the possibility of becoming a hash tag in the long list of senseless acts of this nature. Education, character, college degrees from prestigious institutions, walls of awards/citations, and talent won't shield one from the hash tag list.

Disrespect and verbal assaults hurled at social justice organizations like Black Lives Matter are not the answer. We should be inviting them to the table to reach solutions. Lawsuits that list defendants like our nation's leader President Barack Obama, former Secretary of State, Hillary Clinton, Nation of Islam leader, Louis Farrakhan, former Attorney General, Eric Holder, and more are not bridges across that gap, the gap widens. Violence is not the answer, trust building is a start. We lost friends and colleagues that were among the officers killed in Dallas. This senseless act of violence was not the answer, nor does the answer lie in the loss of life of the many unarmed black men, who we seem to awaken to on a morning basis all too often.

#whowillbenext

**Please join us for a community press conference — Friday, September 23, 2016.**

**Time:** 11am

**Location**: Black Police Association of Greater Dallas Headquarters, 211 Centre St. — Dallas, TX 75208

**Purpose:** Comprehensive Steps to Address the Gap between Law Enforcement and the Black Community

**Committed Attendees:**

Black Police Association – President/Board Representatives/Members
Dallas NAACP President — Arthur Fleming
National Black Police Association, Executive Director – Malik Aziz
Friendship West Baptist Church, Senior Pastor – Dr. Frederick Haynes III
New Hope Baptist Church, Senior Pastor — Ronald Jones (Former Mayor of Garland, TX)
National Black United Front, President — Thomas Muhammad
Nation of Islam Dallas Mosque #48, President — Tyrone Muhammad
Next Generation Action Network, President — Damon Crenshaw

###

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY KLAYMAN | * | |
| | * | CIVIL ACTION NO. 3:16-cv-02010 |
| VERSUS | * | |
| | * | JUDGE SAM A. LINDSAY |
| PRESIDENT BARACK OBAMA, ET AL | * | |
| | * | |

************************************

**AFFIDAVIT OF SERVICE**

STATE OF LOUISIANA

PARISH OF ORLEANS

**BEFORE ME**, the undersigned notary duly qualified in and for the State and Parish above, personally came and appeared **JACOB K. WEIXLER,** who, after being duly sworn, did state as follows:

1. I am a person of the full age of majority and have personal knowledge of all statements made in this Affidavit.
2. I am an attorney at Schonekas, Evans, McGoey & McEachin, LLC in New Orleans, Louisiana.
3. I serve as counsel to Defendant DeRay Mckesson in the above-captioned matter.
4. On November 3, 2016, I sent to Plaintiffs' counsel via email and U.S. Mail a draft of the Motion for Sanctions and Memorandum in Support to which this affidavit is appended.

Sworn to and subscribed before me
this 23 day of November, 2016.

NOTARY PUBLIC
Ian L. Atkinson
Notary Public
Notary No. 91582
STATE OF LOUISIANA
MY COMMISSION IS FOR LIFE.

JACOB K. WEIXLER