IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| DEMETRICK PENNIE and LARRY KLAYMAN, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | |
| BARACK HUSSEIN OBAMA, ERIC HOLDER, LOUIS FARRAKHAN, NATION OF ISLAM, REVEREND AL SHARPTON, NATIONAL ACTION NETWORK, BLACK LIVES MATTER, RASHAD TURNER, OPAL TOMETI, PATRISSE CULLORS, ALICIA GARZA, DERAY MCKESSON, JOHNETTA ELZIE, NEW BLACK PANTHER PARTY, MALIK ZULU SHABAZZ, GEORGE SOROS, and HILLARY CLINTON, | § § § § § § § § § § § § § | Civil Action No. 3:16-cv-2010-L |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: the Individual Federal Defendants' Motion to Dismiss (Doc. 21), filed

September 19, 2016; The United States of America's Motion to Dismiss (Doc. 23), filed September

19, 2016; Motion to Dismiss by Deray McKesson (Doc. 32), filed September 28, 2016; Defendant

Reverend Al Sharpton and National Action Network's Alternative Motion to Dismiss Plaintiffs'

Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1)(2)(6) and 12(h)(3) (Doc. 40), filed

September 30, 2016; the Honorable Minister Farrakhan's Motion to Dismiss the Purported Amended

Complaint Pursuant to Federal Rule[s] of Civil Procedure 12(b)(1)(2)(3)(4)(5)(6) and 12(h)(3) (Doc.

41), filed September 30, 2016; Motion for Sanctions Against Plaintiffs and Plaintiffs' Counsel by

Defendant Deray McKesson (Doc. 74), filed November 25, 2016; Plaintiffs' Cross-Motion for Sanctions (Doc. 87), filed December 16, 2016; Motion to Dismiss of Defendant George Soros (Doc. 80), filed December 5, 2016; Motion to Dismiss of Defendant Malik Zulu Shabazz, Esq. (Doc. 90), filed December 19, 2016; Motion to Dismiss of Defendant Rashad Turner (Doc. 103), filed January 23, 2017; Defendants Opal Tometi and Patrisse Cullors' Motion to Dismiss (Doc. 112), filed February 7, 2017; and Defendant Hillary Rodham Clinton's Motion to Dismiss the Amended Complaint (Doc. 141), filed May 8, 2017.   Having considered the motions, responses, replies, pleadings, record, and applicable law, the court **grants** the Individual Federal Defendants' Motion to Dismiss (Doc. 21); **denies** the Motion for Sanctions Against Plaintiffs and Plaintiffs' Counsel by Defendant Deray McKesson (Doc. 74); **denies** Plaintiffs' Cross-Motion for Sanctions (Doc. 87); and **denies as moot** all remaining motions to dismiss (Docs. 23, 32, 40, 41, 80, 90, 103, 112, and 141).

## I.     Background Facts and Procedural History

On July 9, 2016, Larry Klayman ("Klayman") brought this purported class action lawsuit on behalf of himself and "law enforcement persons of all races and ethnicities, as well as relevant Jews, and Caucasians" against Defendants President Barack Hussein Obama ("President Obama"); former Attorney General Eric H. Holder, Jr. ("General Holder"); Minister Louis Farrakhan ("Minister Farrakhan"); Reverend Al Sharpton ("Reverend Sharpton"); Rashad Turner ("Turner"); Patrisse Cullors ("Cullors"); Alicia Garza ("Garza"); Deray McKesson ("McKesson"); and Opal Tometi ("Tometi").  Pl.'s Orig. Class Action Compl. ¶ 5 (Doc. 1).  On September 16, 2016, Klayman, along with Sergeant Demetrick Pennie ("Sergeant Pennie"), a police officer employed by the City of Dallas Police Department, filed an amended complaint in which they named as additional Defendants Nation of Islam; National Action Network ("NAN"); Black Lives Matter; Johnetta Elzie ("Elzie");

New Black Panther Party; Malik Zulu Shabazz ("Shabazz"); George Soros ("Soros"); and former Secretary of State Hillary Clinton ("Secretary Clinton") (collectively, "Defendants"). *See* Pls.' Am. Compl. (the "Amended Complaint") (Doc. 16).

Klayman is a former federal prosecutor and the "high profile" founder of Freedom Watch and Judicial Watch. Pls.' Am. Compl. ¶ 16. The mission of these entities is to "enforce the rule of law and fight against racism, public corruption, and to further civil rights and equality for all persons under the U.S. Constitution." *Id.* Plaintiffs assert that "Klayman has been highly visible and active in defending police, other law enforcement officials, Jews, Christians and Israel and opposing Defendants' efforts to stir up racial, ethnic and religious conflict to suit their agendas in every area of American life in court and in public." *Id.*

In the Amended Complaint, Plaintiffs purport to bring this lawsuit on behalf of themselves, and a proposed class that they define as including: "all police officers and other law enforcement persons of all races and ethnicities including but not limited to Jews, Christians and Caucasians who have been threatened and targeted and harmed by the Defendants' ignited race war, and who reside within this district and the domestic United States." *Id.* ¶ 5.

The gravamen of Plaintiffs' claims is that Defendants have made public statements that have incited criminal activity by others across the country, including riots, murders, and threats of death and bodily injury, as well as the Dallas Police Shooting in July 2016. Plaintiffs allege that Defendants participated in a conspiracy to incite "their supporters and others to engage in threats of [sic] and attacks to cause serious bodily injury or death upon police officers and other law enforcement persons of all races and ethnicities including but not limited to Jews, Christians and Caucasians." *Id.* ¶ 1. Plaintiffs allege that Defendants undertook these actions with the aim of

"incit[ing] a racial war in America." *Id.* ¶ 54.  Among other things, Plaintiffs allege that Defendants,

acting in concert, have: fomented a race war (¶ 16); encouraged disaffected minority groups to

ignore, disrespect, and assault law enforcement officials (¶ 27); incited violence by publicly stating

that law enforcement are disproportionately arresting and prosecuting minority groups (¶ 30); caused

an increase in crime rates by preventing law enforcement officials from doing their duties (¶ 31); sent

a "clear signal that it is acceptable and required to kill white people, especially white police officers

and other law enforcement[]" (¶ 42); and accused the legal system of a conspiracy to kill black men

(¶ 44).  Plaintiffs allege that:

> The inevitable, entirely foreseeable, and predictable result directly and proximately caused by the war on police and law enforcement incited by each and ever[y] Defendant[] came to a head on July 7, 2016[,] in Dallas, Texas. At around 9:00 p.m., on July 7, 2016, at a "Black Live Matters" protest, at least one sniper shot twelve (12) police officers that were on duty to keep the peace at the rally. ("Dallas Police Shooting").

*Id.* ¶ 17.

### A.      Allegations as to President Obama

With respect to President Obama, Plaintiffs allege that he "used his position of great authority

to ratify, endorse, embrace, and condone the violence against police officers and other law

enforcement persons of all races and ethnicities including but not limited to Jews, Christians and

Caucasians perpetrated by his co-Defendants[.]" *Id.* ¶ 169.  Plaintiffs allege that:

> when someone as influential as the President of the United States of America affirmatively acts to perpetrate, incite, condone, ratify and further propagate the violent and hateful dogmas guiding [Black Lives Matter, Nation of Islam, and New Black Panther Party], as well as the other Defendants, the predictable result is the explosion of violence against police officers and other law enforcement persons of all races and ethnicities including but not limited to Jews, Christians and Caucasians[.]

*Id.*  Plaintiffs further allege that "[r]evealing the knowing, willful, and intentional purpose of the Defendants' concerted actions, on October 30, 2008, then[-]candidate Defendant Obama roared to an excited crowd of his supporters: 'We are five days away from fundamentally transforming America.'" *Id.* ¶ 170.  Plaintiffs allege that by definition, "to fundamentally transform an entire society, requires replacing the old society with a new version of society." *Id.* ¶ 171.  Plaintiffs allege that to effect this, President Obama used a "divide and conquer" strategy, by furthering, in concert with the other Defendants, "a race war pitting blacks against whites, furthering the mission and credo of Muslims and Black Muslims such as Defendant Farrakhan and others against police officers and other law enforcement persons of all races and ethnicities including but not limited to Jews, Christians and Caucasians." *Id.*  Plaintiffs allege that President Obama "fueled [and] incited discord by stating in his frequent and persistent theme 'that there's a long history in the country of African Americans and Latinos being stopped by law enforcement disproportionately.'" *Id.* ¶ 174.  Plaintiffs allege that President Obama used "anti-police rhetoric" following various high profile shootings of African Americans and did not try to stop riots related to the shootings, stirring up racial tensions and hatred for police officers.  *Id.* ¶¶ 175-77.

According to Plaintiffs, President Obama has "conspired with all Defendants and others to incite violence, looting, arson, assault against law enforcement and helpless communities with the purpose of making a new 'fundamentally transformed America' appear preferable to the crime waves and chaos they themselves are creating." *Id.* ¶ 178.  Plaintiffs also allege that President Obama "has conspired with, encouraged, engaged in joint planning with, and developed strategies, plans, and courses of action with parties responsible for carrying out acts of deadly violence against police officers and other law enforcement persons of all races and ethnicities including but not limited to

**Memorandum Opinion and Order - Page 5**

Jews, Christians and Caucasians[,]" and has done so acting in concert with the other Defendants. *Id.* ¶ 179.

As one example of the alleged conspiracy with co-Defendants, Plaintiffs allege that Reverend Sharpton "has visited with [President] Obama seventy-three (73) times in the White House as of February 27, 2015." *Id.* ¶ 180. Plaintiffs allege that when Reverend Sharpton visited the White House in February 2015, the topic of the meeting, according to the White House, "was the presidential task force formed in response to violent clashes with police in Ferguson, Missouri, and New York sparked by the killings of Michael Brown and Eric Garner." *Id.*

As another example of the alleged conspiracy, Plaintiffs allege that President Obama has ties to the black nationalist movement in Chicago and that, for many years, he and Minister Farrakhan, who has endorsed him and called him the new "messiah," have been connected either directly or through intermediaries. *Id.* ¶¶ 181-82.

Plaintiffs also contend that President Obama conspired with Black Lives Matter, as evidenced by a White House meeting with Black Lives Matter after the Dallas Police Shooting, at which he stated, "[w]e're not at a point yet where communities of color feel confident that their police departments are serving them with dignity and respect and equality." *Id.* ¶ 185. Plaintiffs allege President Obama made this statement "to implicitly blame law enforcement officers for the Dallas Police Shooting, instead of holding the true culprits—his co-Defendants—responsible." *Id.*

Plaintiffs allege that President Obama's acts of inviting his co-Defendants to the White House "serve to legitimize, ratify and further the hateful and violent doctrines that these parties advocate and is a direct indication of [President] Obama's attempts to help perpetrate, incite,

condone, ratify and further propagate the racist actions" of his co-Defendants, "resulting in threats and severe bodily injury or death to law enforcement and others[.]"  *Id.* ¶ 186.[1]

### B.     Allegations as to General Holder

With respect to General Holder, Plaintiffs allege that he "used his position of authority and influence to help perpetrate, incite, condone, ratify and further propagate the hateful and violent message and actions perpetrated by co-Defendants [Nation of Islam, New Black Panther Party, and Black Lives Matter] by improperly targeting law enforcement officers for investigation." *Id.* ¶ 210. Plaintiffs allege that throughout "his time as Attorney General, Defendant Holder's Department of Justice ("DOJ") publicly targeted and blamed America of 'biased policing' and 'implicit bias' in law enforcement[,]" and that he "incited a civil war against police and law enforcement agents during his time as Attorney General." *Id.* ¶¶ 211-12.  Plaintiffs allege that General Holder and the DOJ spread "false propaganda" to "inaccurately convince blacks that they are being targeted by police and other law enforcement persons," and that without these lies "the violent uprising and civil war against police would not have occurred." *Id.* ¶ 216.  Finally, Plaintiffs allege that:

> As a result of Defendant Holder's actions and inactions, to help perpetrate, incite, condone, ratify and further propagate the hateful and violent dogmatic beliefs of co-Defendants, they have been allowed to spread and profligate [sic], and have caused explosions of violence against police officers and other law enforcement persons of all races and ethnicities including but not limited to Jews, Christians and Caucasians, including threats and severe bodily injury or death against Plaintiffs and those similarly situated.

*Id.* ¶ 220.

---

[1] In addition, Plaintiffs refer to statements by political correspondents and law enforcement officers expressing their views that President Obama was inciting a war on law enforcement. *See, e.g.,* Pls.' Am. Compl. ¶¶ 194-200.

### C.      Allegations as to Standing

Sergeant Pennie and Klayman do not allege they were the targets of any of the alleged violence against law enforcement before filing this lawsuit, but they contend that they have received threats as a result of filing this lawsuit. *Id.* ¶¶ 15-16. Plaintiffs allege that Sergeant Pennie has "been threatened with death and/or serious bodily harm by Defendants, acting alone and/or in concert." *Id.* ¶ 15. Plaintiffs allege that Klayman "received a call from Defendant New Black Panther Party and Black Lives Matter acting in concert with the other Defendants," and that certain threats of physical harm were made during the call. *Id.* ¶ 16. Plaintiff Klayman also asserts he was "present in the United States of America before and at the time that innocent police oficers" and others were "subjected to threats and actual violence." *Id.*

### D.      The Lawsuit

Plaintiffs, acting through Klayman as their counsel, assert the following claims against Defendants: (1) "Deprivation of Civil Rights: Aiding and Abetting Murder" in violation of 42 U.S.C. § 1983 ("Count One"); (2) "Conspiracy to Deprive Plaintiffs of Civil Rights: Right to Life and Liberty" in violation of 42 U.S.C. § 1985 ("Count Two"); (3) "Fifth Amendment Violation: Deprivation of Right to Life" in violation of "*Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*" ("Count Three"); (4) assault ("Count Four"); (5) intentional infliction of emotional distress ("Count Five"); and (6) "Terrorist Promotion of Gang Activity under Florida Law" ("Count Six"). Pls.' Am. Compl. ¶¶ 221-61. For relief, Plaintiffs request:

> that judgment be entered against Defendants, each and every one of them, jointly and severally, for compensatory and actual damages as a result of their demonstrable physical and emotional injury to Plaintiffs, punitive damages because of Defendants' callous and reckless indifference and malicious acts, and attorney[']s fees, costs, an award in excess of $500,000,000.00 or $1,500,000,000.00 in trebled damages where

appropriate, punitive damages, and such other relief the Court may deem just and proper.

*Id.* at 65 ("Prayer for Relief").

Of the seventeen Defendants named in this lawsuit, five have not filed motions to dismiss or otherwise appeared, namely, Defendants Garza, Elzie, Nation of Islam, New Black Panther Party, and Black Lives Matter.  The court has already dismissed without prejudice all claims against Defendants Garza and Elzie based on Plaintiffs' failure to effect service of process under Federal Rule of Civil Procedure 4(m).  *See* Order (Doc. 127).  For the reasons stated below, *see infra* Sec. III(C), the court similarly dismisses without prejudice all claims against Defendants Nation of Islam, New Black Panther Party, and Black Lives Matter pursuant to Rule 4(m) for failure to  effect service of process, properly, notwithstanding numerous extensions of time allowed by the court.

Of the twelve Defendants who have been served, all have filed motions to dismiss Plaintiffs' claims and this action for, among other reasons, lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, improper service of process, and failure to state claims upon which relief can be granted.  *See* Doc. Nos.  21, 23, 32, 40, 41, 80, 90, 103, 112, and 141.  Each motion has been fully briefed.  Plaintiffs, in response to the various motions to dismiss, have withdrawn Counts One and Two with respect to Defendants President Obama and General Holder (the "Individual Federal Defendants"), and Counts One, Two, and Three as against the remaining nonfederal Defendants.  The court treats all withdrawn claims as a voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i), as no answer or summary judgment motion has been filed, except that of Defendant Turner.  These counts as to Defendant Turner will be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), as he filed an answer; however, no objection has been filed to his dismissal.

**Memorandum Opinion and Order - Page 9**

For the reasons that follow, the court **concludes** that Count Three, as to the Individual Federal Defendants, should be dismissed because Plaintiffs lack standing.  Further, given that Plaintiffs have agreed to withdraw all federal claims (Counts One through Three) against the remaining ten Defendants, only state law claims remain and, in the absence of federal subject matter jurisdiction under either 28 U.S.C. §§ 1331 or 1332(a), the court **declines** to exercise supplemental jurisdiction over all state law claims and will dismiss them without prejudice.  Therefore, the court will **deny as moot** all remaining motions to dismiss.

## II.      Applicable Legal Standards

### A.      Federal Rule of Civil Procedure 12(b)(1) - Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties.  28 U.S.C. §§ 1331, 1332.  Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking.  *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).  A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting

jurisdiction. *Kokkonen*, 511 U.S. at 377 (citations omitted). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue. *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

### B.     Rule 4 - Service of Process

It is undisputed that "[b]efore a . . . federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350 (1999) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987)). Service of process in a federal action is governed generally by Rule 4 of the Federal Rules of Civil Procedure. When service is not made on a defendant within

90 days after filing of the complaint, the court may, after notice to the plaintiff, dismiss the action as to that defendant without prejudice, or, instruct the plaintiff to effect service within a specific time. Fed. R. Civ. P. 4(m).

The intent of the rules for serving process is to give sufficient notice to defendants of any actions filed against them. *See* 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1061 (4th ed. 2013) ("[Federal Rule 4] was designed to provide maximum freedom and flexibility in the procedures for giving all defendants . . . no matter where they might be located, notice of the commencement of the action and to eliminate unnecessary technicality in connection with service of process.").

## III.   Analysis of the Individual Federal Defendants' Motion to Dismiss

### A.   Standing

Plaintiffs assert six claims against the Individual Federal Defendants: (1) "Deprivation of Civil Rights: Aiding and Abetting Murder" in violation of 42 U.S.C. § 1983 (Count One); (2) "Conspiracy to Deprive Plaintiffs of Civil Rights: Right to Life and Liberty" in violation of 42 U.S.C. § 1985 (Count Two); (3) "Fifth Amendment Violation: Deprivation of Right to Life" in violation of "*Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*" (Count Three); (4) assault (Count Four); (5) intentional infliction of emotional distress (Count Five); and (6) "Terrorist Promotion of Gang Activity under Florida Law" (Count Six). Pls.' Am. Compl. ¶¶ 221-61**.**

On September 19, 2016, the Individual Federal Defendants filed a Motion to Dismiss the federal claims asserted in Counts One, Two, and Three.[2]  In support of dismissal, the Individual

---

[2] With respect to Counts Four through Six (the state law claims against the Individual Federal Defendants), the United States has filed a Westfall certification pursuant to 28 U.S.C. § 2679(d)(1), certifying that each of the Individual Federal Defendants was "acting within the scope of his office or employment" at all times relevant to this lawsuit, as well

Federal Defendants contend that Plaintiffs lack standing, that their claims are barred by absolute and qualified immunity, and that they have failed to state a plausible claim for relief.

As previously stated, Plaintiffs, in response to the Individual Federal Defendants' Motion to Dismiss, have agreed to withdraw Counts One and Two. *See* Pls.' Resp. 25. Accordingly, the court will **dismiss without prejudice** Counts One and Two and limit its analysis to the Individual Federal Defendants' arguments made in support of dismissing Count Three.

The threshold issue of subject matter jurisdiction must be resolved first. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

The jurisdiction of federal courts is defined and limited by Article III of the United States Constitution. *Flast v. Cohen*, 392 U.S. 83, 94 (1968). Article III, § 2 of the Constitution extends the "judicial Power" of the United States only to "Cases" or "Controversies." U.S. Const. art III, § 2. Under the "case-or-controversy" requirement, each plaintiff must establish he or she has standing to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

The "irreducible constitutional minimum" of standing has three elements: (1) the plaintiff must suffer an "injury in fact," meaning the injury must be "an invasion of a legally protected

---

as a notice substituting the United States as the sole federal defendant for purposes of Counts Four through Six. *See* Notice of Substitution (Doc. 20). The United States moves to dismiss Counts Four through Six arguing, among other things, that Plaintiffs lack standing, that the court lacks subject matter jurisdiction since Plaintiffs have failed to exhaust administrative remedies under the Federal Tort Claims Act ("FTCA"), and the United States has not waived its sovereign immunity from suit for the torts alleged in Counts Four through Six, as well as for failure to state a claim. Although Plaintiffs oppose the United States's motion, contending that they are not suing the Individual Federal Defendants in their official capacities, but only in their individual capacities, the court does not reach these arguments since, for the reasons stated below, the United States' Motion to Dismiss, as it only pertains to the state law claims, will be **denied as moot**. *See infra* Sec. III(D).

**Memorandum Opinion and Order - Page 13**

interest" and must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) causation, meaning the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court;" and (3) redressability, meaning that it must be likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). When a case is at the pleading stage, as here, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). "The triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998); *see also Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012) (same).

The Individual Federal Defendants argue that Plaintiffs have failed to meet any of the three requirements for Article III standing, and that, therefore, the Amended Complaint must be dismissed for lack of jurisdiction. In response, Plaintiffs argue:

> Defendants contend that Plaintiffs lack standing to bring this action. This contention is categorically false. As Plaintiffs pled, Defendants have acted in concert to create, in effect, a war on law enforcement officers and others through repeated calls to death and violence. Plaintiff Klayman is a member of the law enforcement community, as a former U.S. Department of Justice attorney, as well as a member of this Court. Plaintiff Pennie is a sergeant with the Dallas Police Department. Indeed, the Federal Defendants have personally threatened both Plaintiffs with death and/or serious bodily harm, directly or indirectly, as a result of their manufactured war on police. Am. Compl. at ¶¶ 16, 27.

Pls.' Resp. 5 (Doc. 56). The court will address each required element of standing in turn.

The Individual Federal Defendants argue that Plaintiffs have failed to articulate an injury in fact. The injury-in-fact test "requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 562-63. To have standing, "a plaintiff must have more than a general interest common to all members of the public." *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

According to the Amended Complaint, Sergeant Pennie and Klayman were not the target of any of the alleged violence against law enforcement before filing this lawsuit, but they have received threats as a result of filing this lawsuit. Pls.' Am. Compl. ¶¶ 15-16. Plaintiffs allege that Sergeant Pennie has "been threatened with death and/or serious bodily harm by Defendants, acting alone and/or in concert." *Id.* ¶ 15. Plaintiffs allege that Klayman "received a call from Defendant New Black Panther Party and Black Lives Matter acting in concert with the other Defendants," and that certain threats of physical harm were made during the call. *Id.* ¶ 16. Klayman also alleges he was "present in the United States of America before and at the time the innocent police officers" and others were "subjected to threats and actual violence." *Id.*

Sergeant Pennie fails to allege any facts supporting his conclusory allegation that he was threatened, including when he was threatened, how he was threatened, and by whom. Such conclusory allegations are insufficient to confer standing. *See Beal v. Midlothian Indep. Sch. Dist. 070908 of Ellis Cty.*, 2002 WL 1033085, at *3 (N.D. Tex. May 21, 2002) (dismissing for lack of standing because "[o]ther than one boilerplate, conclusory allegation . . . Plaintiffs do not set forth any specific factual allegations" that demonstrated an injury in fact); *Sartin v. EKF Diagnostics, Inc.*, 2016 WL 3598297, at *3 (E.D. La. July 5, 2016) ("Absent supporting factual allegations, [plaintiff's] bare assurance that an unspecified injury exists is insufficient to establish Article III standing."). With respect to Klayman, even assuming these threats were made, as the court must in addressing

**Memorandum Opinion and Order - Page 15**

a motion to dismiss, nothing in the Amended Complaint suggests that Plaintiff Klayman was threatened by the Individual Federal Defendants.  Further, Klayman's allegation that he has standing because he was an individual present in the United States when violence occurred demonstrates that he has no "concrete and particularized" injury, but instead only has a "general interest common to all members of the public."  *Lance*, 549 U.S. at 439.

In opposition to the Individual Federal Defendants' argument that the pleadings are insufficient to allege an  injury in fact, Plaintiffs contend that they have standing because the injury alleged need not necessarily be one that the Plaintiff has already suffered, and can be satisfied by a future injury that is likely to occur.  In support, Plaintiffs cite a series of cases for the proposition that a threat of future harm can be an injury in fact, and contend that courts can use probabilistic evidence to establish the concreteness of the injury.  *See* Pls.' Resp. 6-8 (Doc. 56) (citing *Massachusetts v. EPA*, 549 U.S. 497 (2007), and *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015)).

The court agrees with the Individual Federal Defendants that these cases are inapposite, as each case addresses standing to challenge, at the pre-enforcement stage, the implementation of a statute, regulation, or agency action.   In each of those cases, there was certainty that the circumstances that would cause the alleged future injury, namely, the implementation of the statute, regulation, or agency action, would occur.  By contrast, in this case the "future injury" alleged is hypothetical and contingent on the possible actions of some unnamed, independent actor in the future.   The court determines that such "mere conjecture" about "possible . . . actions" is legally insufficient to confer standing.  *Clapper v. Amnesty Int'l USA,*, __ U.S. __, 133 S. Ct. 1138, 1154 (2013).

For these reasons, the court **concludes** that Plaintiffs have failed to allege an injury in fact. Accordingly, they lack Article III standing to bring Count Three against the Individual Federal Defendants.  The court now addresses the issue of causation and traceability, even though it has ruled that Plaintiffs fail to establish the first element for Article III standing.

The Individual Federal Defendants further contend that, even assuming, *arguendo*, Plaintiffs have sufficiently alleged a cognizable injury sufficient to establish an injury in fact, the Amended Complaint should still be dismissed for lack of standing because Plaintiffs fail to meet the causation requirement.

To have Article III standing, Plaintiffs must allege a "causal connection between the [alleged] injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560.  Plaintiffs offer only conclusory allegations that the alleged threats were a result of Defendants "acting in concert."  *See* Pls.' Am. Complaint ¶ 16. Such boilerplate allegations of causation are inadequate to demonstrate causation.  *See, e.g., Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 857 (S.D. Tex. 2015) (dismissing claim for lack of standing when "the allegation is conclusory and fails to account for the sufficient break in causation caused by . . . third parties.").  Further, Plaintiffs fail to allege how the Individual Federal Defendants caused Plaintiffs' injuries by making statements or acts directed toward others.  Instead, Plaintiffs allege intervening causes, namely, acts of third parties, separating their alleged injuries from the complained-of conduct by the Individual Federal Defendants.  Unforeseen intervening acts generally break the chain of causation.  *Garza v. United States*, 809 F.2d 1170, 1173 (5th Cir. 1987).

For these reasons, the court **concludes** that Plaintiffs, in addition to their failure to allege an injury in fact, have failed to allege causation.  Accordingly, they lack Article III standing to bring

their claims against the Individual Federal Defendants.  Although the court has concluded that Plaintiffs have not satisfied the first two elements for Article III standing, it will address why Plaintiffs have not satisfied the third element for Article III standing.

The Individual Federal Defendants contend that even if Plaintiffs have sufficiently alleged an injury in fact and causation, the Amended Complaint should still be dismissed for lack of standing because Plaintiffs fail to allege "how a favorable court decision would redress any alleged injury [they] suffered due to the policy statements and procedural position of the Individual Federal Defendants, which the Court would be constrained from enjoining under the First Amendment." Ind. Fed. Defs.' Mot. to Dismiss 14 (Doc. 22).

First, as the court has concluded that Plaintiffs have failed to adequately allege they suffered an injury in fact, there is no injury to be redressed.  *See Wyble v. Gulf S. Pipeline Co., L.P.*, 308 F. Supp. 2d 733, 742 (E.D. Tex. 2004) ("It necessarily follows that if a Plaintiff cannot establish that he has been injured . . . he cannot seek redress for that violation.").  Even if Plaintiffs had suffered an injury of the type they describe in the Amended Complaint, the way to redress that injury is through either monetary or injunctive relief against the parties responsible for the threats.  Plaintiffs fail to allege how the Individual Federal Defendants caused Plaintiffs' injury by statements or acts directed towards others. In sum, Plaintiffs have not sufficiently alleged how a claim against the Individual Federal Defendants would enable the court to redress their alleged injuries.  *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976) (Redressability cannot be shown when "speculative inferences are necessary to connect [the] injury to the challenged actions of [defendants].").

For these reasons, the court **concludes** that Plaintiffs, in addition to their failure to adequately allege an injury in fact and causation, have failed to adequately allege redressability and, therefore, lack Article III standing to bring their claims against the Individual Federal Defendants. Accordingly, the Individual Federal Defendants' Motion to Dismiss Count Three for lack of standing will be **granted**, and Count Three will be **dismissed without prejudice** pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

### B.      The Individual Federal Defendants' Absolute and Qualified Immunity Defenses

In the alternative to dismissal for lack of standing, the Individual Federal Defendants contend that Count III should be dismissed because Plaintiffs have failed to overcome President Obama's absolute and/or qualified immunity and General Holder's qualified immunity to the claims asserted against them in Count Three.   To reiterate, Plaintiffs allege in Count Three that the Individual Federal Defendants' incitement of imminent violence through public pronouncements violated Plaintiffs' rights under the Fifth Amendment Due Process Clause, and that they should be allowed a remedy under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, (1971).   As the court has ruled that it lacks subject matter jurisdiction to entertain Count Three of Plaintiffs' Amended Complaint, it cannot address the Individual Federal Defendants' absolute and qualified immunity defenses.

### C.      Dismissal Under Rule 4(m) - Nation of Islam, Black Lives Matter, New Black Panther Party

As noted at the outset of this decision, Defendants Nation of Islam, Black Lives Matter, and New Back Panther Party are the only Defendants who have not filed a motion to dismiss and have

not had an attorney appear on their behalf in this case.[3]   It is possible that these Defendants' failure

to participate in this case to date is attributable to their lack of knowledge of the lawsuit, as a review

of the record shows that  none of the three Defendants appears to have been properly served with the

Summons in this action after it was initiated.  *See* Affidavit of Process Server (Doc. 134-3) (Nation

of Islam); Affidavit of Process Server (Doc. 134-4) (Black Lives Matter); Affidavit of Process Server

(Doc. 134-6) (New Black Panther Party).

Pursuant to Federal Rule of Civil Procedure 4(c)(1), "[a] summons shall be served together

with a copy of the complaint."  Rule 4(h) of the Federal Rules of Civil Procedure governs service

of process on a corporation, partnership or other unincorporated association and provides, in relevant

part:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>
> (1) in a judicial district of the United States:
>
> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h).  The permissible methods of service under Federal Rule of Civil Procedure 4(e)

for serving an individual are limited to: (1) service according to the law of the state in which the

district court is located or where service is made; (2) personal delivery of the summons and

complaint upon the individual; (3) "leaving copies thereof at the individual's dwelling house or usual

---

[3] On April 5, 2017, the court dismissed without prejudice all claims against Defendants Elzie and Garza pursuant to Federal Rule of Civil Procedure 4(m).  *See* Order (Doc. 127).

**Memorandum Opinion and Order - Page 20**

place of abode with some person of suitable age and discretion then residing therein"; or (4) delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process.  *See* Fed. R. Civ. P. 4(e)(1),(2).  When service is not made on a defendant within 90 days after filing of the complaint, the court may, after notice to the plaintiff, dismiss the action as to that defendant without prejudice, or, instruct the plaintiff to effect service within a specific time.  Fed. R. Civ. P. 4(m).

On December 16, 2016, the court, noting that the clerk's docket sheet reflected that numerous defendants had not yet been served with process, directed Plaintiffs "to effect service on Defendants Black Lives Matter, Johnetta Elzie, Nation of Islam, Opal Tometi, Patrisse Cullors, Alicia Garza, Hillary Clinton, and the New Black Panther[] Party by January 17, 2017, by 5:00 p.m., or show good cause in writing by January 17, 2017, by 5:00 p.m., for the failure or inability to effect service on these Defendants."  Order at 5 (Doc. 88) (original emphasis).  The court further stated that: "*Failure of Plaintiff to effect service or show good cause in accordance with this order will result in dismissal of this action without prejudice, pursuant to Rule 4(m), as to Defendants Black Lives Matter, Johnetta Elzie, Nation of Islam, Opal Tometi, Patrisse Cullors, Alicia Garza, Hillary Clinton, and the New Black Panther[] Party.*"  *See id.* (original emphasis).

On January 17, 2017, Plaintiffs filed their "Response to the Court's Order of December 16, 2016, and Motion for Extension of Time to Serve Remaining Defendants." (Doc. 99).  Plaintiffs attached proof that summons had been served on Defendants Tometi and Cullors but not on Defendants Black Lives Matter, Elzie, Nation of Islam, Garza, Secretary Clinton, and the New Black Panther Party.  Instead, Plaintiffs sought an additional thirty days to serve these Defendants, explaining that, although they had requested that Same Day Process Service effect service on

October 26, 2016, because of a miscommunication, Plaintiffs discovered on January 17, 2017, that service on the remaining Defendants had not yet been effected.  *See* Affidavit of Oliver Peer (Doc. 99 at Ex. B).  Because Plaintiffs mistakenly docketed their motion as a response, the court did not have the opportunity to consider the motion in a timely fashion.

On February 16, 2017, Plaintiffs filed their "Supplemental Response to the Court's Order of December 17, 2016, and Request for Status Conference." (Doc. 118).  Plaintiffs asserted that summons has been served on Defendants Secretary Clinton and Nation of Islam, but that they had not been able to serve summons on Defendants Black Lives Matter, Elzie, Garza, and the New Black Panther Party.  On February 17, 2017, the court *sua sponte* allowed Plaintiffs a third, and final, extension of time to effect service on Defendants Black Lives Matter, Elzie, Garza, and the New Black Panther Party; directed Plaintiffs to effect service on these four Defendants by Friday March 10, 2017, by 5:00 p.m.; and directed them to document proof of service on the docket sheet by this time.  *See* Order (Doc. 119).  The court stated that, absent proof of service by this time, and recognizing that Plaintiffs have had ample time to effect service (including three extensions of time allowed by the undersigned), the court would "*dismiss this action without prejudice, pursuant to Rule 4(m), as to Defendants Black Lives Matter, Johnetta Elzie, Alicia Garza, and the New Black Panther[] Party.*"  *Id.* at 3 (original emphasis).

On April 5, 2017, the court dismissed without prejudice all claims against Defendants Elzie and Garza pursuant to Rule 4(m), as the clerk's docket sheet did not reflect that they had been served, and Plaintiffs did not request an extension of the court's deadline of March 10, 2017, or attempt to show good cause for failure to effect service as ordered by the court.  *See* Order (Doc. 127).  Questioning *sua sponte* the method of purported service on Defendants Secretary Clinton,

Nation of Islam, Black Lives Matter, and the New Black Panther Party, the court directed Plaintiffs to file a brief describing how the service purportedly effected on each of these Defendants complied with Rule 4 of the Federal Rules of Civil Procedure.  *See id.*

Plaintiffs responded to the court's directive on April 14, 2017, stating that "Defendants Hillary Clinton, Nation of Islam, New Black Panther Party, and Black Lives Matter were all properly served under either the express provisions of Fed. R. Civ. P. 4, or under state law applicable where the district court is located (Texas) or where services is made (District of Columbia, Illinois, Georgia, [and] California)." Pls.' Resp. 2 (Doc. 134).  With respect to Defendant Secretary Clinton, Mr. David E. Kendall, Esq., as her counsel, agreed to accept service on her behalf on April 10, 2017. *See* Doc. 136.  With respect to the Nation of Islam, New Black Panther Party, and Black Lives Matter, however, notwithstanding Plaintiffs' assertion that these three Defendants were properly served, a review of the affidavits filed by the process servers shows that this is not the case. *See* Affidavit of Process Server (Doc. 134-3) (Nation of Islam); Affidavit of Process Server (Doc. 134-4) (Black Lives Matter); Affidavit of Process Server (Doc. 134-6) (New Black Panther Party).

*1.  Nation of Islam*

As already noted, in a December 16, 2016 Order, the court allowed Plaintiffs a thirty-day extension of time until January 17, 2017, at 5:00 p.m., to serve the Nation of Islam, stating that failure to effect service or show good cause in accordance with the court's order would result in dismissal of this action without prejudice, pursuant to Rule 4(m).  *See* Order (Doc. 88).  On January 17, 2017, Plaintiffs filed their "Response to the Court's Order of December 16, 2016, and Motion for Extension of Time to Serve Remaining Defendants" (Doc. 99), explaining that, although they had requested that Same Day Process Service effect service on October 26, 2016, because of a

miscommunication, Plaintiffs discovered on January 17, 2017, that service on the remaining Defendants had not yet been effected.  *See* Affidavit of Oliver Peer (Doc. 99 at Ex. B).

The Affidavit of Process Server filed by Plaintiffs calls into question both their diligence in effecting service and the veracity of their explanation for failing to serve timely the Nation of Islam. The Affidavit of Process Server states that "[l]egal documents [were] received by Same Day Process Service, Inc. on **January 17, 2017 at 7:51 p.m. to be served on Nation of Islam** at 7351 South Stony Island Ave., Chicago, IL 60649."  Aff. of Process Server (Doc. 134-3) (emphasis added). Thus, it is clear that Plaintiffs did not even provide the process server with the summons and complaint until **after** the court's deadline for service, December 17, 2016, at 5:00 p.m., had expired. On this basis alone, the court concludes Plaintiffs' January 17, 2017 request for an extension of time to serve the Nation of Islam was not made in good faith, and that Plaintiffs failed to exercise diligence in effecting service, warranting dismissal without prejudice of all claims against the Nation of Islam under Rule 4(m).

Alternatively, even if the court considers the Affidavit of the Process Server, the court concludes that service on the Nation of Islam was improper under Rule 4.  Specifically, the Affidavit of the Process Server states that on January 18, 2017, at 1:23 p.m., the Nation of Islam was served by "delivering a conformed copy of the [Summons and Amended Complaint] to John Doe as Minister of Nation of Islam at 7351 South Stony Island Ave., Chicago, IL 60649."  *Id.* According to the Affidavit:

> Process server spoke with a minister at the service address who would not accept the legal documents.  The man countered that the documents needed to be addressed to a particular business or individual.  Server drop-served the documents. The unidentified minister proceeded to follow process server to the parking lot where

> the service documents were then placed on the server's vehicle.  Server removed
> them, leaving the documents in the parking lot before departing.

*Id.*  Plaintiffs contend that service on John Doe was effective service on Defendant Nation of Islam under Illinois law, specifically section 2–204 of the Illinois Code of Civil Procedure.  The court disagrees.

Pursuant to section 2–204 of the Illinois Code of Civil Procedure, service upon a private corporation is obtained: "(1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law."  735 Ill. Comp. St. 5/2–204 (Westlaw 2017).  First, Plaintiffs have not even alleged that the Nation of Islam is a corporation, and such failure renders section 2-204 of the Illinois Code of Civil Procedure inapplicable. It is not incumbent upon the court to engage in guesswork or independent research as to the status of the Nation of Islam.  Second, nothing before the court leads it to conclude that John Doe, as an unidentified minister, is a registered agent or officer of the Nation of Islam. Therefore, in order for service on the Nation of Islam to have been proper under the statute, the minister would have to be an agent of the Nation of Islam for purposes of accepting service. Under Illinois law, for service of process on a corporation to be effectively made upon an agent of a corporate defendant, such agent must have actual authority to accept service on behalf of the corporation.  *Dei v. Tumara Food Mart, Inc.*, 941 N.E.2d 920, 925 (2010) (holding that service of process on an employee who was neither a registered agent nor an officer of the corporation was not proper service on the corporation); *Slates v. Int'l House of Pancakes, Inc.,* 413 N.E.2d 457, 466 (1980) (holding that service on the employee of an agent is inadequate in Illinois, when the employee has not been designated as an agent to receive process).  *See also Cleeland v. Gilbert,* 774 N.E.2d

821, 823 (2002) (holding that service on insurance company's claims analyst is proper service on the company since the analyst was a responsible agent of the corporation); *Knapp v. Bulun,* 911 N.E.2d 541, 552-53 (2009) (holding that service on a paralegal who worked for a corporate defendant's registered agent did not constitute proper service on the corporation since she was not designated as an agent to receive process).   Here, nothing before the court establishes, or even intimates, that the unidentified minister was an agent for service of process on the Nation of Islam. Plaintiffs rely on *Megan v. L.B. Foster Co.,* 275 N.E.2d 426 (1971), to support their argument that service was proper in this case. The court finds that Plaintiffs' reliance on *Megan* is misplaced.   In *Megan,* following an automobile accident, the plaintiff filed suit in small claims court, and process was served upon a receptionist at the defendant's company. The corporation failed to appear and was subsequently defaulted, and a default judgment was entered. The defendant corporation's motion to vacate the default judgment was denied. On appeal, the Second District reversed the trial court and found that "service upon an intelligent clerk of a company who acts as a receptionist and who understood the purport of the service of summons was sufficient" to comply with the predecessor of section 2–204 of the Code.  *Megan,* 275 N.E.2d at 427-28.

Unlike the receptionist in *Megan*, nothing in the record leads the court to conclude that John Doe understood what it meant to be an agent of the Nation of Islam for purposes of accepting legal process.  Further, John Doe's statement to the process server that he was not the addressee and his act of returning the papers to the process server and not opening them (*see* Doc. 134-3) can just as easily be understood as evidence that he did not understand their import.  Finally, the papers were ultimately left by the process server unopened in the parking lot, rather than in the hands of an agent or officer.  Under these circumstances, Plaintiffs have not met their burden of showing "John Doe"

was a registered agent, officer, or an agent of the Nation of Islam for purposes of receiving service of process.

Further, Plaintiffs have failed to show that they complied with  section 2–202 of the Illinois Code of Civil Procedure, which states, in pertinent part, as follows:

> (a) Process shall be served by a sheriff, or if the sheriff is disqualified, by a coroner of some county of the State. . . .  The court may, in its discretion upon motion, order service to be made by a private person over 18 years of age and not a party to the action.  It is not necessary that service be made by a sheriff or coroner of the county in which service is made.  If served or sought to be served by a sheriff or coroner, he or she shall endorse his or her return thereon, and if by a private person the return shall be by affidavit.

> (a–5) Upon motion and in its discretion, the court may appoint as a special process server a [certified] private detective agency. . . .

735 Ill. Comp. St. 5/2–202 (Westlaw 2017).  In this case, the Affidavit of Process Server shows that service was not made by the sheriff or coroner, but by a private process server working for Same Day Process Service, Inc. (Doc. 134-3).  Further, the record does not reflect a motion for appointment of a special process server, and there is nothing before this court to show that any of the other exceptions set forth in section 2-202(b)-(f) of the Illinois Code of Civil Procedure apply such that service was made by an authorized process server in this case.  For these reasons, the court **concludes** that service on Defendant Nation of Islam was improper under Rule 4 of the Federal Rules of Civil Procedure.[4]

---

[4] In addition to authorizing service of process in accordance with the law of the state where service is made, Federal Rule of Civil Procedure 4 allows for service in accordance with the law of the state where the district court sits, in this case, Texas. *See* Fed. R. Civ. P. 4(e)(1) and 4(h)(1).  Plaintiffs fail to provide the court with any argument or evidence that service on Nation of Islam, Black Lives Matter, or New Black Panther Party complied with Texas law or with any other method of service authorized under Rule 4.  Thus, the court need not reach this issue.  Nevertheless, having considered the rules governing service of process under Texas law, the court concludes that service was not properly effected on these Defendants under Texas law or any other permissible method.  *See* Vernon's Ann. Tex. Rules Civ. Proc., Rule 103; Fed. R. Civ. P. 4(e)(1)(2) and (h)(1).

**Memorandum Opinion and Order - Page 27**

2.     *Black Lives Matter*

The court provided similar extensions of time for Plaintiffs to effect service on Defendant

Black Lives Matter.  The Affidavit of Process Server submitted by Plaintiffs shows that on February

22, 2017, Same Day Process Serverice attempted to serve Black Lives Matter by delivering a

conformed copy of the Summons and Amended Complaint to "Rasheed Mohammad as Postal Clerk

at UPS Store at 19197 Golden Valley Rd., #313, Canyon County, CA 91387."  (Doc. 134-4).

Plaintiffs contend that service on Black Lives Matter was effective service under California law since

"Defendant BLM used the UPS Store address to register as a 501(c)(3) non-profit organization."

Pls.' Resp. 5.  Plaintiffs have provided the court with informational documents concerning "Black

Lives Matter Foundation," a 501C3 Nonprofit Organization, listing as an address 19197 Golden

Valley Rd., #313, Canyon County, CA 91387.  *See* Aff. of Process Server (Doc. 134-5).  Plaintiffs

in this action have sued "Black Lives Matter," and not "Black Lives Matter Foundation."  Thus,

service on Black Lives Matter Foundation, even assuming it complies with California law, does not

constitute service on Defendant Black Lives Matter.  In addition, Plaintiffs have not provided the

court with any allegations or argument to support the proposition that Black Lives Matter is even a

jural entity capable of suing and being sued.  For these reasons, the court **concludes** that service on

Defendant Black Lives Matter was improper under Rule 4 of the Federal Rules of Civil Procedure.

3.     *New Black Panther Party*

With respect to Defendant New Black Panther Party, the court extended the deadline for

service of process twice, and ultimately stated that absent proof of service by March 10, 2017,  the

court would dismiss this action as to the New Black Panther Party.  Order at 3 (Doc. 119).  The

Affidavit of Process Server submitted by Plaintiffs shows that Same Day Process Service attempted

to effect service on New Black Panther Party on March 15, 2017.  *See* Aff. of Process Server (Doc. 134-6).  As Plaintiffs did not even attempt to effect service until five days after the March 10, 2017 deadline, and have failed to provide any explanation for their lack of diligence, the court **concludes** that service was untimely.

Even were the court to allow Plaintiffs to effect service after the March 10, 2017 deadline and consider the Affidavit of the Process Server purporting to serve Defendant New Black Panther Party on March 15, 2017, the court further **concludes** that service was defective.  Specifically, the Affidavit of Process Server states that Defendant New Black Panther Party was served by serving the "Georgia Secretary of State," as authorized agent of New Black Panther Party.  *See* Aff. of Process Server (Doc. 134-6).  Plaintiffs argue that service on the Georgia Secretary of State is proper service on the New Black Panther Party under Georgia Code Annotated § 9-11-4(e)(1), which provides, " . . . the Secretary of State shall be an agent of such corporation upon who any process, notice, or demand may be served."  Plaintiffs, however, have failed to even allege that the New Black Panther Party is a corporate entity, let alone that it is incorporated in Georgia.  For these reasons, the court **concludes** that service on Defendant New Black Panther Party was improper under Rule 4 of the Federal Rules of Civil Procedure.

The next question is whether to further extend the time to accomplish service on Defendants Nation of Islam, Black Lives Matter, and New Black Panther Party.  Rule 4(m) allows the court discretion to extend the time for service of the complaint after the initial 90-day period has expired. *See* Fed. R. Civ. P. 4(m).  In this case, however, the court has already permitted numerous extensions of the deadline for service.  Further, Plaintiffs have failed to request an additional extension, choosing instead to argue to the court that service was proper.  In light of the foregoing, the court

declines to *sua sponte* further extend the time for service.  Accordingly, as service was not proper, the court lacks personal jurisdiction over these Defendants and **dismisses without prejudice** all claims against Defendants Nation of Islam, Black Lives Matter, and New Black Panther Party pursuant to Federal Rule of Civil Procedure 4(m).

### D.    The Remaining Defendants' Motions to Dismiss

The court now turns to the motions to dismiss filed by the remaining Defendants, namely, McKesson, Reverend Sharpton, NAN, Minister Farrakhan, Soros, Shabazz, Turner, Tometi, Cullors, and Secretary Clinton (hereinafter, the "Remaining Defendants").   Each of the Remaining Defendants has moved to dismiss the federal law claims (Counts One through Three) and state law claims (Counts Four through Six) asserted against them in Plaintiffs' Amended Complaint.

In response to the respective motions to dismiss filed by the Remaining Defendants, Plaintiffs have agreed to withdraw the federal claims set forth in Counts One through Three.  *See* Doc. 57 at 4 n.1 (withdrawing federal claims against Defendant McKesson); Doc. 59 at 5 n.2 (withdrawing federal claims against Defendant Minister Farrakhan); Doc. 60 at 4 n.1 (withdrawing federal claims against Defendants Reverend Sharpton and National Action Network); Doc. 100 at 22 (withdrawing federal claims against Defendant Soros); Doc. 108 at 16 (withdrawing federal claims against Defendant Shabazz ); Doc. 117 at 4 n.2  (withdrawing federal claims against Defendant Turner); Doc. 121 at 20 (withdrawing federal claims against Defendants Tometi and Cullors); and Doc. 144 at 24 (withdrawing federal claims against Defendant Secretary Clinton).  Pursuant to Plaintiffs' decision to withdraw Counts One, Two, and Three against the Remaining Defendants, the court will dismiss these claims without prejudice.

**Memorandum Opinion and Order - Page 30**

In light of Plaintiffs' decision to withdraw their federal claims against the Remaining Defendants, and as all federal claims against the Individual Federal Defendants have been dismissed, only state law claims remain, namely, Count Four (assault); Count Five (intentional infliction of emotional distress), and Count Six ("Terrorist Promotion of Gang Activity Under Florida Law"). Absent any remaining federal law claims, subject matter jurisdiction under 28 U.S.C. § 1331 is lacking, and the court must consider the basis, if any, for its continued authority to exercise subject matter jurisdiction in this case. *See Ruhrgas AG*, 526 U.S. at 583 ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal*, 408 F.3d at 182 n.5 (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted).

In the Amended Complaint, Plaintiffs allege this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1605. Pls.' Am. Compl. ¶ 7. Section 1605, which provides certain exceptions to the jurisdictional immunity of foreign states, is plainly not applicable here, as no Defendant is a foreign state. As already stated, given the court's dismissal of Counts One, Two, and Three, the sole federal claims, federal question jurisdiction is lacking under Section 1331. Accordingly, federal subject matter jurisdiction over the remaining state law claims is only proper if there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, *see* 28 U.S.C. § 1332(a), or pursuant to the court's supplemental jurisdiction under 28 U.S.C. § 1367. The court first addresses whether it has subject matter jurisdiction under 28 U.S.C. § 1332(a).

1.      *Diversity Jurisdiction - 28 U.S.C. § 1332(a)(2)*

In addition to asserting subject matter jurisdiction under 28 U.S.C. § 1331, Plaintiffs assert that the court has subject matter jurisdiction "over this action based on diversity of citizenship

pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between the Plaintiff and the Defendants." Pls.' Am. Compl. ¶ 8.

Diversity of citizenship exists between the parties only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citation omitted). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty*, 841 F.2d at 1259 (citing *Illinois Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 n.2 (5th Cir. 1983)). Failure to allege adequately the basis of diversity mandates remand or dismissal of the action. *See Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991).

A natural person is considered a citizen of the state where that person is domiciled, that is, where the person has a fixed residence with the intent to remain there indefinitely. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985). "'Citizenship' and 'residence' are not synonymous." *Parker v. Overman*, 59 U.S. 137, 141 (1855). "For diversity purposes, citizenship means domicile; mere residence in [a] [s]tate is not sufficient." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007) (citation and quotation marks omitted). "Domicile requires residence in [a] state and an intent to remain in the state." *Id.* at 798 (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)).

A partnership or unincorporated association's citizenship is determined by the citizenship of each of its partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). The citizenship of

a limited liability company "is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (citations omitted).   A corporation is a "citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

Plaintiffs allege that Klayman is a citizen of Florida.  Pls.' Am. Compl. ¶16.  Plaintiffs make no allegations regarding the citizenship of Pennie.

With respect to Defendants, Plaintiffs make the following allegations pertaining to citizenship:

9.      *On information and belief*, the citizenship of the Defendants is:

a.      Louis Farrakhan, Illinois
b.      Nation of Islam, Illinois
c.      Al Sharpton, Harlem, New York
d.      National Action Network, Harlem, New York
e.      Black Lives Matter, Nationwide
f.      Mr. Rashad Turner, St. Paul, Minnesota
g.      Ms. Opal Tometi, State of New York
h.      Ms. Patrisse Cullors, Los Angeles, California
i.      Ms. Alicia Garza, San Francisco, California
j.      Ms. Johnetta Elzie, Chicago, Illinois
k.      Mr. DeRay McKesson, Baltimore, Maryland
l.      Mr. Malik Zulu Shabazz, Washington D.C.
m.      New Black Panther Party, Baltimore, Maryland
n.      Mr. George Soros, Katonah, New York
o.      Mr. Barack Obama, Illinois
p.      Mr. Eric Holder, Washington D.C.
q.      Ms. Hillary Clinton, New York

*Id.* ¶ 9 (emphasis added).

First, absent any allegations pertaining to Plaintiff Pennie's citizenship, Plaintiffs have failed to allege complete diversity of citizenship, a requirement for subject matter jurisdiction under 28 U.S.C. § 1332(a).  *See Corfield*, 355 F.3d at 857.  Without allegations of Pennie's citizenship, the

**Memorandum Opinion and Order - Page 33**

court cannot determine whether any Plaintiff shares the same citizenship as any Defendant.  For this reason alone, the court lacks jurisdiction based on diversity of citizenship.

Second, Plaintiffs' allegations pertaining to the citizenship of each Defendant are all made "[o]n information and belief," which is inadequate "since citizenship must be *distinctly* and *affirmatively* alleged."  *See Getty Oil*, 841 F.2d at 1259 (holding that allegation that defendant was *not* a citizen of particular states did not establish citizenship for diversity purposes, "since citizenship must be *distinctly* and *affirmatively* alleged.") (original emphasis) (internal quotation marks and citations omitted); *see also Illinois Cent. Gulf R.R. Co.*, 706 F.2d at 636 & n.2 (holding that the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference); *Philadelphia Indem. Ins. Co. v. Episcopal Diocese of Ft. Worth*, 2011 WL 3510848, at *2 (N.D. Tex. Aug. 10, 2011) (Fitzwater, C.J.) (citing *Getty Oil*, 841 F.2d at 1259) ("It is improper to allege diversity of citizenship without distinctly and affirmatively alleging the citizenship of each party.").

Third, with respect to Defendants Reverend Sharpton, Turner, Cullors, Garza, Elzie, McKesson, and Soros, Plaintiffs allege they are citizens of particular cities.  As already noted, a natural person is considered a citizen of the *state* where that person is domiciled, that is, where the person has a fixed residence with the intent to remain there indefinitely.  *See Freeman*, 754 F.2d at 555-56. Whether a person is a citizen of a particular city is quite beside the point and does nothing to establish diversity.

Prior to filing their Amended Complaint, Plaintiffs had the ability to seek an extension of time to obtain necessary information or request jurisdictional discovery such that allegations of citizenship did not need to be made "on information and belief."  Indeed, the Original Complaint

(Doc. 1), filed July 9, 2016, contains the same inadequate jurisdictional allegations, made "[o]n information and belief," pertaining to each Defendant's citizenship as the Amended Complaint. *Compare* Compl. ¶ 9 (Doc. 1) *with* Pls.' Am. Compl. ¶ 9 (Doc. 16).  When a plaintiff is represented by counsel, as in this case, the court should not have to educate counsel and underscore the significance of adequately pleading diversity of citizenship.  Moreover, Plaintiffs have already had an opportunity to amend the complaint and do not request leave to further amend.  As such, the court must assume that Plaintiffs have pleaded their best case and that allowing further amendment would be futile.  In any event, allowing amendment would unnecessarily delay resolution of this action, and Plaintiffs have presented no justifiable reason for the court to further delay its rulings in this action.

"Federal courts are courts of limited jurisdiction. [A court] must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery*, 243 F.3d at 916.  Because the court must presume this suit lies outside its jurisdiction, and Plaintiffs have failed to plead and set forth distinctly and affirmatively the basis for which complete diversity of citizenship exists between the parties, they have not satisfied their burden that the court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a).  Accordingly, absent federal question or diversity jurisdiction, the court lacks subject matter jurisdiction.

## 2.    *Supplemental Jurisdiction - 28 U.S.C. § 1367*

It is undisputed that the remaining claims in this lawsuit are state law claims.  Pursuant to 28 U.S.C. § 1367, the court has supplemental jurisdiction over Plaintiffs' remaining state law

claims.[5]  Because the court has dismissed the federal claims over which it had original jurisdiction, the court must decide whether to retain jurisdiction over the remaining state law claims. Supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's right." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  A federal court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims after all federal law claims have been dismissed.  *See* 28 U.S.C. § 1367(c)(3); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).  Section 1367(c) provides that a district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In addition, other factors a court is to consider in determining whether to exercise supplemental jurisdiction over a state law claim include judicial economy, convenience, fairness, and comity.  *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988); *Enochs v. Lampass Cty.*, 641 F.3d 155, 159 (5th Cir. 2011) (citing *Carnegie-Mellon* and referring to "judicial economy, convenience, fairness, and comity[]" as the "common law factors").

The court determines that the statutory factors set forth in 28 U.S.C. § 1367(c), as well as the common law factors, weigh in favor of declining to exercise supplemental jurisdiction over the state

---

[5] Section 1367(a) states: "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

law claims.  This determination is in accord with "[t]he general rule . . . that a court should decline to exercise jurisdiction over remaining state-law claims when all the federal-law claims are eliminated before trial[.]"  *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *see also Parker & Parsley Petrol. Co. v. Dresser*, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").  Furthermore, when the federal claims are dropped at an early stage of the litigation, the district court has a "powerful reason to choose not to continue to exercise jurisdiction." *Enochs*, 641 F.3d at 161 (quoting *Carnegie-Mellon*, 484 U.S. at 351).  It is within the discretion of the district court to decide whether to retain jurisdiction over a case where all the federal claims have been eliminated and only state law claims remain.  *Id.*

The court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(2).  While the amount of time expended by the court is not insubstantial, the court has not issued a scheduling order; no discovery has occurred; and the case was filed on July 9, 2016, less than a year ago.  Further, the court has made no rulings on the merits of any of Plaintiffs' claims.  Accordingly, considerations of judicial economy and convenience would not weigh in favor of exercising supplemental jurisdiction over the state law claims.  *See id.*  The state law claims will necessarily dominate the litigation going forward.  *See id.* § 1367(c)(3).  Further, though the state law claims may not raise particularly novel or complex issues under Texas law and the court is able to apply Florida law if called upon to do so, *see* 28 U.S.C. § 1367(c)(1), the state law claims are not the simplest or most routine issues of Texas and Florida law.

The judicial economy inquiry primarily focuses on the amount of judicial resources that have been expended on the case up to the point of dismissal or remand.  *See Enochs*, 641 F.3d at 159-60.

The judicial resources expended thus far are those related to Plaintiff Klayman's two unsuccessful requests that the undersigned recuse himself,[6] granting Plaintiffs numerous extensions of time to effect service of process on all Defendants, and in considering Defendants' motions to dismiss. The court has not expended time or resources on the state law claims involved, and this factor weighs heavily in favor of dismissal. With regard to convenience and fairness, nothing in the record suggests it would be less convenient or unfair to litigate the case in state court in either Texas or Florida. As stated by the Fifth Circuit, "it [is] certainly fair to have [ ] the purely Texas state law claims heard in Texas state court[.]" *Id.* at 160. Finally, the last factor, comity, weighs in favor of dismissal, as retaining jurisdiction would disrupt the balance of congressionally approved federal and state judicial responsibilities. *See id.* ("[C]omity demands that the important interests of federalism and comity be respected by federal courts, which are courts of limited jurisdiction and not as well equipped for determination of state law as are state courts.") (internal quotations and citation omitted).

For these reasons, the court declines to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3). Accordingly, the court will deny as moot all remaining motions to dismiss. *See* Doc. 23 (United States' Motion to Dismiss); Doc. 32 (McKesson's Motion to Dismiss); Doc. 40 (Reverend Sharpton and NAN's Motion to Dismiss); Doc. 41 (Minister Farrakhan's Motion

---

[6] On October 6, 2016, Plaintiffs filed their Motion to Recuse/Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc. 43), and on October 7, 2016, filed a Supplement to Affidavit of Demetrick Pennie in Support of Plaintiffs' Motion to Recuse/Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc. 44). On October 12, 2016, the court issued a memorandum opinion and order denying the motion. *See* Mem. Op. and Order (Doc. 48). Notwithstanding the court's decision, on October 18, 2016, Plaintiffs filed another Motion to Recuse/Disqualify Judge Sam Lindsay Under 28 U.S.C. § 144 (Doc. 51), which the court denied on October 20, 2016, warning that: "*If Plaintiffs or their counsel files another motion for recusal or disqualification of the undersigned, the court will issue an order for them to appear in court and show cause why they should not be held in contempt of court and sanctioned.*" *See* Order 2 (original emphasis) (Doc. 54).

**Memorandum Opinion and Order - Page 38**

to Dismiss); Doc. 80 (Soros's Motion to Dismiss); Doc. 90 (Shabazz's Motion to Dismiss); Doc. 103 (Turner's Motion to Dismiss); Doc. 112 (Tometi and Cullors's Motion to Dismiss); and Doc. 141 (Secretary Clinton's Motion to Dismiss).

## E.   Defendant McKesson's Motion for Sanctions and Plaintiffs' Cross-Motion for Sanctions

On November 25, 2016, Defendant McKesson filed a Motion for Sanctions Against Plaintiffs and Plaintiffs' Counsel (Doc. 74). In response, Plaintiffs filed a Cross-Motion for Sanctions (Doc. 87). The court addresses the motions in turn.

### 1.   *Defendant McKesson's Motion for Sanctions Against Plaintiffs and Plaintiffs' Counsel (Doc. 74)*

Defendant McKesson moves for sanctions against Plaintiffs and Plaintiffs' counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure. In support of his motion, McKesson argues, *inter alia*, that Plaintiffs' lawsuit is frivolous, that Klayman, as Plaintiffs' counsel, knew all substantive claims were without merit, knew that the court lacked personal jurisdiction over him, and knew that Plaintiffs lacked standing to bring this lawsuit, but nevertheless filed this lawsuit for the "improper purpose of garnering publicity for their views and harassing those with whom they disagree, instead of to remedy any legally cognizable injury." McKesson Mot. for Sanctions 19. In addition, McKesson argues that Klayman, based on his previous unsuccessful attempts to assert similar claims in other courts, should have known this lawsuit was frivolous. McKesson seeks sanctions against Plaintiffs Pennie and Klayman, individually, as well as against Klayman, as counsel for Plaintiffs, pursuant to Fed. R. Civ. P. 11, including an award of attorney's fees and expenses incurred defending against this lawsuit. Based on the record and evidence submitted, the court finds

no basis to award sanctions against Plaintiffs personally, and, accordingly, the court focuses on the

actions of Plaintiffs' counsel, Klayman.

> Rule 11(b) provides, in pertinent part, that:
>
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
>> (1) it is not being presented for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>>
>> (3) the allegations and other factual contentions have evidentiary support . . .[.]

Fed. R. Civ. P. 11(b)(1)-(b)(3). Each obligation must be satisfied; a violation of any of the three

obligations will provide independent bases for sanctions. *See Whitehead v. Food Max of Mississippi,*

*Inc.*, 332 F.3d 796, 803 (5th Cir. 2003); *see also Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th

Cir. 1999).

> Rule 11(c) provides that, "[i]f, after notice and a reasonable opportunity to respond, the court

determines that subdivision (b) has been violated, the court may, subject to the conditions stated

below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated

subdivision (b) or are responsible for the violation." The trial court is given wide discretion in the

imposition of sanctions. *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001).

Rule 11(c) requires notice and a reasonable opportunity to respond.

Counsel for McKesson, Jacob Weixler, Esq., has provided the court with an Affidavit of Service stating that on November 3, 2016, he sent Plaintiff's counsel a draft of the Motion for Sanctions and Memorandum in Support "via email and U.S. Mail[.]" Def. McKesson Mot. at 22 and Ex. E thereto, Affidavit of Jacob Weixler ¶ 4 (App. at 42) (Doc. 74-2).   Under Fed. R. Civ. P. 11(c)(2), Klayman had twenty-one (21) days from November 3, 2016, to voluntarily dismiss any baseless claims under Rule 41(a) of the Federal Rules of Civil Procedure, as McKesson had not filed an answer or motion for summary judgment in the case.   On November 9, 2016, Klayman, in response to McKesson's Motion to Dismiss, withdrew Counts One through Three. *See* Doc. 57 at 4, n.1.   On November 26, 2016, McKesson filed his Motion for Sanctions with the court.   On December 16, 2016, Plaintiffs filed their opposition brief.

Given that Plaintiffs voluntarily dismissed Counts One through Three six days after being served with the draft Motion for Sanctions, the court will not consider Counts One through Three in ruling on McKesson's Motion for Sanctions.   With respect to Counts Four through Six, Defendant McKesson has failed to marshal a persuasive argument that Counts Four through Six were not warranted by existing law or a good faith basis to extend, modify, or reverse existing law in violation of Rule 11(b)(2), or were filed in violation of Rules 11(b)(1) and 11(b)(3).   The court has reviewed the cases upon which McKesson relies to support his argument that Klayman should have been on notice based on prior adverse judicial rulings that his claims in this lawsuit were frivolous.   *See Klayman v. Obama et al. (Firearms Executive Action)*, No. 16-cv-80087, 2016 WL 4431530 (S.D. Fla. June 16, 2016) (dismissed for lack of standing); *Klayman v. Obama et al. (Iran Treaty)*, No. 15-81023, 2015 WL 5269958 (S.D. Fla. Sept. 10, 2015) (dismissed for lack of standing); *Klayman v. Obama et al. (Ebola)*, No. 14-1704 (voluntarily dismissed by Plaintiff); *Klayman v. Clinton et al.*,

2016 WL 4271869, at *1 (11th Cir. Aug. 15, 2016) (affirming dismissal for lack of standing).

Having carefully reviewed the facts and rulings in these cases, the court rejects McKesson's

argument that the prior adverse rulings should have put Klayman on notice that this action was

frivolous.  These other cases are too factually and legally dissimilar from this case for the court to

reach such a conclusion.  Accordingly, the court **denies** McKesson's Motion for Sanctions.

> ### 2. *Plaintiffs' Cross-Motion for Sanctions (Doc. 87)*

In response to Defendant McKesson's Motion for Sanctions, Plaintiffs have filed a cross-

motion for sanctions pursuant to 28 U.S.C. § 1927 for "having to expend [their] limited time and

resources to respond to a meritless and frivolous pleading."  Doc. 87 at 3.  According to Plaintiffs,

McKesson's Motion for Sanctions relies on "completely unrelated and factually distinguishable[]"

matters, which is "evidence of Defendant McKesson's bad-fath attempt to confuse the Court and

exploit what he perceives to be an extrajudicial bias in his favor."  *Id.* at 4.

Pursuant to 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the
> United States or any Territory thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees reasonably incurred because of such
> conduct.

To impose sanctions under 28 U.S.C. § 1927, the court must find that an attorney multiplied the

proceedings "unreasonably" and "vexatiously," which requires "evidence of bad faith, improper

motive, or reckless disregard of the duty owed to the court."  *Proctor & Gamble Co. v. Amway

Corp.*, 280 F.3d 519, 525 (5th Cir. 2002) (citations omitted).  In response to Plaintiffs' Cross-Motion

for Sanctions, Defendant McKesson contends that Plaintiffs "simply cannot meet their burden to

show that Mr. McKesson or his counsel filed [their Rule 11 motion] in bad faith as required by §

**Memorandum Opinion and Order - Page 42**

1927 given the meritorious justification provided in McKesson's memo[randum], and thus Plaintiffs'

Cross-Motion for Sanctions against Mr. McKesson must fail."  Doc. 94 at 7.  The court agrees.

Other than Plaintiffs' nonsensical and speculative statement that McKesson filed a Motion

for Sanctions because he believed this court "harbors an extrajudicial bias in favor of Defendants,"

*see* Pls.' Resp. to Mot. for Sanctions 3 (Doc. 87), Plaintiffs have provided the court with no evidence

from which the court is able to conclude that McKesson filed his Motion for Sanctions in "bad

faith," with "improper motive," or in "reckless disregard of the duty owed to the court." *Proctor &*

*Gamble*, 280 F.3d at 525.  In addition, McKesson has submitted evidence from which the court can

conclude that Plaintiffs' Cross-Motion for Sanctions was *itself* filed for retaliatory purposes.

Specifically, in response to an e-mail sent by McKesson's counsel, Jacob Weixler, to Klayman

inquiring whether Plaintiffs opposed McKesson's Motion for Sanctions, Klayman stated:

> We will not only oppose any such motion, we will cross move for sanctions
> for filing a frivolous and vexatious pleading.  Your client, in concert with the other
> defendants, ha[s] not only threatened to seriously harm or kill plaintiffs and other law
> enforcement, they have actually had them murdered.  *Your offensive threat to seek*
> *sanctions will be more than met in kind*.

Ex. A to McKesson Reply, App. at 2 (Doc. 95) (emphasis added).  Klayman's e-mail response

undermines the legitimacy of his Cross-Motion for Sanctions.

Accordingly, having considered the record and applicable law, the court determines that

Plaintiffs have failed to establish that imposition of sanctions under 28 U.S.C. § 1927 is warranted

and, accordingly, the court **denies** Plaintiffs' Cross-Motion for Sanctions.

### F.    Class Action Allegations

Plaintiffs filed this case as a class action lawsuit but have yet to move for certification of the

putative class pursuant to Rule 23 of the Federal Rules of Civil Procedure and Local Civil Rule 23.2.

**Memorandum Opinion and Order - Page 43**

The court has dismissed all federal claims in this lawsuit, declined to exercise supplemental jurisdiction over the state law claims, and, therefore, denied as moot Defendants' respective motions to dismiss the state law claims.  As there are no claims pending as to any Defendant in ths action, any request for class certification is **denied as moot**.

## IV.    Conclusion

For the reasons herein stated, the court orders as follows:

With respect to Defendants President Obama and General Holder, the court **grants** their Motion to Dismiss (Doc. 21), as Plaintiffs lack Article III standing, and accordingly **dismisses without prejudice** Count Three for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Counts One and Two are **dismissed without prejudice** pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), as Plaintiffs have voluntarily dismissed these claims against President Obama and General Holder, and no answer or motion for summary judgment has been filed by either Defendant.

With respect to Defendants Nation of Islam, Black Lives Matter, and New Black Panther Party, all claims are **dismissed without prejudice** pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for improper service, which deprives the court of personal jurisdiction over these Defendants.

With respect to Defendants Minister Farrakhan, Reverend Sharpton, NAN, Tometi, Cullors, Mckesson, Shabazz, Soros, and Secretary Clinton, Counts One, Two, and Three are **dismissed without prejudice** pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), as Plaintiffs have voluntarily dismissed these claims, and no answer or motion for summary judgment has been filed by any of these Defendants.  With respect to Defendant Turner, who filed an answer prior to seeking

dismissal, *see* Answer (Doc. 67), Counts One, Two, and Three are **dismissed without prejudice** pursuant to Federal Rule of Civil Procedure 41(a)(2), as Plaintiffs voluntary dismissed these claims, and no Defendant objected to dismissal of the claims.

The court has dismissed all federal claims, and it lacks diversity jurisdiction. The court also has declined to exercise supplemental jurisdiction over any state law claims. Accordingly, the court **dismisses** Counts Four through Six (the state law claims) **without prejudice**, pursuant to 28 U.S.C. § 1367(c). Further, the court **denies as moot** all remaining Motions to Dismiss. *See* Doc. 23 (United States' Motion to Dismiss); Doc. 32 (McKesson's Motion to Dismiss); Doc. 40 (Reverend Sharpton and NAN's Motion to Dismiss); Doc. 41 (Minister Farrakhan's Motion to Dismiss); Doc. 80 (Soros's Motion to Dismiss); Doc. 90 (Shabazz's Motion to Dismiss); Doc. 103 (Turner's Motion to Dismiss); Doc. 112 (Tometi and Cullors's Motion to Dismiss); and Doc. 141 (Secretary Clinton's Motion to Dismiss).

Finally, Defendant Deray Mckesson's Motion for Sanctions Against Plaintiffs and Plaintiffs' Counsel (Doc. 74) is **denied**, and Plaintiffs' Cross-Motion for Sanctions (Doc. 87) is **denied**.

**It is so ordered** this 2nd day of June, 2017.

Sam A. Lindsay
United States District Judge